**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

———————————————————— x

Richard Marasco, individually on behalf of :
himself and all others similarly situated, :
 : Case No.
    Plaintiff, :
v. :
 :
 :
American Expediting Company, Inc., A to Z :  **CLASS ACTION AND COLLECTIVE**
Couriers, Inc., Victor Finnegan, Adam Dally, and :    **ACTION COMPLAINT**
John Does 1-25, :
 :   **JURY TRIAL DEMANDED**
    Defendants. :
 :
 :

———————————————————— x

   Plaintiff Richard Marasco, individually and on behalf of all others similarly situated, by

his attorneys, alleges the following upon information and belief, except for those allegations

pertaining to Plaintiff, which are based on personal knowledge:

## INTRODUCTION

   1.  This is a collective action under the Fair Labor Standards Act of 1938, as

amended (29 U.S.C. §§ 201, *et seq.*) ("FLSA") and is brought by Plaintiff Richard Marasco

("Plaintiff") to remedy widespread wage and hour violations by American Expediting Company,

Inc. ("American Expediting"), its Chief Executive Officer ("CEO") and owner Victor Finnegan

("Mr. Finnegan"), A to Z Couriers, Inc. ("A to Z Couriers") and its former CEO and owner

Adam Dally ("Mr. Dally") (collectively "Defendants") for failing to pay the minimum wage and

overtime wages to Plaintiff and all of Defendants' current and former messengers and delivery

drivers throughout New York and the United States ("Collective Action Members") and for

failing to reimburse them for the purchase and use of the tools of the trade in violation of 29

C.F.R. § 531.35.

1

2.      Plaintiff also brings this action as a class action pursuant to Federal Rules of Civil Procedure Rule 23 on behalf of himself and all similarly situated current and former messengers and delivery drivers who worked for Defendants in New York ("New York Class Members"), to remedy violations of the labor laws of the State of New York.  Plaintiff and New York Class Members are entitled to back wages from Defendants as a result of Defendants' failure to pay to Plaintiff and New York Class Members minimum wage, overtime pay, and spread-of hours pay as required by the New York Labor Law ("NYLL") §§ 650 *et seq*., including Part 142, § 142-2.2 ("Overtime Rate") of Title 12 of the Official Compilation of Codes, Rules and Regulations promulgated by the Commissioner of Labor pursuant to the Minimum Wage Act (Article 19 of the NYLL).

3.      Plaintiff and New York Class Members are also entitled to damages and penalties from Defendants because of:  1) Defendants' failure to furnish wage statements as required by NYLL § 195(3); 2) Defendants' unlawful deductions from Plaintiff's and New York Class Members' wages in violation of NYLL § 193; and 3) Defendants' failure to reimburse Plaintiff and New York Class Members for the expenses they incurred to purchase and use the tools of the trade in violation of 12 NYCRR § 142-2.10.  Plaintiff, Collective Action Members, and New York Class Members are entitled to liquidated damages, injunctive relief, and other equitable relief under the FLSA and NYLL.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the action involves a federal statute, 29 U.S.C. § 216(b).

5.     This Court has original jurisdiction over all claims in this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  This is a putative class action in which: (1) there are 100 or more members in the Plaintiff's proposed class; (2) at least some members of the proposed class have a different citizenship from Defendants; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate.

6.     In addition, this Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law wage and hour claims because those claims derive from a common nucleus of operative fact.

7.     This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims alleged herein occurred in this District.

## THE PARTIES

9.     Plaintiff Richard Marasco resides in Queens, New York.  Mr. Marasco initially began working for A to Z Couriers in 2009.  After A to Z Couriers was acquired by American Expediting, Mr. Marasco worked for American Expediting until December 2014.  At all relevant times herein, Mr. Marasco met the definition of an "employee" under all relevant statutes.  Mr. Marasco has worked as both a messenger and a delivery driver for Defendants.  Mr. Marasco consents in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b).  Attached hereto is Mr. Marasco's consent form.

10.     From 1995 until 2013, Defendant A to Z Couriers, Inc. ("A to Z Couriers") was a corporation organized and existing under the laws of the State of New York with its corporate headquarters located in New York at 106 Ridge St, New York, NY 10002.  At all relevant times,

3

A to Z Couriers was an "employer" within the meaning of the FLSA and NYLL.  A to Z Couriers was an enterprise engaged in commerce.  A to Z Couriers, along with each of its messengers and delivery drivers, handled goods and materials that were produced for and moved in interstate commerce, and its annual gross volume of business was at least $500,000.

11.     Defendant Adam Dally was the owner and Chief Executive Officer of A to Z Couriers.  He maintained his office at A to Z Couriers' corporate headquarters located in New York at 106 Ridge St, New York, NY 10002.  Upon information and belief, at all relevant times, Mr. Dally exercised decision-making authority over the terms and conditions of Plaintiff, the Collective Action Members and New York Class Members during their employment at A to Z Couriers, and had the authority to direct and control these employees' work performance, and/or was responsible for making operational and managerial decisions at A to Z Couriers, including those with respect to employees' hours worked, rates/methods of pay, and hiring/firing.  As a result, Mr. Dally was an "employer" for purposes of the FLSA and NYLL.  Mr. Dally is jointly and severally liable for: 1) the FLSA and NYLL violations perpetrated by him and A to Z Couriers; and 2) his and A to Z Couriers' conversion of wages from Collective Action Members and New York Class Members.

12.     Defendant American Expediting Company, Inc. ("American Expediting") is a rush messenger expedited delivery service with offices throughout the country organized under the laws of the State of Pennsylvania with its corporate headquarters located at 2215 Arch Street, Philadelphia, PA 19103.  American Expediting is actively registered as a foreign corporation in the State of New York.  At all relevant times, American Expediting was an "employer" within the meaning of the FLSA and NYLL.  American Expediting is engaged in the business of providing delivery services.  American Expediting is an enterprise engaged in commerce.

4

American Expediting, along with each of its messengers and delivery drivers, handled goods and materials that were produced for and moved in interstate commerce, and its annual gross volume of business is at least $500,000.  As is explained more fully below, American Expediting has successor liability, jointly and severally, for A to Z Couriers':  1) FLSA and NYLL violations; and 2) conversion of wages from Collective Action Members and New York Class Members.

13.     Defendant Victor Finnegan is the owner and Chief Executive of American Expediting Company and maintains his office at its corporate headquarters at 2215 Arch Street, Philadelphia, PA 19103.  Mr. Finnegan operates and/or controls the day-to-day operations and management of American Expediting Company.  Upon information and belief, at all relevant times, Mr. Finnegan exercised decision-making authority over the terms and conditions of Plaintiff's, the Collective Action Members' and New York Class Members during their employment at American Expediting, and had the authority to direct and control these employees' work performance, and/or was responsible for making operational and managerial decisions at American Expediting, including those with respect to employees' hours worked, rates/methods of pay, and hiring/firing.  As a result, Mr. Finnegan was an "employer" for purposes of the FLSA and NYLL.

14.     Mr. Finnegan is jointly and severally liable for: 1) the FLSA and NYLL violations perpetrated by him and American Expediting; and 2) his and American Expediting's conversion of wages from Collective Action Members and New York Class Members.  Mr. Finnegan has successor liability, jointly and severally, for A to Z Couriers':  1) FLSA and NYLL violations; and 2) conversion of wages from Collective Action Members and New York Class Members.

15.     Plaintiff does not know the true names or capacities of the persons or entities sued herein as John Does 1-25 (the "DOE Defendants"), inclusive, and therefore sues these DOE

Defendants by such fictitious names.  Plaintiff is informed and believes, and upon such information and belief alleges, that each of the DOE Defendants is in some manner responsible for having sold and/or advertised and/or marketed the Products and are legally responsible for the damages suffered by Plaintiff and the Collective Action Members and New York Class Members as alleged herein.  Plaintiff will amend this Complaint to set forth the true names and capacities of the DOE Defendants when they have been ascertained, along with appropriate charging allegations, as may be necessary.

## COLLECTIVE ACTION ALLEGATIONS

16.     Pursuant to 29 U.S.C. § 216(b) Plaintiff brings the first, second and third causes of action on behalf of all persons throughout the United States who worked for Defendants as either messengers or delivery drivers at any time three years prior to the filing of this Complaint, to the entry of judgment in this case (the "Collective Action Period") (the "Collective Action Members").  Upon information and belief, each Defendant paid Plaintiff and Collective Action Members strictly on a per delivery basis and suffered and permitted them to work more than forty hours per week.  Defendants failed to:  1) pay them the minimum wage; 2) pay them for every hour worked; 3) pay them overtime compensation at rates not less than one and one-half times the regular rate of pay for hours worked in excess of forty (40) per workweek; and/or 4) reimburse them for the costs of purchasing and/or using the tools of the trade.

17.     To the extent the Court deems necessary or appropriate, Plaintiff proposes certification of the following Collective Subclasses:

18.     All persons who worked as delivery drivers for A to Z Couriers within the Collective Action Period (the A to Z Couriers Delivery Driver Collective Subclass).

19.     All persons who worked as messengers for A to Z Couriers within the Collective Action Period (the A to Z Couriers Messenger Collective Subclass).

20.     All persons who worked as delivery drivers for American Expediting within the Collective Action Period (the American Expediting Delivery Driver Collective Subclass).

21.     All persons who worked as messengers for American Expediting within the Collective Action Period (the American Expediting Messenger Collective Subclass).

22.     Members of the Collective Subclasses are collectively referred to throughout the Complaint as Collective Action Members.

23.     During the Collective Action Period, upon information and belief, American Expediting employed more than 300 employees who are Collective Action Members, and A to Z Couriers employed more than 150 employees who are Collective Action Members.

24.     Each Defendant meets the definition of "employer" under the FLSA.  By way of example only, Defendants control(led) how much the Collective Action Members are/were paid, maintained time records for the Collective Action Members, assigned and supervised all of the tasks given to the Collective Action Members, and maintained and exercised control as to how the Collective Action Members were to perform their tasks.

25.     Plaintiff and each of the Collective Action Members is an "employee" entitled to minimum wage for every hour worked, overtime compensation for all hours worked in excess of 40 hours per work week, and for reimbursement of expenses incurred to purchase and/or use the tools of the trade.

26.     During the Collective Action Period each Defendant, as a matter of policy, paid Plaintiff and Collective Action Members less than the statutory minimum wage, and failed to pay them for every hour worked.

27.     Each Defendant also, as a matter of policy, failed to pay Plaintiff and the Collective Action Members any overtime compensation when they worked in excess of 40 hours in a given workweek.

28.     As a matter of policy each Defendant failed to reimburse Plaintiff and Collective Action Members for the expenses they incurred to purchase and/or use the tools of the trade even though each Defendant was lawfully required to do so.

29.     In addition to the foregoing, Defendants otherwise failed to properly compensate Plaintiff and the Collective Action Members in accordance with the provisions of the FLSA and the U.S. Department of Labor regulations.

30.     Each Defendant's conduct as set forth in this Complaint was willful and in bad faith.[1]  Defendants' conduct has caused significant damage to Plaintiff and the Collective Action Members.

31.     Plaintiff and Collective Action Members are similarly situated.  They were victims of a common policy by Defendants.

32.     Defendants are liable under the FLSA for failing to properly compensate Plaintiff and Collective Action Members, and as such, notice should be sent to Collective Action Members.  There are numerous similarly situated current and former employees of Defendants who were subject to the aforementioned practices and policies in violation of the FLSA who would benefit from the issuance of a Court-supervised notice of the present lawsuit and the

---

[1] Indeed, American Expediting and its CEO Victor Finnegan were sued in May 2010 in the Western District of Pennsylvania for improperly characterizing dispatchers and customer service representatives as independent contractors for work performed as employees as part of a scheme to avoid paying required overtime.  *See Granatire v. American Expediting Co., Inc.*, 10-cv-00564 (W.D. Pa.) (Complaint, Docket #1).  They paid to settle the case in 2011.  (Docket #27, 36).  Despite this prior lawsuit, they have continued to violate the law.

opportunity to join in the present lawsuit.  Those similarly situated employees are known to

Defendants and are readily identifiable through Defendants' records.

## CLASS ACTION ALLEGATIONS

33.     Plaintiff brings the fourth through tenth causes of action pursuant to Rule 23 (a)

and (b) of the Federal Rules of Civil Procedure on behalf of all persons throughout the State of

New York who Defendants have employed or are currently employing as either messengers or

delivery drivers at any time within six (6) years prior to this action's filing date through the date

of the final disposition of this action (the "New York Class Period") (the "New York Class").

Upon information and belief, each Defendant paid Plaintiff and Collective Action Members

strictly on a per delivery basis and suffered and permitted them to work more than forty hours

per week.  Defendants:  1) failed to pay them the minimum wage; 2) failed to pay them for every

hour worked; 3) failed to pay them overtime compensation for all hours worked in excess of 40

per workweek; 4) failed to pay them spread of hours pay; 5) failed to provide them with wage

statements that specifically enumerate certain criteria, as required by NYLL § 195(3); 6)

unlawfully made unauthorized deductions from their wages; and/or 7) failed to reimburse for

them for the purchase and/or use of the tools of the trade.

34.     To the extent the Court deems necessary or appropriate, Plaintiff proposes

certification of the following subclasses:

35.     All persons throughout the State of New York who worked as delivery drivers for

A to Z Couriers throughout the New York Class Period (the A to Z Couriers Delivery Driver

New York Subclass).

36.     All persons throughout the State of New York who worked as messengers for A to Z Couriers throughout the New York Class Period (the A to Z Couriers Messenger New York Subclass).

37.     All persons throughout the State of New York who worked as delivery drivers for American Expediting throughout the New York Class Period (the American Expediting Delivery Driver New York Subclass).

38.     All persons throughout the State of New York who worked as messengers for American Expediting throughout the New York Class Period (the American Expediting Messenger New York Subclass).

39.     Members of the New York Subclasses are collectively referred to throughout the Complaint as New York Class Members.

40.     At all times during the New York Class Period, each Defendant, as a matter of uniform practice and policy, (i) did not pay Plaintiff or the New York Class members minimum wage or overtime premium pay for all hours worked in excess of 40 hours per workweek; (ii) did not pay Plaintiff or New York Class Members for every hour worked; (iii) did not pay Plaintiff and the members of the New York Class "spread of hours" pay as required by the NYLL; (iv) failed to furnish wage statements required by the NYLL; (v) made unauthorized unlawful deductions from Plaintiff's and New York Class Members' wages; and (vi) failed to reimburse Plaintiff and New York Class Members for their expenses related to the purchase and/or use of the tools of the trade.

41.     The facts as alleged in Paragraphs 15-31 with respect to the Collective Action Members are similarly true for the New York Class during the New York Class Period.

42.     Numerosity: The proposed New York Class is so numerous that joinder of all members is impracticable.  Upon information and belief, during the relevant time period, American Expediting employed over 160 persons who fall within the definition of the New York Class, and A to Z Couriers employed over 150 persons who fall within the New York Class and thus satisfy the numerosity definition of the proposed New York Class.

43.     Typicality: Plaintiff's claims are typical of the members of the proposed New York Class.  During the New York Class Period, Plaintiff and the members of the New York Class were subject to Defendants' policy and practice of unlawfully (i) depriving their employees of minimum wage and overtime premium pay for all hours worked in excess of 40 hours per workweek; (ii) failing to pay their employees for every hour worked; (iii) failing to pay their employees "spread of hours" pay as required by the NYLL; (iv) failing to furnish their employees with wage statements required by the NYLL; (v) making unauthorized deductions from their employees' wages; and/or (vi) failing to reimburse their employees for the expenses related to the purchase and/or use of the tools of the trade.  Plaintiff had the same or similar duties and responsibilities as other New York Class Members.

44.     Superiority:  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

45.     Adequacy:  Plaintiff will fairly and adequately protect the interests of the proposed New York Class, and has retained counsel experienced in FLSA and NYLL class and collective action litigation.

46.     Commonality:  The duties of Plaintiff and of New York Class Members were and are defined by comprehensive corporate procedures.  Common questions of law and fact exist with respect to all members of the proposed New York Class that predominate over any

questions solely affecting individual members of the proposed New York Class, including but not limited to:

a.   Whether Defendants violated the NYLL as alleged herein;

b.   Whether Defendants unlawfully failed to pay the applicable minimum wage to members of the New York Class in violation of the NYLL;

c.   Whether Defendants unlawfully failed to pay appropriate overtime compensation to members of the New York Class in violation of the NYLL;

d.   Whether Defendants unlawfully failed to pay "spread of hours" compensation to members of the New York Class in violation of the NYLL;

e.   Whether Defendants unlawfully failed to furnish wage statements required by the NYLL;

f.   Whether Defendants made unlawful deductions in violation of the NYLL;

g.   Whether Defendants' unauthorized deductions from New York Class Members' wages constitutes conversion;

h.   Whether Defendants unlawfully failed to reimburse Plaintiff and New York Class Members for the expenses incurred in purchasing and/or using the tools of the trade;

i.   Whether Defendants have failed to keep true and accurate time records for all hours worked by Plaintiff and New York Class Members;

j.   Whether Defendants intentionally and pursuant to a standard policy or practice misrepresented Plaintiff's and New York Class Members' time to avoid paying them the total wages they were owed;

k.  Whether Defendants employed Plaintiff and the New York Class within the meaning of New York law;

l.  Whether Defendants should be enjoined from continuing the practices that violate the NYLL;

m.  What the proper measure of damages sustained by the New York Class are and whether Defendants' actions were willful.

47.  The case is maintainable as a class action under Fed. R. Civ. P. 23(b)(l) because prosecution of actions by or against individual members of the class could result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendants.

48.  Further, adjudication of each individual member's claim as a separate action would be dispositive of the interest of other individuals not party to this action, impeding their ability to protect their interests.

49.  Class certification of the fourth through tenth causes of action is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the New York Class predominate over any questions affecting only individual members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' common and uniform policies and practices denied the New York Class Members the wages to which they were entitled.  The damages suffered by the New York Class members are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

50.  Class certification of the fourth through tenth causes of action is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds

general applicable to the New York Class, thereby making appropriate declaratory and injunctive relief. The New York Class is also entitled to injunctive relief to end Defendants' common and uniform practice of failing to compensate their employees for all work performed for the benefit of Defendants.

51.     Plaintiff intends to send notice to all members of the New York Class to the extent required by Rule 23. The names and addresses of the New York Class are available from Defendants.

## FACTUAL ALLEGATIONS

52.     From 1995 until it was taken over by American Expediting in 2013, A to Z Couriers was engaged in the business of providing messenger and delivery services throughout New York, New Jersey, and Connecticut. In 2013, American Expediting acquired A to Z Couriers. Thereafter, A to Z Couriers continued its operations as a part of American Expediting.

53.     American Expediting is a rush messenger expedited delivery service with offices throughout the United States.

54.     In 2009, A to Z Couriers hired Plaintiff as a delivery worker. Plaintiff worked for A to Z Couriers both as a messenger making deliveries on foot and using public transit, and as a delivery driver making deliveries using vans owned by A to Z Couriers.

55.      After American Expediting acquired A to Z Couriers, Plaintiff worked as a messenger for American Expediting until the end of 2014.

**Plaintiff's Work for A to Z Couriers**

56.     Throughout the Collective Action Period and New York Class Period, A to Z Couriers deducted 5% each week from Plaintiff's, Collective Action Members' and New York Class Members' wages, purportedly for insurance payments, even though A to Z Couriers did

not use the money deducted to purchase insurance for Plaintiff, Collective Action Members, or New York Class Members. Plaintiff, Collective Action Members and New York Class Members did not consent to have such deductions made from their paychecks.

57.    A to Z Couriers did not provide wage statements to Plaintiff, New York Class Members or Collective Action Members as required under NYLL 195(3).

58.    Rather, A to Z Couriers only provided Plaintiff with a paycheck which omitted, *inter alia*, the number of hours he had worked, his hourly rate of pay, and the number of overtime hours he worked.

59.    Similarly, A to Z Couriers failed to provide Collective Action Members and New York Class Members with wage statements that included, *inter alia*, the number of hours they had worked, their hourly rate of pay, the number of overtime hours worked, and their overtime rate of pay.

60.    Even though A to Z Couriers treated Plaintiff like an employee, it improperly classified him as an independent contractor in order to avoid paying him the required minimum wage, overtime wages and spread of hours pay.

61.    A to Z Couriers similarly improperly classified many Collective Action Members and New York Class Members as independent contractors in order to avoid paying them the required minimum wage, overtime wages, and spread of hours pay.

62.    Plaintiff, Collective Action Members, and New York Class Members worked the most overtime for A to Z Couriers between the months of September through May. During this time of the year they worked overtime approximately half the time.

**Plaintiff's Work as a Messenger for A to Z Couriers**

63.    Plaintiff worked as a messenger for A to Z Couriers from 2009 through 2013.

15

64.     Many Collective Action Members and New York Class Members worked as messengers for A to Z Couriers for years or decades.

65.     In his position as a messenger, Plaintiff delivered packages for A to Z Couriers on foot and via public transportation.

66.     Many Collective Action Members and New York Class Members similarly delivered packages for A to Z Couriers on foot and via public transportation, as well as on bicycles.

67.     A to Z Couriers required Plaintiff, Collective Action Members and New York Class Members to provide and use their own bicycles, public transportation tickets, and vehicles to make deliveries for A to Z Couriers' customers and to supply and use their own cell phones (collectively the "tools of the trade") to communicate with A to Z Couriers regarding deliveries. A to Z Couriers failed to reimburse Plaintiff, Collective Action Members, and New York Class Members for the expenses related to the purchase, use or maintenance of the tools of the trade.

68.     Plaintiff, Collective Action Members, and New York Class Members were earning less than the minimum wage under both the FLSA and NYLL at A to Z Couriers and having to pay for the tools of the trade brought their wages even further below the minimum wage.

69.     A to Z Couriers did not pay Plaintiff an hourly wage for his work as a messenger. Instead, he was paid a flat rate per delivery.  The rate was set by A to Z Couriers and was usually $3.00 to $5.00 per delivery.  Rates for heavier packages or packages that were delivered to boroughs outside Manhattan were often $10.00 per delivery.

70.     A to Z Couriers paid the same rates to Collective Action Members and New York Class Members who it employed as messengers.

71.     Despite working for A to Z Couriers for 40 or more hours per week, Plaintiff only earned $150-$250 per week, which was less than minimum wage.

72.     Collective Action Members and New York Class Members who worked as messengers for A to Z Couriers also made less than minimum wage despite working 40 or more hours per week.

73.     During the weeks Plaintiff worked more than 40 hours for A to Z Couriers, he was never paid overtime.

74.     For example, in 2013, from September 30th through October 4th, Plaintiff worked about 43 hours as a messenger for A to Z Couriers.  He earned about $270 in gross wages that week, which comes out to $6.28 per hour.  That is less than the federal minimum and New York minimum wage of $7.25 per hour that was in effect at the time.  For the three hours that he worked above 40, A to Z Couriers did not pay Plaintiff overtime at a rate of one and a half times his normal hourly wage.

75.     Collective Action Members and New York Class Members who worked as messengers for A to Z Couriers were not paid overtime for the hours they worked in excess of 40 per week.

76.     During the days when Plaintiff worked 10 or more hours for A to Z Couriers, he did not receive spread of hours pay.

77.     New York Class Members who worked as messengers for A to Z Couriers did not receive spread of hours pay for the hours they worked in excess of 10 on the days when they worked more than 10 hours.

78.     Plaintiff, Collective Action Members and New York Class Members were employees rather than independent contractors.

79.     A to Z Couriers set the fees that Plaintiff, Collective Action Members and New York Class Members were paid per delivery.

80.     Also, given that the fees per delivery varied, it would have been in Plaintiff's, Collective Action Members' and New York Class Members' interest to make the deliveries that paid higher fees.  However, A to Z Couriers decided which deliveries Plaintiff, Collective Action Members and New York Class Members would make without any regard for their interest in maximizing their fee income.

81.     Plaintiff, Collective Action Members and New York Class Members never generated any of their own business or client relationships.  All deliveries were assigned to them by A to Z Couriers.  Plaintiff, Collective Action Members and New York Class Members never worked directly for A to Z Couriers' clients, or anyone else for that matter, on their own without going through Defendant.

82.     A to Z Couriers also determined the order/priority of Plaintiff's, Collective Action Members' and New York Class Members' deliveries.  For example, A to Z Couriers had Plaintiff, Collective Action Members and New York Class Members make "rush" deliveries first. A to Z Couriers also set a rule that required that "rush" deliveries be made within an hour and that other deliveries be made within two hours.

83.     A to Z Couriers also had the authority to determine Plaintiff's, Collective Action Members' and New York Class Members' delivery route, and would often exercise this authority when a "rush" delivery needed to be made or when a package otherwise needed to be delivered quickly.

84.     The duties and responsibilities of messengers who made deliveries for A to Z Couriers, including those of Plaintiff, Collective Action Members and New York Class

Members, did not include managerial responsibilities or the exercise of independent judgment. The messenger position was low skilled.

85.     Plaintiff, Collective Action Members and New York Class Members also did not share in A to Z Couriers' profits or losses, nor did they invest in A to Z Couriers.

86.     During his employment with A to Z Couriers, Plaintiff did not work for any other companies.

87.     During Collective Action Members' and New York Class Members' employment as messengers with A to Z Couriers, they did not work for any other companies.

88.     A to Z Couriers also effectively established a schedule for Plaintiff, Collective Action Members and New York Class Members.  A to Z Couriers opened their doors each day at 8:00 AM.

89.     Plaintiff, Collective Action Members and New York Class Members reported to work each day between 8:00 AM and 9:00 AM.

90.     Often, Plaintiff, Collective Action Members and New York Class Members were explicitly told by A to Z Couriers to arrive at 8:00 AM.

91.     If they did not show up to work by 8:00 AM on the days they were told to do so, Plaintiff, Collective Action Members, and New York Class Members were subject to discipline.

92.     Also, A to Z Couriers assigned deliveries to the messengers, including Plaintiff, Collective Action Members and New York Class Members based on how early they arrived in the morning (ie. the first messenger to arrive got the first delivery, etc.).

93.     A to Z Couriers assigned deliveries to Plaintiff, Collective Action Members and New York Class Members throughout the day so that their work was completed between 6:00 PM and 8:00 PM.

94.     On many occasions, even though Plaintiff, Collective Action Members and New York Class Members would show up to work between 8:00 AM and 9:00 AM, they would have to wait a few hours before receiving their first delivery for the day.  Plaintiff, Collective Action Members, and New York Class Members were not paid for the hours they spent at A to Z Couriers waiting to receive their first delivery assignment for the day.

95.     Even after receiving their first delivery for the day, Plaintiff, Collective Action Members, and New York Class Members would experience lulls throughout the workday during which they had no deliveries to make and for which they received no compensation from A to Z Couriers.

96.     If they did not remain at A to Z Couriers and/or remain available for deliveries during lulls in which they did not have deliveries to make, Plaintiff, Collective Action Members, and New York Class Members were subject to discipline.

97.     Plaintiff, Collective Action Members and New York Class Members were not compensated for any of the time they spent at A to Z Couriers waiting to be assigned deliveries.

98.     A to Z Couriers benefited from having Plaintiff, Collective Action Members and New York Class Members show up between 8:00 AM and 9:00 AM each day despite the fact that they did not always have work for them.  Similarly, A to Z Couriers benefited from having Plaintiff, Collective Action Members, and New York Class Members available to make deliveries throughout the day even though they did not always have work for them.  Having Plaintiff, Collective Action Members and New York Class Members available for deliveries allowed A to Z Couriers to increase its profits by having them make deliveries when work was available, without having to compensate them for their time when work was not available.

99.     A to Z Couriers also maintained some employment records for Plaintiff, Collective Action Members and New York Class Members.

**Plaintiff's Work as a Delivery Driver for A to Z Couriers**

100.     Plaintiff also sometimes worked as a delivery driver for A to Z Couriers.

101.     Many Collective Action Members and New York Class Members also sometimes worked as delivery drivers for A to Z Couriers.

102.     Plaintiff, Collective Action Members and New York Class Members reported to work each day between 8:00 AM and 9:00 AM.

103.     Often, Plaintiff, Collective Action Members and New York Class Members were explicitly told by A to Z Couriers to arrive at 8:00 AM.

104.     If they did not show up to work by 8:00 AM on the days they were told to do so, Plaintiff, Collective Action Members, and New York Class Members were subject to discipline.

105.     On many occasions, even though Plaintiff, Collective Action Members and New York Class Members would show up to work between 8:00 AM and 9:00 AM, they would have to wait a few hours before receiving their first delivery for the day.

106.     Even after receiving their first delivery for the day, Plaintiff, Collective Action Members, and New York Class Members would experience lulls throughout the workday during which they had no deliveries to make.

107.     If they did not remain at A to Z Couriers and/or remain available for deliveries during lulls in which they did not have deliveries to make, Plaintiff, Collective Action Members, and New York Class Members were subject to discipline.

108.     A to Z Couriers promised to pay Plaintiff $10 per hour for his work as a delivery driver.

109.    A to Z Couriers promised to pay Collective Action Members and New York Class Members $10 per hour for the work they performed as delivery drivers.

110.    However, A to Z Couriers sometimes failed to pay Plaintiff, Collective Action Members, and New York Class Members for all of the hours that they worked as delivery drivers.

111.    A to Z Couriers often did not pay any overtime wages to Plaintiff, Collective Action Members and New York Class Members for the hours above 40 that they worked in a week.

112.    For example, from September 9th through the 13th in 2013, during New York City's "Fashion Week," Plaintiff worked 45 hours as a delivery driver for A to Z Couriers at a rate of $10 per hour.  Plaintiff was not paid overtime at a rate of time and a half his regular rate of pay for the 5 hours he worked above 40.

113.    During the days when Plaintiff and New York Class Members worked 10 or more hours per day as delivery drivers for A to Z Couriers, they did not receive spread of hours pay.

114.    A to Z Couriers improperly classified Plaintiff as an independent contractor for his work as a delivery driver to avoid paying him for every hour worked as well as overtime wages and spread of hours pay.

115.    A to Z Couriers improperly classified Collective Action Members and New York Class Members as independent contractors for their work as delivery drivers to avoid paying them for every hour worked as well as overtime wages and spread of hours pay.

116.    In actuality, Plaintiff, Collective Action Members and New York Class Members were employees rather than independent contractors.

117.    Plaintiff, Collective Action Members and New York Class Members used A to Z Couriers' vans while working as delivery drivers for A to Z Couriers.

118.    Plaintiff, Collective Action Members and New York Class Members never generated any business or client relationships.  All deliveries were assigned to Plaintiff, Collective Action Members and New York Class Members by A to Z Couriers.  Plaintiff, Collective Action Members and New York Class Members never worked directly for A to Z Couriers' clients on their own without going through A to Z Couriers.

119.    The duties and responsibilities of A to Z Couriers' delivery drivers, including those of Plaintiff, Collective Action Members and New York Class Members, did not include any managerial responsibilities or the exercise of independent judgment.

120.    The delivery driver position was low skilled.

121.    A to Z Couriers set the fees that were charged to clients for deliveries made by Plaintiff, Collective Action Members and New York Class Members.

122.    A to Z Couriers determined the priority and delivery times for deliveries made by Plaintiff, Collective Action Members and New York Class Members.

123.    Plaintiff, Collective Action Members and New York Class Members did not share in A to Z Couriers' profits or losses, nor did they invest in A to Z Couriers.

124.    During his employment with A to Z Couriers, Plaintiff did not work for any other companies.

125.    During their employment with A to Z Couriers, Collective Action Members and New York Class Members did not work for any other companies.

126.    A to Z Couriers maintained some employment records for Plaintiff.

127.    A to Z Couriers maintained some employment records for Collective Action Members and New York Class Members.

**Plaintiff's Work for American Expediting**

128.    American Expediting did not provide wage statements to Plaintiff, New York Class Members or Collective Action Members as required under NYLL § 195(3).

129.    American Expediting failed to provide Plaintiff, Collective Action Members and New York Class Members with wage statements that included, *inter alia*, the number of hours they had worked, their hourly rate of pay, the number of overtime hours worked, and their overtime rate of pay.

130.    Plaintiff, Collective Action Members, and New York Class Members were not exempt employees under the overtime law of the NYLL.

**Plaintiff's Work as a Messenger for American Expediting**

131.    When American Expediting took over A to Z Couriers' operations in 2013, Plaintiff continued as an employee of American Expediting where he remained until he left in December 2014.

132.    As an employee of American Expediting Plaintiff worked as a messenger, making deliveries on foot and using public transportation.  Collective Action Members and New York Class Members who performed messenger work made deliveries on foot, using public transportation, and/or by bicycle.

133.    Many Collective Action Members and New York Class Members were employees of A to Z Couriers who continued on as employees for American Expediting once American Expediting took over A to Z Couriers.

134.    When American Expediting took over A to Z Couriers, it changed the title for all messengers, including Plaintiff, Collective Action Members and New York Class Members, from independent contractor to employee.

135.    Once American Expediting acquired A to Z Couriers, working conditions did not change for Plaintiff and those Collective Action Members and New York Class Members who continued working as messengers for American Expediting.

136.    American Expediting paid Plaintiff, Collective Action Members and New York Class Members around $3.00 to $5.00 per regular delivery, or $10.00 per delivery for heavier packages or for packages that had to be delivered longer distances.

137.    American Expediting paid Plaintiff, Collective Action Members and New York Class Members around $150 to $250 per 40 hour work week, which is less than the minimum wage.

138.    Plaintiff, Collective Action Members and New York Class Members also sometimes worked more than 40 hours per week for American Expediting, but American Expediting did not pay them any overtime wages.

139.    Between the months of September to May of each year, Plaintiff, Collective Action Members, and New York Class Members worked the most overtime.  About half the time during these months they worked more than 40 hours each week.

140.    For example, in 2014, from November 24th through November 28th, Plaintiff worked 44 hours as a messenger for American Expediting.  He earned only $300 in gross wages that week, which comes out to $6.82 per hour.  That is less than the federal minimum wage of $7.25 per hour and less than the state minimum wage of $8.00 per hour that was in effect at the time.

141. Plaintiff and New York Class Members also sometimes worked more than 10 hours per day for American Expediting, but they were not paid spread of hours pay.

142. American Expediting required Plaintiff, Collective Action Members and New York Class Members to provide and use their own bicycles, public transportation tickets, and vehicles to make deliveries for American Expediting's customers and to supply and use their own cell phones (collectively the "tools of the trade") to communicate with American Expediting regarding deliveries. American Expediting failed to reimburse Plaintiff, Collective Action Members, and New York Class Members for the expenses related to the purchase, use or maintenance of the tools of the trade.

143. Plaintiff, Collective Action Members, and New York Class Members were earning less than the minimum wage under both the FLSA and NYLL at American Expediting and having to pay for the tools of the trade brought their wages even further below the minimum wage.

144. American Expediting set the fees that Plaintiff, Collective Action Members and New York Class Members were paid per delivery.

145. Also, given that the fees per delivery varied, it would have been in Plaintiff's, Collective Action Members' and New York Class Members' interest to make the deliveries that paid higher fees. However, American Expediting decided which deliveries Plaintiff, Collective Action Members and New York Class Members would make without any regard for their interest in maximizing their fee income.

146. Plaintiff, Collective Action Members and New York Class Members never generated any of their own business or client relationships. All deliveries were assigned to them by American Expediting. Plaintiff, Collective Action Members and New York Class Members

never worked directly for American Expediting' clients, or anyone else for that matter, on their own without going through Defendant.

147.    American Expediting also determined the order/priority of Plaintiff's, Collective Action Members' and New York Class Members' deliveries.  For example, American Expediting had Plaintiff, Collective Action Members and New York Class Members make "rush" deliveries first.  American Expediting also set a rule that required that "rush" deliveries be made within an hour and that other deliveries be made within two hours.

148.    American Expediting also had the authority to determine Plaintiff's, Collective Action Members' and New York Class Members' delivery route, and would often exercise this authority when a "rush" delivery needed to be made or when a package otherwise needed to be delivered quickly.

149.    The duties and responsibilities of messengers who made deliveries for American Expediting, including those of Plaintiff, Collective Action Members and New York Class Members, did not include any managerial responsibilities or the exercise of independent judgment, and the job was low skilled.

150.    Plaintiff, Collective Action Members and New York Class Members also did not share in American Expediting's profits or losses, nor did they invest in American Expediting.

151.    During his employment with American Expediting, Plaintiff did not work for any other companies.

152.    During Collective Action Members' and New York Class Members' employment as messengers with American Expediting, they did not work for any other companies.

153.    American Expediting also effectively established a schedule for Plaintiff, Collective Action Members and New York Class Members.  American Expediting opened their doors each day at 8:00 AM.

154.    Often, Plaintiff, Collective Action Members and New York Class Members were explicitly told by American Expediting to arrive at 8:00 AM.  Other days they would arrive between 8:00 AM and 9:00 AM.

155.    If they did not show up to work at the time they were expected to do so, Plaintiff, Collective Action Members, and New York Class Members were subject to discipline.

156.    Also, American Expediting assigned deliveries to the messengers, including Plaintiff, Collective Action Members and New York Class Members based on how early they arrived in the morning (ie. the first messenger to arrive got the first delivery, etc.).

157.    American Expediting assigned deliveries to Plaintiff, Collective Action Members and New York Class Members throughout the day so that their work was completed between 6:00 PM and 8:00 PM.

158.    On many occasions, even though Plaintiff, Collective Action Members and New York Class Members would show up to work at 8:00 AM or between 8:00 AM and 9:00 AM, they would have to wait a few hours before receiving their first delivery for the day.  Plaintiff, Collective Action Members, and New York Class Members were not paid for the hours they spent at American Expediting waiting to receive their first delivery assignment for the day.

159.    Even after receiving their first delivery for the day, Plaintiff, Collective Action Members, and New York Class Members, would experience lulls throughout the workday during which they had no deliveries to make for which they received no compensation from American Expediting.

160.     If they did not remain at American Expediting and/or remain available for deliveries during lulls in which they did not have deliveries to make, Plaintiff, Collective Action Members, and New York Class Members were subject to discipline.

161.     Plaintiff, Collective Action Members and New York Class Members were not compensated for any of the time they spent at American Expediting waiting to be assigned deliveries.

162.     American Expediting benefited from having Plaintiff, Collective Action Members and New York Class Members show up between 8:00 AM and 9:00 AM each day despite the fact that they did not always have work for them.  Similarly, American Expediting benefited from having Plaintiff, Collective Action Members, and New York Class Members available to make deliveries throughout the day even though they did not always have work for them. Having Plaintiff, Collective Action Members and New York Class Members available for deliveries allowed American Expediting to increase its profits by having them make deliveries when work was available, without having to compensate them for their time when work was not available.  As a consequence, Plaintiff, Collective Action Members, and New York Class Members did not earn even the minimum wage

163.     American Expediting also maintained some employment records for Plaintiff, Collective Action Members and New York Class Members.

**American Expediting Delivery Drivers**

164.     American Expediting improperly classifies its delivery drivers, including Collective Action Members and New York Class Members, as independent contractors. American Expediting pays its delivery drivers a fee per delivery, which is around $10.  American Expediting pays a larger fee of around $30 for long distance deliveries.

165.    Often, Collective Action Members and New York Class Members were explicitly told by American Expediting to arrive at 8:00 AM.  Other days they would arrive between 8:00 AM and 9:00 AM.

166.    If they did not show up to work at the time they were expected to do so, Collective Action Members and New York Class Members were subject to discipline.

167.    Also, American Expediting assigned deliveries to the delivery drivers, including Collective Action Members and New York Class Members, based on how early they arrived in the morning (ie. the first delivery driver to arrive got the first delivery, etc.).

168.    On many occasions, even though Collective Action Members and New York Class Members would show up to work between 8:00 AM and 9:00 AM, they would have to wait a few hours before receiving their first delivery for the day.

169.    Even after receiving their first delivery for the day, Collective Action Members and New York Class Members would experience lulls throughout the workday during which they had no deliveries to make.

170.    American Expediting sometimes failed to pay Collective Action Members and New York Class Members for all of the hours that they worked as delivery drivers.

171.    American Expediting often did not pay any overtime wages to Collective Action Members and New York Class Members for the hours above 40 that they worked in a week.

172.    During the days when New York Class Members worked 10 or more hours per day as delivery drivers for American Expediting they did not receive spread of hours pay.

173.    American Expediting required Collective Action Members and New York Class Members to provide and use their own vehicles, gas and insurance to make deliveries for American Expediting's customers and to supply and use their own cell phones (collectively the

"tools of the trade") to communicate with American Expediting regarding deliveries.  American Expediting failed to reimburse Collective Action Members and New York Class Members for the expenses related to the purchase, use or maintenance of the tools of the trade.

174.    Collective Action Members and New York Class Members were earning less than the minimum wage under both the FLSA and NYLL at American Expediting and having to pay for the tools of the trade brought their wages even further below the minimum wage.

175.    American Expediting improperly classified Collective Action Members and New York Class Members as independent contractors for their work as delivery drivers in order to avoid paying them for every hour worked, minimum wage, overtime wages and spread of hours pay.

176.    In actuality, Collective Action Members and New York Class Members were employees rather than independent contractors.

177.    Collective Action Members and New York Class Members never generated any business or client relationships.  All deliveries were assigned to Collective Action Members and New York Class Members by American Expediting.  Collective Action Members and New York Class Members never worked directly for American Expediting's clients on their own without going through American Expediting.

178.    American Expediting set the fees that were charged to clients for deliveries made by Collective Action Members and New York Class Members.

179.    American Expediting determined the priority and delivery times for deliveries made by Collective Action Members and New York Class Members.

180.    Collective Action Members and New York Class Members did not share in American Expediting's profits or losses, nor did they invest in American Expediting.

181.    The duties and responsibilities of delivery drivers who made deliveries for American Expediting, including those of Collective Action Members and New York Class Members, did not include any managerial responsibilities or the exercise of independent judgment.  The delivery driver position was low skilled

182.    During their employment with American Expediting, Collective Action Members and New York Class Members did not work for any other companies.

183.    American Expediting maintained some employment records for Collective Action Members and New York Class Members.

**Defendants' Additional FLSA and NYLL Violations**

184.    In their time, attendance, and payroll records, Defendants intentionally understated the amount of time that Plaintiff, Collective Action Members, and New York Class Members worked in order to avoid paying them the total wages they were owed.

**American Expediting's and Victor Finnegan's Joint and Several Successor Liability for A to Z Couriers' FLSA and NYLL Violations and Conversion of its Employees' Wages**

185.    When American Expediting and Victor Finnegan acquired A to Z Couriers they became jointly and severally liable for, *inter alia*, A to Z Couriers':  1) FLSA and NYLL violations; and 2) conversion of its employees' wages.

186.    Additionally, when American Expediting and Victor Finnegan agreed to acquire A to Z Couriers they had both actual and constructive notice of A to Z Couriers':  1) FLSA and NYLL violations; and 2) conversion of its employees' wages.  They had constructive notice because even minimal diligence would have put them on notice of these liabilities.  American Expediting and Victor Finnegan have the ability to provide relief to Plaintiff, Collective Action Members and New York Class Members who were victims of these labor practices.  American

Expediting has been in business for over 30 years and earns millions in revenue each year.  There has been a substantial continuity in business operations.  After American Expediting acquired A to Z Couriers it continued providing the same services, used the same employees, working conditions largely remained the same and American Expediting continued operating from locations used by A to Z Couriers.  American Expediting also used much of the same equipment and delivery methods used by A to Z Couriers.

## FIRST CAUSE OF ACTION
### (FLSA: Unpaid Minimum Wage)
### (On Behalf of Plaintiff and Collective Action Members)

187.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

188.    Defendants were required to pay Plaintiff and Collective Action Members the minimum wage as set forth in the FLSA, 29 U.S.C. §§ 201, *et seq*., including 29 U.S.C. § 206.

189.    At all relevant times, Defendants had a policy and practice of refusing to pay minimum wage to their employees.

190.    As outlined above, during the relevant time period, Defendants' practices violated the provisions of the FLSA regarding payment of a minimum wage to Plaintiff and Collective Action Members.

191.    Defendants have willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiff and Collective Action Members the minimum wage.

192.    Accordingly, Plaintiff and Collective Action Members are entitled to the difference between the FLSA minimum wage and the paid cash wages for each hour worked as damages for Defendants' violations of the FLSA's minimum wage provisions.

193.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C §§ 216(b) and 255(a).

194.    Plaintiff and Collective Action Members seek recovery of unpaid wages, damages, liquidated damages, prejudgment interest, attorneys' fees, costs to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b), and such other legal and equitable relief as the Court deems just and proper.

### SECOND CAUSE OF ACTION
### (FLSA: Failure to Pay Overtime Compensation)
### (On Behalf of Plaintiff and Collective Action Members)

195.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

196.    Defendants were required to pay Plaintiff and Collective Action Members no less than one and one-half (1 ½) times the regular rate at which they were employed for all hours worked in excess of forty (40) in a workweek pursuant to the overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201, *et seq*., including 29 U.S.C. §§ 207(a)(1) and 215(a).

197.    At all relevant times, Defendants had a policy and practice of refusing to pay overtime compensation to their employees for their hours worked in excess of forty (40) hours per workweek.

198.    During the relevant time period, Plaintiff and Collective Action Members worked in excess of forty hours per workweek and, because of Defendants' above-outlined violations of the FLSA, were not paid appropriate overtime compensation.

199.    As outlined above, during the relevant time period, Defendants' practices violated the provisions of the FLSA regarding payment of overtime wages to Plaintiff and Collective Action Members.

200.     Defendants have willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiff and Collective Action Members overtime wages.

201.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C §§ 216(b) and 255(a).

202.     Plaintiff and Collective Action Members seek recovery of unpaid wages, damages, liquidated damages, prejudgment interest, attorneys' fees, costs to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b), and such others legal and equitable relief as the Court deems just and proper.

**THIRD CAUSE OF ACTION**
**(FLSA: Failure to Reimburse for**
**Expenses Relating to Tools of the Trade)**
**(On Behalf of Plaintiff and Collective Action Members)**

203.     Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

204.     At all relevant times, in violation of, *inter alia*, 29 C.F.R. § 531.35 the Defendants had a policy and practice of refusing to reimburse Plaintiff and Collective Action Members for expenses incurred in relation to the tools of the trade used by Plaintiff and Collective Action Members in order to make deliveries for Defendants' customers.

205.     Defendants failed to pay Plaintiff and Collective Action Members for expenses incurred in relation to the tools of the trade, that is, for the purchase of public transit tickets such as, *inter alia*, metro cards, bicycles, vehicles, fuel, mileage and the maintenance or repair thereof, cell phones and related charges for data and minute usage and the maintenance and repair thereof.

206.     Defendants knew of and/or showed a willful disregard for the FLSA as evidenced by their failure to reimburse Plaintiff and Collective Action Members for expenses incurred in

35

relation to the tools of the trade used by Plaintiff and Collective Action Members when Defendants knew such was due.

207.    Plaintiff and Collective Action Members seek recovery of unpaid wages, damages, liquidated damages, prejudgment interest, attorneys' fees, costs to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b), and such other legal and equitable relief as the Court deems just and proper.

### FOURTH CAUSE OF ACTION
### (NYLL: Unpaid Minimum Wage)
### (On Behalf of Plaintiff and New York Class Members)

208.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

209.    As outlined above, Defendants' practices violated NYLL §§ 650 *et seq*, including NYLL § 652, regarding payment of a minimum wage to Plaintiff and the members of the New York Class.

210.    As a result, Defendants failed to pay Plaintiff and the members of the New York Class a minimum wage as required by the NYLL.

211.    Accordingly, Plaintiff and the members of the New York Class are entitled to the difference between the NYLL minimum wage and the paid wages for each hour worked as damages for Defendants' violations of the NYLL's minimum wage provisions.

212.    The foregoing conduct, as alleged, constitutes a willful violation of the NYLL without a good faith basis, within the meaning of NYLL § 198, and as a result Plaintiff and the members of the New York Class are entitled to damages, liquidated damages and such others legal and equitable relief as the Court deems just and proper.

213.    Plaintiff and the members of the New York Class also seek to have their reasonable attorneys' fees, costs and pre and post-judgment interest paid by Defendants, as provided by the NYLL.

**FIFTH CAUSE OF ACTION**
**(NYLL: Failure to Pay Overtime Compensation)**
**(On Behalf of Plaintiff and New York Class Members)**

214.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

215.    During the relevant time period, Plaintiff and the members of the New York Class worked in excess of forty hours per workweek.

216.    Despite the hours worked by Plaintiff and the members of the New York Class, Defendants willfully, in bad faith, and in knowing violation of 12 NYCRR § 142-2.2, failed and/or refused to pay them appropriate overtime compensation.

217.    The foregoing conduct, as alleged, constitutes a willful violation of the NYLL without a good faith basis, within the meaning of NYLL § 198, and as a result, Plaintiff and the members of the New York Class are entitled to damages, liquidated damages and such others legal and equitable relief as the Court deems just and proper.

218.    Plaintiff and the members of the New York Class also seek to have their reasonable attorneys' fees, costs and pre and post-judgment interest paid by Defendants, as provided by the NYLL.

**SIXTH CAUSE OF ACTION**
**(NYLL: Spread of Hours)**
**(On Behalf of Plaintiff and New York Class Members)**

219.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

220.    Consistent with their policy and pattern or practice, Defendants failed to pay Plaintiff and the members of the New York Class additional compensation of one hour's pay at the basic minimum hourly wage rate for each day during which they worked more than 10 hours.

221.    By Defendants' failure to pay Plaintiff and the members of the New York Class spread-of-hours pay, Defendants have willfully violated the NYLL §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations, including, but not limited to, 12 NYCRR. §§ 137-1.7, 137-3.10.

222.    Due to Defendants' violations of the NYLL, Plaintiff and the members of the New York Class are entitled to recover from Defendants their unpaid spread of hours wages, damages, liquidated and/or punitive damages, reasonable attorneys' fees and costs of the action, and pre and post-judgment interest.

## SEVENTH CAUSE OF ACTION
### (NYLL: Failure to Furnish Wage Statements)
### (On Behalf of Plaintiff and New York Class Members)

223.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

224.    Defendants failed to furnish Plaintiff and the members of the New York Class with wage statements that specifically enumerated certain criteria, as required by NYLL § 195(3).

225.    Defendants' violations of the NYLL were willful and, as a result, Defendants are liable to Plaintiff and the members of the New York Class in the amount of $2,500 for each violation.

226.     In addition to statutory penalties, Plaintiff and the members of the New York Class are entitled to recover from Defendants damages, liquidated and/or punitive damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## EIGHTH CAUSE OF ACTION
### (NYLL: Unlawful Deduction From Wages)
### (On Behalf of Plaintiff and New York Class Members)

227.     Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

228.     A to Z Couriers wrongfully deducted from Plaintiff's and New York Class Members wages in violation of applicable laws, including NYLL § 193.

229.     Plaintiff and New York Class Members did not expressly authorize, in writing, deductions from their wages.

230.     A to Z Couriers wrongfully deducted monies from Plaintiff's and New York Class Members' wages purportedly for insurance, but A to Z Couriers did not actually use this money to purchase insurance.

231.     In addition to statutory penalties, Plaintiff and the members of the New York Class are entitled to recover from Defendants damages, liquidated and/or punitive damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## NINTH CAUSE OF ACTION
### (NYLL: Failure to Reimburse for
### Expenses Relating to Tools of the Trade)
### (On Behalf of Plaintiff and New York Class Members)

232.     Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

233.     At all relevant times, in violation of, *inter alia*, 12 NYCRR § 142-2.10, the Defendants had a policy and practice of refusing to reimburse Plaintiff and New York Class

Members for expenses incurred in relation to tools of the trade used by Plaintiff and New York Class Members in order to make deliveries for Defendants' customers.

234.    Defendants failed to pay Plaintiff and New York Class Members for expenses incurred in relation to the tools of the trade, that is, for the purchase of public transit tickets such as, *inter alia*, metro cards, bicycles, vehicles, and the maintenance or repair thereof, fuel, mileage, cell phones and related charges for data and minute usage and the maintenance and repair thereof.

235.    Defendants knew of and/or showed a willful disregard for the NYLL as evidenced by their failure to reimburse Plaintiff and New York Class Members for expenses incurred in relation to the tools of the trade used by Plaintiff and New York Class Members when Defendants knew such was due.

236.    In addition to statutory penalties, Plaintiff and the members of the New York Class are entitled to recover from Defendants damages, liquidated and/or punitive damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## TENTH CAUSE OF ACTION
### (CONVERSION)
### (On Behalf of Plaintiff and New York Class Members)

237.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

238.    A to Z Couriers willfully and maliciously converted funds owed to Plaintiff and New York Class Members by withholding monies from them on the pretext that said money was used to purchase insurance for them.

239.    At the time of the conversion, the Plaintiff and New York Class Members were the owners and rightful possessors of the converted funds.

240.    Upon information and belief, A to Z Couriers did not use this money to purchase insurance for Plaintiff and New York Class Members and instead kept it for their own benefit.

241.    Upon information and belief, Plaintiff and New York Class Members did not provide A to Z Couriers with authorization to withhold this money.

242.    At all times relevant hereto, Plaintiff and New York Class Members had a superior right of possession to these funds which A to Z Couriers wrongfully deducted.

243.    At all times relevant hereto, Plaintiff and New York Class Members did not receive any benefit or service in exchange for the converted funds.

244.    Due to A to Z Couriers' conversion of Plaintiff's and New York Class Members' wages, they are entitled to recover from A to Z Couriers monetary damages, special damages, punitive damages, reasonable attorneys' fees and costs of the action, and pre and post-judgment interest.

## PRAYER FOR RELIEF

**WHEREFORE,**

Plaintiff, on behalf of himself and all Collective Action Members and New York Class Members, prays for the following relief:

a.    That the Court finds Defendants to have violated the provisions of the New York Labor Law as to Plaintiff and the members of the New York Class;

b.    That the Court finds Defendants to have violated the Fair Labor Standards Act as to Plaintiff and the Collective Action Members;

c.    That the Court determines that this action may proceed as a collective action pursuant to 29 U.S.C. § 216(b);

41

d. That the Court determines that this action may proceed as a class action pursuant to Fed. R. Civ. P. 23.

e. That the Court determine that Defendants' violations were willful;

f. An award to Plaintiff, Collective Action Members and New York Class for the amount of unpaid wages owed, including interest thereon, damages and penalties, including liquidated damages, subject to proof at trial;

g. An award of liquidated damages in an amount to be determined at trial pursuant to 29 U.S.C. § 2617(a)(l)(A)(iii);

h. An award of liquidated damages pursuant to the NYLL;

i. That the Court find that Defendants must cease and desist from unlawful activities in violation of the FLSA and NYLL;

j. An award of reasonable attorneys' fees and costs pursuant to the NYLL and 29 U.S.C. § 216 and/or other applicable laws; and/or

k. Any such other and further relief, in law or equity, as this Court may deem appropriate and just.

## <u>DEMAND FOR TRIAL BY JURY</u>

245. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury as to all issues so triable.

Dated: January 15, 2016

                                            **THE SULTZER LAW GROUP, P.C.**

By:   /s/ Jason P. Sultzer

Jason P. Sultzer, Esq. (Bar ID #: JS4546)
Joseph Lipari, Esq. (Bar ID #: JL3194)
Jean M. Sedlak, Esq. (Bar ID #: JS4895)
77 Water Street, 8th Floor
New York, NY 10005
Tel: (646) 722-4266
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
liparij@thesultzerlawgroup.com
sedlakj@thesultzerlawgroup.com

/s/ Brett D. Zinner

Brett D. Zinner, Esq. (Bar ID # BZ3324)
**ROSENBERG FORTUNA &
LAITMAN, LLP**
666 Old Country Road, Suite 810
Garden City, New York 11530
Tel: (516) 228-6666
Fax: (516) 228-6672
brett@rosenbergfortuna.com

*Counsel for Plaintiff and the Class*

I consent to be a party plaintiff in the foregoing lawsuit against American Expediting Company, Inc., A to Z Couriers, Inc., Victor Finnegan, Adam Dally and John Does 1-25, in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b).

I hereby designate the Sultzer Law Group to represent me in the suit.

Richard Marasco
Signature

Richard Marasco
Print Name

211-34  23ᶜᵈ Ave
Address

Bayside, NY 11360
City, State, and Zip Code