

**Littler Mendelson, P.C.**
900 Third Avenue
New York, NY 10022.3298

Andrew M. Spurchise
212.583.2684 direct
212.583.9600 main
212.832.2719 fax
aspurchise@littler.com

May 27, 2016

**VIA ECF**

The Honorable Pamela K. Chen
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    *Richard Marasco v. American Expediting Company, Inc. et al.*
        Case No. 16-cv-232 (PKC)(JO)

Dear Judge Chen:

We represent Defendants American Expediting Company, Inc. ("AMEX") and Victor Finnegan ("Finnegan") (collectively, "Defendants") in the above-referenced matter.  On April 21, 2016, Your Honor directed the parties to submit briefing on the issue of whether the temporal scope of the Arbitration Provision contained in the Owner Operator Agreement ("OOA") between Plaintiff Marasco and Owner Operator Services, LLC ("OOS") encompasses Plaintiff's claims.

As set forth below, given the broad Arbitration Provision, and the strong presumption in favor of arbitration, all of Plaintiff's claims against AMEX and Finnegan premised on the theory that Plaintiff was misclassified as an independent contractor are subject to arbitration.

## I.    RELEVANT BACKGROUND INFORMATION

### A.    AMEX's Operations

AMEX arranges for the completion of (or "brokers") a wide array of transportation services on behalf of its clients nationwide.   These services are performed by various types of transportation providers, ranging from large international carriers (e.g., FedEx) to single owner-operators who specialize in, and are licensed to perform, the brokered services (the "vendors"). Finnegan is the President and Owner of American Expediting.

OOS is a "third-party administrator" that offers various administrative services to its clients in the transportation and logistics industry, including AMEX.  AMEX utilizes OOS to, among other things, manage the contracting process with vendors.  To that end, OOS enters into OOAs with the vendors, and also facilitates the vendors' execution of independent contractor agreements with AMEX.

#### B.     Plaintiff's Allegations

In his Complaint, Plaintiff alleges various wage and hour violations against Defendants under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").  Although Plaintiff's Complaint is far from a model of clarity, it appears that Plaintiff purports to pursue claims against AMEX and Finnegan on two separate theories.  Specifically, Plaintiff alleges he performed services for AMEX as an acknowledged employee (while performing "messenger" services), and also includes vague allegations relating to delivery services that drivers performed for AMEX as putative independent contractors.  (Compl., ¶¶ 131–34; 164; 175).  Plaintiff alleges he ceased working for AMEX "as a[n] [employee] messenger [at] the end of 2014" (Compl., ¶ 55), but does not specify whether, or when he *began* or *ceased*, personally performing services arranged by AMEX as a putative independent contractor.

Since the parties last appeared before the Court, defense counsel has conferred with Plaintiff's counsel in an effort to resolve the ambiguities in Plaintiff's Complaint. Plaintiff offered to produce documents substantiating his position that he worked for or performed services arranged by AMEX (either as an acknowledged employee or putative independent contractor) *prior* to accepting the OOA, but has not yet done so.

Defendants have informally produced documentation demonstrating that during the time period in which Plaintiff alleges to have worked as an acknowledged foot messenger employee for AMEX, he was instead employed by a separate unnamed entity, A to Z Logistics, Inc. ("A to Z"). Defendants have also explained that Plaintiff began performing delivery services brokered by AMEX as an independent contractor in or around March 2015, when he entered into the OOA.

#### C.     The Arbitration Provision

On February 24, 2015, Plaintiff entered into an independent contractor agreement with AMEX, which was administered by OOS.  On March 11, 2015, Plaintiff and OOS entered into the OOA.[1]

The OOA contains a broad Arbitration Provision that provides, in relevant part, as follows:

> ***In the event of  any dispute, claim, question, or disagreement arising from or relating to this agreement or breach thereof, or service arrangement between [Plaintiff] and OOS's Customers or clients***, the parties hereto shall use their best efforts to settle the dispute, claim, question, or disagreement . . . . If resolution of the dispute, claim, question, or disagreement is not reached within a period of 60 days, then upon notice by either party, disputes that are within the jurisdictional

---

[1] A true and correct copy of the OOA is attached hereto as **Exhibit A**.

maximum for small claims will be settlement in the small claims court where [Plaintiff] resides.

***All other disputes, claims, questions, or differences beyond the jurisdictional maximum for small claims courts within the locality of [Plaintiff's] residence shall be finally settled by arbitration in accordance with the Federal Arbitration Act***.

(*See* Exh. A, § 27) (emphasis supplied).

The Arbitration Provision also states that Plaintiff may pursue claims in arbitration on an individual basis, and not as a representative member of a class. (*Id*. at § 27(c) ["Neither [Plaintiff] nor OOS shall be entitled to join or consolidate claims in arbitration by or against other individuals or entities, or arbitrate any claim as a representative member of a class or in a private attorney general capacity."]).

## II. PLAINTIFF'S INDEPENDENT CONTRACTOR MISCLASSIFICATION CLAIMS AGAINST DEFENDANTS ARE SUBJECT TO ARBITRATION

Plaintiff contends that "an arbitration clause in an agreement is not binding on events that occurred *before* the signing of the agreement." (Dkt. No. 13). This is just wrong.

As affirmed by the United States Supreme Court in *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 338–39 (2011) ("*Concepcion*"), the Federal Arbitration Act ("FAA") declares a liberal policy favoring the enforcement of arbitration agreements. In enacting the FAA, Congress sought to overcome widespread judicial hostility to the enforcement of arbitration agreements. *See Hall St. Assoc., LLC v. Mattel, Inc.*, 552 U.S. 576, 581 (2008); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) (explaining that the FAA was enacted "[t]o overcome judicial resistance to arbitration").

To that end, the FAA mandates that courts apply a presumption *favoring* arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). In fact, courts must enforce arbitration agreements "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960); *see also WorldCrisa Corp. v. Armstrong,* 129 F.3d 71, 74 (2d Cir. 1997) (in light of "the strong federal policy in favor of arbitration, the existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."); *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 147 (2d. Cir. 2004) (citing the strong presumption in favor of arbitration established by the FAA and Supreme Court precedent).

For these reasons, courts around the country – including the Second Circuit – have found that where broad arbitration provisions are not expressly limited to future claims, they should be applied to preexisting claims.

For example, in *Coenen v. R.W. Pressprich & Co.*, 453 F.2d 1209 (2d Cir. 1972), the plaintiff signed an arbitration agreement as part of his application for membership to the New York Stock Exchange ("NYSE"), agreeing to arbitrate "any controversy" among him and members of the NYSE. When the plaintiff subsequently brought claims against another member of the NYSE, he argued his claims were not subject to arbitration since they predated the arbitration agreement. *Id*. at 1212. The Second Circuit rejected this argument, finding that because the arbitration agreement expressly applied to "any controversy" amongst members, it therefore encompassed preexisting disputes. *Id*.

Similarly, in *Smith/Enron Cogeneration Ltd. Partnership, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88 (2d Cir. 1999), the defendants sought to compel arbitration of claims arising in 1993 under an arbitration agreement executed in 1994. The plaintiff contended that because the conduct predated the arbitration agreement, its claims fell outside of the clause, which "provid[ed] for the arbitration of 'any dispute, disagreement, controversy or claim arising under or relating to any obligation or claimed obligation under the provisions of th[e] Agreement." *Id*. at 98–99. The Second Circuit disagreed, finding that "[a]s the arbitration clause here . . . does not contain any temporal limitation, the relevant inquiry is whether [plaintiff's] claims 'relat[e] to any obligation or claimed obligation under' the 1994 Agreement, not *when they arose*," and affirmed the district court's decision compelling arbitration. *Id*. at 99 (emphasis supplied).[2]

The same result is warranted here. The Arbitration Provision plainly and unambiguously states that it applies to "***any dispute, claim, question, or disagreement arising from or relating to this agreement or breach thereof, or service arrangement between***

[2] *See also Zink v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 13 F. 3d 330, 333–34 (10th Cir. 1993) (enforcing an arbitration agreement even with respect to transactions that pre-dated the agreement where the agreement required arbitration of "any controversy between [the parties] arising out of [plaintiff's] business or this agreement") (quoting arbitration agreement); *Belke v. Merrill Lynch, Pierce, Fenner & Smith,* 693 F.2d 1023, 1028 (11th Cir. 1982) *abrogated on other grounds, Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213 (1985) ("By its own terms the contract between the parties covers not only disputes arising out of the agreement, but . . . includes 'any controversy between us arising *out of your business*.' An arbitration clause covering disputes arising out of the contract *or* business between the parties evinces a clear intent to cover more than just those matters set forth in the contract.") (emphasis in original); *Valle v. ATM Nat'l, LLC*, No. 14-cv-7993 (KBF), 2015 U.S. Dist. LEXIS 11788, at *14 (S.D.N.Y. Jan. 30, 2015) ("The Arbitration Provision applies to all of plaintiffs' claims, even if they pre-date the Amended Agreement, because the Arbitration Provision expressly states its applicability to any legal claim arising from the deposit account."); *Reid v. Supershuttle Int'l, Inc.*, No. 08-cv-4854 (JG) (VVP), 2010 U.S. Dist. LEXIS 26831, at *13–14 (E.D.N.Y. Mar. 22, 2010) ("The Second Circuit has held that arbitration clauses without an express limitation to 'future disputes' should be applied to preexisting claims."); *Williams v. Joseph Dillon & Co.*, 243 A.D.2d 559, 560 (2d Dep't 1997) (language referring to "any controversy" includes transactions that pre-date that contract).

***[Plaintiff] and OOS's Customers or clients***." Thus, the relevant question is not whether some (or all) of the conduct giving rise to Plaintiff's claims predates the Provision, but whether Plaintiff's claims "aris[e] from or relat[e] to [the OOA] . . . or [the] service arrangement between [Plaintiff] and OOS's Customers or clients." Any claims premised on the theory that Plaintiff was misclassified as an independent contractor while performing transportation services brokered by AMEX (OOS' client) plainly arise from or relate to the OOA and Plaintiff's service arrangement with AMEX. Further, any doubts in this regard must be resolved in favor of arbitration. Accordingly, Plaintiff's misclassification claims against AMEX and Finnegan are subject to arbitration.

AMEX suspects Plaintiff will argue (as he did in his April 7, 2016 letter) that the Second Circuit's decision in *Holick v. Cellular Sales of New York*, 802 F.3d 391 (2d Cir. 2014) dictates that Your Honor reach a different conclusion. However, in that case, when the arbitration agreement was executed, the parties' contractual positions changed in a way that impacted arbitrability.

Specifically, sometime after performing services for the defendant as putative independent contractors, the plaintiffs became acknowledged employees and entered into a Compensation Agreement. *Id*. at 393. The Compensation Agreement included an arbitration provision that provided that "[a]ll claims, disputes, or controversies ***arising out of, or in relation to this document*** or ***Employee's employment with*** [Cellular Sales] shall be decided by arbitration." *Id*. (emphasis supplied). The Second Circuit determined that the narrow agreement to arbitrate disputes relating to the plaintiffs' "employment" naturally should not apply to claims arising from the services they previously performed as putative independent contractors.

> [T]he presumption of arbitrability is overcome because we find positive assurance that the arbitration clause's scope — at least insofar as it concerns the promise to arbitrate matters arising out of, or in relation to Employee's employment — is temporally limited. We reach this conclusion, in large part, based on the fact that when the Compensation Agreements were signed, the parties' contractual positions changed in a way that impacted arbitrability. In the Sales Agreements, Defendants-Appellants agreed with the Sales Companies that [Plaintiffs] were not employees of Cellular Sales. However, about a year and a half later, Defendants-Appellants agreed to employ [Plaintiffs] . . . It would be inconsistent with the parties' conduct to construe the Compensation Agreement, which referenced 'employment,' to apply to a period when the parties themselves did not contemplate such a relationship.

*Id*. at 398 (citations omitted).

Here, AMEX and Finnegan only seek to compel arbitration of the portion of Plaintiff's Complaint premised upon the theory that Defendants misclassified him as an independent contractor. The *Holick* decision is thus wholly inapplicable.

In sum, given the broad Arbitration Provision, and the strong presumption of arbitrability, Defendants submit that all of Plaintiff's misclassification claims against AMEX and Finnegan are subject to arbitration.[3] No parole evidence is needed to determine whether the broad Provision covers these claims.

We thank the Court for its time and consideration.

Respectfully submitted,

LITTLER MENDELSON, P.C.

*/s/ Andrew M. Spurchise*

Andrew M. Spurchise

Encl.

cc:     Hon. James Orenstein, United States Magistrate Judge (via ECF)
        All counsel of record (via ECF)

Firmwide:140699653.3 065529.1004

---

[3] Even if Your Honor does not agree with Defendants' position, Defendants respectfully request that they still be afforded an opportunity to bring their contemplated motion in order to preserve the record for appeal.  See 9 U.S.C. § 16(a).