UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RICHARD MARASCO, individually on behalf of
himself and all others similarly situated,

                     Plaintiff,

             -against-

A TO Z LOGISTICS, INC., *et al*.

                  Defendants.

Case No. 16-cv-00232 (PKC) (JO)

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT,
PROVISIONAL CERTIFICATION OF THE SETTLEMENT CLASS, APPOINTMENT
OF CLASS COUNSEL, AND APPROVAL OF PLAINTIFF'S NOTICE OF
SETTLEMENT**

## TABLE OF CONTENTS

Table of Contents……………………………………………..……………………i-ii

Table of Authorities………………………………………………..…………………iii-vi

I.      Introduction……………………………………………..…………………..1

II.     The Settlement…………………………………………………………..2

        A.  Settlement Terms……………………………..…………………………..3

        B.  Allocation to Workers………………………………………………..3

        C.  Releases……………………………………………………..………………..4

        D.  Attorneys' Fees, Service Award, and Settlement Administration Costs……..….4

III.    Class Action Settlement Procedure…………………………………………5

IV.     The Court Should Grant Plaintiffs' Request to Conditionally Certify
        The Rule 23 Settlement Class……………………………………………6

        A.  Numerosity………………………………………………………...………7

        B.  Commonality and Predominance……………………………………7

        C.  Typicality………………………………………………………………9

        D.  Adequacy………………………………………………………………9

        E.  Superiority………………………………………………………………10

V.      Preliminary Approval of the Settlement is Appropriate……………………..12

        A.  The Settlement is Procedurally Fair……………………………………14

        B.  The Settlement is Substantively Fair, Reasonable, and Adequate………………14

C.  Litigation Through Trial Would be Complex, Costly,
    and Long (*Grinnell* Factor 1)……………………………………………………15

D.  The Reaction of the Class (*Grinnell* Factor 2)…………………………………...16

E.  Discovery Has Advanced Far Enough for the Parties to Evaluate
    The Strengths and Weaknesses of the Case (*Grinnell* Factor 3)………………...16

F.  Plaintiffs Would Face Real Risks if the Case Proceeded
    (*Grinnell* Factors 4 and 5)………………………………………………….......17

G.  Risks Involved in Maintaining the Class Through Trial
    (*Grinnell* Factor 6)……………………………………………………….……………18

H.  Defendant's Ability to Withstand a Greater Judgment is Not
    Determinative (*Grinnell* Factor 7)…………………………………………………18

I.  The Settlement Fund is Substantial, Even in Light of the Best Possible
    Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)…….19

VI.  The Notice Plan, Distribution Process, and Release Should be Approved…………..20

VII.  The Court Should Set A Date For A Final Approval Hearing………………………21

VIII.  Plaintiff Will Seek Approval of the FLSA Settlement………………………...…...21

IX.  Conclusion……………………………………………………………...………………22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche
  Bank*, 236 F.3d 78 (2d Cir. 2001) ...................................................................15, 19

*Bourlas v. Davis Law Assocs.*,
  237 F.R.D. 345 (E.D.N.Y. 2006) ........................................................................12

*Caridad v. Metro-North Commuter R.R.*,
  191 F.3d 283 (2d Cir. 1999)..................................................................................9

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)................................................................................14

*Clark v. Ecolab Inc.*,
  No. 07 Civ. 8623, 2009 U.S. Dist. LEXIS 108736 (S.D.N.Y. Nov. 17, 2009) ......12

*Comcast v. Behrand*,
  569 U.S. 27 (2013)..............................................................................................18

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d. Cir. 1995)...................................................................................7

*Damassia v. Duane Reade, Inc.*,
  250 F.R.D. 152 (S.D.N.Y. 2008) ..........................................................................9

*deMunecas v. Bold Food*,
  No. 09 Civ. 00440, 2010 U.S. Dist. LEXIS 87644 (S.D.N.Y. Aug. 23, 2010) ......13

*Dorn v. Eddington Sec., Inc.*,
  No. 08 Civ. 10271, 2011 U.S. Dist. LEXIS 11931 (S.D.N.Y. Jan 20, 2011).........16

*Eldred v. Comforce Corp.*,
  No. 3:08-CV-1171, 2010 U.S. Dist. LEXIS 18260 (N.D.N.Y. Mar. 2, 2010)
  (Kahn, J.)...........................................................................................................7, 8

*Elliot v. Leatherstocking Corp.*,
  No. 3:10-CV-0934, 2012 U.S. Dist. LEXIS 171443
  (N.D.N.Y Dec. 4, 2012)...................................................8, 9, 11, 12, 14, 18, 20

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007) ......13

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005)................................................................13, 15, 18, 19, 20

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000)………………................................................................14

*Handschu v. Special Services Div.*,
  787 F.2d 828 (2d Cir. 1986)................................................................................21

*Hernandez v. Fresh Diet, Inc.*,
  No. 12-cv-4339, 2014 U.S. Dist. LEXIS 139069 (S.D.N.Y. Sep. 29, 2014)..........17

*Hernandez v. Merrill Lynch & Co.*,
  No. 11 Civ. 8472, 2012 U.S. Dist. LEXIS 165771 (S.D.N.Y. Nov. 15, 2012) ......13

*In re Ira Haupt & Co.*,
  304 F. Supp. 917 (S.D.N.Y. 1969) .......................................................................17

*Jackson v. Bloomberg, L.P.*,
  298 F.R.D. 152 (S.D.N.Y. 2014) ...........................................................................8

*Jin v. Shanghai Original, Inc.*,
  No. 16-cv-5633, 2018 U.S. Dist. LEXIS 55829 (E.D.N.Y. Apr. 2, 2018) ............17

*Joel A. v. Giuliani*,
  218 F.3d 132 (2d Cir. 2000)................................................................................20

*Kelen v. World Fin. Network Nat'l Bank*,
  No. 12-CV-5024, 2014 U.S. Dist. LEXIS 112079 (S.D.N.Y. July 28, 2014) ..........9

*Lizondro-Garcia v. Kefi LLC*,
  300 F.R.D. 169 (S.D.N.Y. 2014) ...........................................................................7

*Marroquin Alas v. Champlain Valley Specialty of N.Y., Inc.*,
  No. 5:15-cv-00441, 2016 U.S. Dist. LEXIS 79043
  (N.D.N.Y. June 17, 2016).....................................................8, 9, 12, 14, 15, 16, 18

*Maywalt v. Parker & Parsley Petroleum Co.*,
  67 F.3d 1072 (2d Cir. 1995)................................................................................12

*McEarchen v. Urban Outfitters, Inc.*,
  No. 13-cv-3569, 2017 U.S. Dist. LEXIS 144203 (E.D.N.Y. Sept. 6, 2017) ..........17

*McMahon v. Olivier Cheng Catering & Events*,
  No. 08-cv-8713 (PGG), 2010 U.S. Dist. LEXIS 18913 (S.D.N.Y. Mar. 3,
  2010) ..................................................................................................................22

*In re Michael Milken & Assocs. Sec. Litig.*,
 150 F.R.D. 57 (S.D.N.Y. 1993) ....................................................................21

*Moore v. PaineWebber, Inc.*,
 306 F.3d 1247 (2d Cir. 2002) .........................................................................8

*In re Nasdaq Market-Makers Antitrust Litig.*,
 176 F.R.D. 99 (S.D.N.Y. 1997) ....................................................................12

*Newman v. Stein*,
 464 F.2d 689 (2d Cir. 1972) ..........................................................................19

*Officers for Justice v. Civil Serv. Comm'n*,
 688 F.2d 615 (9th Cir. 1982) .........................................................................19

*In re Painewebber Ltd. P'ships Litig.*,
 171 F.R.D. 104 (S.D.N.Y. 1997) ..................................................................17

*Palacio v. E*TRADE Fin. Corp.*,
 No. 10 Civ. 4030, 2012 U.S. Dist. LEXIS 41886 (S.D.N.Y. Mar. 12, 2012)........13

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
 163 F.R.D. 200 (S.D.N.Y. 1995) ..................................................................13

*Reyes v. Altamarea Grp., LLC*,
 No. 10 Civ. 6451, 2011 U.S. Dist. LEXIS 115982 (S.D.N.Y. June 3, 2011)........13

*Ruiz v. Citibank, N.A.,*.
 93 F. Supp. 3d 279 (S.D.N.Y. 2015) ............................................................17

*Scott v. Chipotle Mexican Grill, Inc.*,
 No. 12-CV-8333, 2017 U.S. Dist. LEXIS 62902 (S.D.N.Y. Mar. 29, 2017) ........17

*Sykes v. Mel S. Harris & Assocs. LLC*,
 780 F.3d 70 (2d Cir. 2015) ............................................................................9

*In re Traffic Exec. Ass'n E. R.Rs.*,
 627 F.2d 631 (2d Cir. 1980) ..........................................................................13

*Vargas v. Capital One Fin. Advisors*,
 559 Fed. Appx. 22, 2014 U.S. App. LEXIS 4689 (2d Cir. 2014).........................21

*Velez v. Majik Cleaning Serv., Inc.*,
 No. 03 Civ. 8698, 2007 U.S. Dist. LEXIS 46223 (S.D.N.Y. June 25, 2007)........17

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
 396 F.3d 96 (2d Cir. 2005) ............................................................................12

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)................................................................................12, 16

**Statutes**

Fed. R. Civ. P. 23(c)(2)(B) ..................................................................................20

Fed. R. Civ. P. 23(e) ...........................................................................................5

Federal Rule of Civil Procedure 23(a) and (b)(3) ...............................................6

Federal Rules of Civil Procedure Rule 23(a)(4) ................................................9

FLSA......................................................................................4, 17, 18, 21, 22

New York Labor Law .........................................................................................18

Rule 23 ..........................................................1, 4, 6, 7, 11, 12, 15, 17, 18, 20, 21, 22

Rule 23(a)(2) ......................................................................................................7

Rule 23(b)(3)..............................................................................................8, 10, 11

Rule 23(c)(3) ......................................................................................................20

U.S. Constitution................................................................................................21

## I.       **INTRODUCTION**

Plaintiff Richard Marasco ("Plaintiff") previously worked as a messenger for Defendants A to Z Logistics, Inc ("A to Z").   Plaintiff alleges that A to Z and Defendant Victor Finnegan (collectively "Defendants"), did not pay him and other messenger employees for all the hours they worked, and did not pay appropriate overtime under federal and New York law.  Plaintiff brought his case as a putative class and collective action.

Following extensive negotiations, and a mediation before Alfred G. Feliu of Feliu Neutral Services, LLC, the parties reached a proposed settlement and are pleased to present it to this Court for approval.  The settlement provides for a "Gross Settlement Amount" of $285,000.00, which includes awards to workers, attorneys' fees and litigation expenses, a service award to Plaintiff, settlement administration costs, and taxes.

The proposed settlement covers approximately 132 messengers who worked for A to Z Logistics between January 1, 2013 (when A to Z purchased the assets of A to Z Couriers, without assuming that company's liabilities) and December 31, 2016 (when A to Z stopped employing messengers).

Approval of a class action requires two steps: first, the plaintiff requests preliminary approval of the proposed settlement and request authorization to send notice of the proposed settlement to the class.  The second step is requesting final approval, after the class has received notice and has had the opportunity to comment on the settlement.

With this motion, Plaintiff requests the first step, i.e. preliminary approval of the proposed settlement and leave to send the proposed notices of the settlement to the Settlement Class.    As described more fully below, the proposed Notice, comports with due process and Rule 23 precedent and will advise the members of the Settlement Class of their rights under the proposed settlement and

provide simple instructions on how to submit a claim, opt out of the class or object to the settlement. The Notice also advises class members that they must submit a claim in order to get paid and risk losing their claims if they do not do so.

Plaintiff also request that the Court preliminary certify the proposed class, appoint Plaintiff's counsel as Class Counsel, and set a date for a fairness hearing (which will be incorporated into the Notice).

## II.   **THE SETTLEMENT**

Plaintiff brought this action on January 15, 2016 following extensive pre-suit investigation. As a messenger for A to Z, Plaintiff was responsible for picking up and delivering various items to and from the five boroughs and Westchester County.  Plaintiff alleges that rather than being paid for the hours which he worked, he was paid per delivery at a rate which depended on the type of package and distance traveled, and which did not compensate him for the time he spent waiting for his first delivery each morning and the time spent between deliveries waiting for defendant to inform him when and where his next pick-up would take place.  As a result, Plaintiff alleges that he was not paid the minimum wage under New York and Federal law and was not paid overtime for weeks during which he worked more than 40 hours.

Following extensive discovery including review of hundreds of documents and payroll data, motion practice regarding an arbitration agreement signed by Plaintiff and regarding Plaintiff's claims against Defendant Finnegan individually, the parties began to discuss settlement in earnest.  In the meantime, Plaintiff retained an expert CPA to analyze the data provided by Defendants.  This process yielded a damages model based on the number of hours assumed worked by employees, pay rates, and number of weeks worked.  The parties participated in a mediation on August 2, 2018 with Alfred Feliu, Esq.  While that mediation did not result in an agreement, the parties continued discussions in

the following weeks and were ultimately successful in reaching the basic terms of a settlement for the Settlement Class.

**A. Settlement Terms**

The proposed settlement provides for a "Gross Settlement Amount" of $285,000.00, which includes all costs and expenses to pay both Class Members, Class Counsel, the Settlement Claims Administrator, and Plaintiff's Service Award. (Joint Stipulation of Settlement and Release § 1.14, attached as Exhibit A to the accompanying Declaration of Jeremy Francis in Support of Plaintiffs' Motion for Preliminary Approval of Proposed Settlement ("Francis Declaration")). The amount each worker will receive is based on their gross earnings during their employment with A to Z.

**B. Allocation To Workers**

After deductions for settlement administration costs, attorneys' fees and costs, and Plaintiff's Service Award, the $285,000.00 Gross Settlement Amount will be allocated to Class Members. . (Joint Stipulation of Settlement and Release § 7.2).   Only Class Members who timely and properly submit a Claim Form will become "Participating Claimants" and be issued a Settlement Check.  The Settlement Amount for Each Participating Claimant shall be determined by (1) taking the individual Class Members' gross earnings as the numerator, and (2) dividing it by the sum of gross earnings for all Class Members for work performed as the denominator.  The denominator shall be the same for all Class Members.  Thus, the Class Member's individual earnings divided by the sum of all earnings for all Class Members equal his/her Individual Percentage Allocation.  The Individual Percentage Allocation shall be multiplied by the Gross Settlement Amount ($285,000.00), minus (1) attorneys' fees and costs; (2) costs of the settlement administrator to implement and administer the settlement, including for the cost of notice and the claim form; (3) Service Award to the Named Plaintiff, as well as his payment as a class member after submitting a claim form; and (4) Defendants' share of

Employer Payroll Taxes.    (Id).    If the $285,000.00 is not exhausted by the claims of the Class Members, A to Z will receive the amount that remains. ((Joint Stipulation of Settlement and Release § 7.1(A)).

If the proposed settlement receives final approval, any awards of attorneys' fees, expenses, service awards, taxes and settlement administration costs will be paid from the settlement amount before the awards to the workers are determined. (Joint Stipulation of Settlement and Release § 7.2).

## C. Releases

All Class Members *who do not timely and properly opt-out* of the settlement will release the Releasees from the "Released Rule 23 Claims," regardless of whether they submitted a Claim Form. Class Members who timely and properly submit a Claim Form will qualify as "Participating Claimants" and will "opt-in" to the settlement, thereby releasing their "Released Rule 23 Claims" *and* their "Released FLSA Claims" against the Releasees. (Joint Stipulation of Settlement and Release §§ 8.1 and 8.2).   .  As set forth for fully in the Joint Stipulation, the released claims include all claims specifically related to employment of Class Members by Defendants for alleged unpaid regular or overtime wages, related wage and hour and wage payment claims and all interest on such claims, liquidated damages, punitive damages, and/or other damages, attorneys' fees, expenses, and costs related to such claims. (Joint Stipulation of Settlement and Release §§  1.26 and 1.27).

## D. Attorneys' Fees, Service Award, and Settlement Administration Costs

If the settlement receives final approval from the Court, Class Counsel will petition the Court for an award of attorneys' fees of up to one-third of the settlement, or $95,000.00, which includes reimbursement of their actual litigation expenses and costs.  ((Joint Stipulation of Settlement and Release § 7.4(A)).

Defendants will not oppose this application, including any appeal or request for reconsideration if the application is denied or modified by the Court, provided that the application for attorneys' fees does not exceed $95,000.00.   ((Joint Stipulation of Settlement and Release §§ 7.4(A) and (B))

Further, Plaintiff will request that the Court grant a Service Award of $5,000.00 to Plaintiff, Mr. Marasco, in recognition of the services he rendered on behalf of the Settlement Class. Defendants have agreed not to oppose this application.  (Joint Stipulation of Settlement and Release § 7.3(A)).

Finally, Plaintiff will ask the Court to approve payment of administration costs in the amount of approximately $8,000 to be paid directly to the Settlement Claims Administrator. (Joint Stipulation of Settlement and Release § 1.33).

## III.    CLASS ACTION SETTLEMENT PROCEDURE

The class action settlement procedure in this action includes the following three steps:

1.    Preliminary approval of the proposed settlement;

2.    Dissemination of mailed notice of settlement and claim forms to all Class Members; and

3.    A final settlement approval hearing at which Class Members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*"), §§ 11.22, *et seq.* (4th ed. 2002).  Plaintiff requests that the Court take the first step – granting preliminary approval of the Settlement Agreement and approval of the form and content of the proposed Notice to be sent to Class Members. Plaintiff respectfully submits the following proposed schedule, which was formulated in consultation with Defendants, for the Court's

consideration and approval:

1.    If the Court grants preliminary approval, within twenty business days of the preliminary approval order Defendants will provide the final list of Class Members to Class Counsel and the Settlement Claims Administrator. ((Joint Stipulation of Settlement and Release § 4.2(A)). The Court's date for the fairness hearing will be incorporated into the Notice.

2.    Within fourteen business days of the receipt of the class list, the Settlement Claims Administrator will mail the approved Notice and Claim Form to the Class. ((Joint Stipulation of Settlement and Release § 4.2(B)).

4.    Class Members will have sixty days after the mailing of the Notice to file a claim or to opt out of the settlement, or to object to the settlement (the "Claim Form Deadline").  See Joint Stipulation of Settlement and Release §§ 5.2(A); 5.3(A).

5.    Fifteen days before the Final Fairness Hearing, Plaintiff will file a motion for final approval of the proposed settlement and Class Counsel's fee application. (Joint Stipulation of Settlement and Release § 6.1).

A proposed order is submitted with this motion for the Court's consideration.

### IV.   THE COURT SHOULD GRANT PLAINTIFFS' REQUEST TO CONDITIONALLY CERTIFY THE RULE 23 SETTLEMENT CLASS

Plaintiff also requests that the Court conditionally certify the Settlement Class for settlement purposes only. The Settlement covers approximately 132 messengers who worked for A to Z Logistics between January 1, 2013 (when A to Z purchased the assets of A to Z Couriers, without assuming that company's liabilities) and December 31, 2016 (when A to Z stopped employing messengers).  As shown below, all requirements of Federal Rule of Civil Procedure 23(a) and (b)(3) are satisfied.

Defendants, for settlement purposes only, do not oppose Plaintiff's request for conditional Rule 23 class certification.

**A. <u>Numerosity</u>**

The Class is comprised of approximately 132 members. Courts in the Second Circuit have held that "numerosity is presumed at a level of 40 members." *Eldred v. Comforce Corp.*, No. 3:08-CV-1171, 2010 U.S. Dist. LEXIS 18260 at *43 (N.D.N.Y. Mar. 2, 2010) (Kahn, J.) (*citing Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d. Cir. 1995)). Accordingly, numerosity is satisfied.

**B. <u>Commonality and Predominance</u>**

Common questions of law and fact predominate over questions affecting only individual members. Because the requirement of commonality under Rule 23(a)(2) may be satisfied by a single common issue, it is easily met. *See Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 175 (S.D.N.Y. 2014) ("Even a single common legal or factual question will suffice."). Here, Plaintiff alleges that he and other messengers all should have been, but were not, paid minimum wage and paid for hours worked in excess of forty per week under federal and New York State law. Accordingly, common questions in this case include:

a) Whether Defendant paid Class Members all earned wages;

b) Whether Class Members were required to perform work in excess of forty hours in a consecutive seven-day week.

c) Whether Class Members were paid at time and one-half when they performed work in excess of forty hours in a consecutive seven-day week.

d) Whether Class Members were paid minimum wage at the rate required by New York and federal law

Courts find commonality where employees are subjected to a uniform policy. *See Marroquin Alas v. Champlain Valley Specialty of N.Y., Inc.*, No. 5:15-cv-00441, 2016 U.S. Dist. LEXIS 79043, at \*5 (N.D.N.Y. June 17, 2016) (finding commonality in wage and hour settlement) (citing *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 162-63 (S.D.N.Y. 2014) (finding commonality where workers were allegedly not paid appropriate overtime)); *Eldred* at \*44 (finding commonality where "Plaintiffs alleged that class members share identical relationships with Defendants."); *Elliot v. Leatherstocking Corp.*, No. 3:10-CV-0934, 2012 U.S. Dist. LEXIS 171443, \*5 (N.D.N.Y Dec. 4, 2012) (finding commonality where "class members raise common issues concerning defendant's failure to pay overtime, minimum wages and properly distribute service charges.").

With respect to predominance under Rule 23(b)(3), "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002). Here, common questions predominate because the core issues in this case focus on Defendants' policies with respect to its messenger employees. Plaintiff contends that these employees performed similar tasks and had similar responsibilities. Each of these core issues involves a common nucleus of operative facts based on defendants' common management policies and procedures which applied to all Class Members. *See, e.g., Marroquin Alas* at \*7-8 (finding predominance in wage and hour case where questions concerning overtime pay were "universal" to workers) *Eldred* at \*54-55 (certifying litigation class and finding "The predominant question raised is whether such a policy existed, and not whether any individual suffered its consequences on a particular job."). Further, Plaintiff contends that damages in this

case can be calculated by applying the same mechanical formula based on the employees' work weeks.  Thus, the predominance requirement is satisfied.

### C. <u>Typicality</u>

Plaintiff's claims are typical of the claims of the members of the Settlement Class. "Typicality 'does not require that the factual background of each named plaintiff's claim be identical to that of all class members; rather, it requires that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class.'"  *Damassia v. Duane Reade, Inc.,* 250 F.R.D. 152, 158 (S.D.N.Y. 2008) (*citing Caridad v. Metro-North Commuter R.R.,* 191 F.3d 283, 293 (2d Cir. 1999); *see also Kelen v. World Fin. Network Nat'l Bank*, No. 12-CV-5024, 2014 U.S. Dist. LEXIS 112079 at * 11 (S.D.N.Y. July 28, 2014).  Plaintiff was subject to Defendant's policies and was harmed by Defendants in the same manner as the rest of the Settlement Class in that he was allegedly not paid minimum wage or overtime.  *See Marroquin Alas* at *5-6 (typicality satisfied since plaintiffs' claims based on same factual and legal theories as class members).  Since Plaintiff's claims are identical to those of the members of the Settlement Class he seeks to represent, typicality is satisfied.

### D. <u>Adequacy</u>

"Under Rule 23(a)(4) of the Federal Rules of Civil Procedure, adequacy is satisfied unless plaintiff's interests are antagonistic to the interest of other members of the class." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 90 (2d Cir. 2015) (citation omitted).  "Plaintiffs must also have attorneys who are 'qualified, experienced, and generally able to conduct the litigation.'" *Id.*

In this case, Plaintiff has no interests that conflict with his fellow employees.  *See Elliot* at *6 (adequacy satisfied where there was "no evidence that plaintiffs' and the class members' interests are at odds.").  In addition, Plaintiff has worked extensively on behalf of the class to achieve this

settlement. Plaintiff has searched for documents, responded to discovery, and continually stayed abreast of developments in the nearly three year litigation. He has also spent many hours with his attorneys reviewing filings, explaining his experiences as an employee and helping to conduct the litigation.

Next, Plaintiff's counsel are "qualified, experienced, and generally able to conduct the litigation."

The Sultzer Law Group focuses on complex civil litigation nationwide. The firm is headquartered in Poughkeepsie, New York, with additional offices in New York City and New Jersey. Since its founding in 2013, the firm has acted as lead counsel in a number of high-profile class action cases. The firm's class action practice group is included in Martindale-Hubbell's Bar Register of Preeminent Lawyers for Class Actions and has also been featured in numerous publications, including Inside Counsel Magazine, Risk Management Magazine, and CNBC News. Mr. Sultzer, the firm's founding partner, has 20 years of significant experience related to both prosecuting and defending class actions. Prior to opening The Sultzer Law Group, he served as the co-chairman of the Class Action Practice Group of one of the largest law firms in the country, and he has written and lectured extensively on class action practice. Partner Adam Gonnelli has served as lead or co-lead counsel in numerous high-profile class action cases throughout the country resulting in multi-million dollar recoveries to consumers, employees, and investors.

These lawyers have successfully prosecuted this litigation, and should be appointed Class Counsel.

**E. Superiority**

Rule 23(b)(3) also requires a class action to be "superior to other available methods for fairly and effectively adjudicating the controversy." The Court must consider (A) the class

members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3). Here, each of the factors weighs in favor of finding superiority.

First, because of the relatively small dollar amounts at issue in this case, workers do not have a strong interest in controlling separate and individual actions.

Second, there are no separate actions that have been brought by Class Members. Accordingly, settlement on a class basis is superior to other available methods for the fair and efficient resolution of this action. The alternative would be the potential filing of multiple of individual actions, which is neither an effective means by which to accomplish justice, nor an economical use of the Court's or the parties' time and resources.   *See Elliot* at *6 (finding settlement in wage and hour case would conserve judicial resources and is more efficient for class members).

Third, the Plaintiff, all of the Class Members, and A to Z have worked or done business in this District, so venue here is appropriate.

Fourth, since the case is being settled, management of the litigation is not a concern going forward.

Class treatment will create uniform resolution of the issues, and achieve judicial economy, convenience and fairness to all parties. Accordingly, Plaintiff respectfully requests that the Court conditionally certify the Settlement Class pursuant to Rule 23 to effectuate this settlement.

## V.     PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The law favors compromise and settlement of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context"); *Marroquin Alas* at *11 ("Generally, class actions are complex and consume a tremendous amount of time and resources."); *Elliot* at *9 (stating in wage and hour case "Class actions are generally complex and preparing and putting evidence to support plaintiffs' position would consume tremendous time and financial resources."); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged.").

The approval of a proposed class action settlement is a matter of discretion.  *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995). "[C]ourts should give proper deference to the private consensual decision of the parties . . . [and] should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation." *Clark v. Ecolab Inc.*, No. 07 Civ. 8623, 2009 U.S. Dist. LEXIS 108736 at *14 (S.D.N.Y. Nov. 17, 2009).

Under Rule 23, a court's review of a proposed class settlement is a "two-step process." *In re Nasdaq Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). Initially, the court decides whether the settlement should be preliminarily approved and, if so, "notice is given to the class members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval." *Id.* At the preliminary approval stage – the present stage in this matter – the court's review is relatively lenient.  *See, e.g., Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 355 n.7 (E.D.N.Y.  2006).  To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to

its fairness." *In re Traffic Exec. Ass'n E. R.Rs.*, 627 F.2d 631, 634 (2d Cir. 1980); *Newberg* § 11.25 (noting that "[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members) (quoting *Manual for Complex Litigation* (Third) § 30.41); *see also In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) (citation omitted) (noting that the court's first-stage analysis consists of a review for "obvious deficiencies").

Further, "[f]airness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y. July 27, 2007).

Courts often grant preliminary settlement approval without requiring a hearing or a court appearance. *See, e.g.*, *Hernandez v. Merrill Lynch & Co.,* No. 11 Civ. 8472, 2012 U.S. Dist. LEXIS 165771, at *16 (S.D.N.Y. Nov. 15, 2012) (granting preliminary approval based on plaintiffs' memorandum of law, attorney declaration, and exhibits); *Palacio v. E\*TRADE Fin. Corp.*, No. 10 Civ. 4030, 2012 U.S. Dist. LEXIS 41886, at *10 (S.D.N.Y. Mar. 12, 2012) (same); *Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 U.S. Dist. LEXIS 115982 , at * 9 (S.D.N.Y. June 3, 2011) (same); *deMunecas v. Bold Food*, No. 09 Civ. 00440, 2010 U.S. Dist. LEXIS 87644 (S.D.N.Y. Aug. 23, 2010) (same).

### A.  The Settlement is Procedurally Fair.

"To determine whether a settlement is procedurally fair, courts examine the settlement's terms and the negotiating process leading to settlement." *Elliot* at \*7 (citations omitted).  Here, the litigation has gone on for almost three years and settlement was reached only after considerable discovery.   In addition, settlement discussions took over several months and settlement was ultimately only reached after a mediation and protracted negotiation between the parties.  Under such circumstances, a presumption in favor of procedural fairness arises.  *See Elliot* at \*8 (finding procedural fairness in mediated settlement reached after two years of litigation and extensive discovery).  In addition, as shown below, the settlement terms themselves support a finding of procedural fairness.

### B.   The Settlement Is Substantively Fair, Reasonable, and Adequate

In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) ("*Grinnell*"), abrogated on other grounds by *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).  *See, e.g., Marroquin Alas* at \*11 (reviewing *Grinnell* factors and approving wage and hour settlement).  Although the Court's task on a motion for preliminary approval is merely to perform an "initial evaluation," *Newberg* § 11.25, to determine whether the settlement falls within the range of possible final approval, or "the range of reasonableness," *id*. at § 11.26, it is useful for the Court to consider the criteria on which it will ultimately judge the settlement.

The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages;  (6) the risks of maintaining the class action through the trial;  (7) the ability of the defendant to withstand

14

a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible

recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light

of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. The *Grinnell* factors weigh in favor

of approval of the settlement, and certainly in favor of preliminary approval.

### C.   Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1)

By reaching a favorable settlement prior to dispositive motions or trial, the Parties avoid

significant expense and delay. "Most class actions are inherently complex and settlement avoids the

costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank*

*Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche*

*Bank*, 236 F.3d 78 (2d Cir. 2001); *see also Marroquin Alas* at *12 (approving $282,000 settlement

and stating "Here, significant discovery and statistical experts would be required followed by a fact-

intensive trial. Preparing and presenting evidence to support Plaintiffs' position would consume

tremendous time and resources"); *Frank*, 228 F.R.D. at 184-85 (finding a $75,000 wage-and-hour

matter complex, noting that "the costs of continued litigation will be substantial and will quickly

outweigh the recovery that could be achieved").

This case is no exception, with a $285,000.00 maximum settlement fund and approximately

132 Class Members with claims under both federal and state law.  Further litigation here would cause

additional expense and delay. Additional pre-class certification and potential post-certification

discovery would need to be completed.  Plaintiff would file a motion for collective certification and

then class certification under Rule 23.   Defendants would oppose both collective certification and

the Rule 23 motion. Even assuming these classes were certified, Defendants would likely file

decertification motions. In addition, the Parties would likely file competing motions for summary

judgment.  If the Court denied the motions, a fact-intensive trial would necessarily follow. A trial

would be lengthy and complex and would consume significant time and resources for the Parties and the Court. Any judgment would likely be appealed, further extending the litigation. The settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner.  Therefore, the first *Grinnell* factor weighs in favor of approval.

### D.   The Reaction of the Class (*Grinnell* Factor 2)

Since notice of the settlement and its details has not yet issued to the Class, it is premature to analyze this factor.

### E.   Discovery Has Advanced Far Enough for the Parties to Evaluate the Strengths and Weaknesses of the Case (*Grinnell* Factor 3)

The Parties have completed extensive enough discovery to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004).

The Parties' discovery here meets this standard. Plaintiffs' Counsel engaged a forensic CPA, conducted an investigation and legal research on the underlying merits of the potential class claims, the likelihood of obtaining liquidated damages and the proper measure of damages. They also researched Defendants' likely affirmative defenses. The Parties have engaged in considerable and wide-ranging discovery, including on company policies and procedures as well delivery driver and messenger duties and tasks. Finally, the parties engaged in pre-mediation discovery as part of an in-person settlement process.  These factors favor preliminary approval. *See Marroquin Alas* at *12-13 (sampling of pay records, employee handbooks, and company policies sufficient to evaluate settlement); *Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271, 2011 U.S. Dist. LEXIS 11931 at *9 (S.D.N.Y. Jan 20, 2011) (finding that "Plaintiff's Counsel did substantial work identifying, investigating, prosecuting, and settling Plaintiff's and the class members' claims.").

**F.   Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5)**

"Litigation inherently involves risks."   *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.,* No. 03 Civ. 8698, 2007 U.S. Dist. LEXIS 46223, at *19 (S.D.N.Y. June 25, 2007).   Although Plaintiffs believe their case is strong, it is subject to considerable risk, particularly in light of some decisions in the Second Circuit in which courts have declined to grant Rule 23 class certification or have decertified FLSA collectives.  *See, e.g., Jin v. Shanghai Original, Inc.,* No. 16-cv-5633, 2018 U.S. Dist. LEXIS 55829 (E.D.N.Y. Apr. 2, 2018) (decertifying collective action); *McEarchen v. Urban Outfitters, Inc*., No. 13-cv-3569, 2017 U.S. Dist. LEXIS 144203 (E.D.N.Y. Sept. 6, 2017) (adopting report recommending decertification of collective action due to need for individual exempt status determinations); *Scott v. Chipotle Mexican Grill, Inc.,* No. 12-CV-8333, 2017 U.S. Dist. LEXIS 62902, at *207 (S.D.N.Y. Mar. 29, 2017) (decertifying FLSA class of management trainees and denying class certification); *Ruiz v. Citibank, N.A.,*. 93 F. Supp. 3d 279, 299 (S.D.N.Y. 2015) (decertifying FLSA class of personal bankers and denying class certification); *Hernandez v. Fresh Diet, Inc.,* No. 12-cv-4339, 2014 U.S. Dist. LEXIS 139069 (S.D.N.Y. Sep. 29, 2014) (decertifying FLSA class of allegedly misclassified workers and denying class certification).

Even if successful on certification motions, summary judgment motion practice, let alone a trial on the merits, would involve significant risks for Plaintiff. To the extent a class is certified under Rule 23, the class will be comprised of former messengers, a number of whom may not wish to participate in pre-trial discovery and trial of this action. Moreover, Plaintiff would have to overcome A to Z's defenses, including that Class Members were free to come and go as they pleased before

17

and between deliveries, that Class Members did not work as many hours each week as they allege, and that damages could not be determined using a common methodology under *Comcast v. Behrand*, 569 U.S. 27 (2013). While Plaintiff's Counsel believe that they could ultimately establish both liability and damages, A to Z is equally confident in its defenses. Proceeding to trial would require significant additional factual development and perhaps expert testimony. *See, e.g. Marroquin Alas* at *13 (noting that "establishing liability would be a time-consuming and costly process" and approving settlement). Plaintiffs' Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates these uncertainties. This factor therefore weighs in favor of approval.

### G. Risks Involved in Maintaining the Class Through Trial (*Grinnell* Factor 6)

Should the case proceed, Defendants would oppose Plaintiff's application for certification of an FLSA collective and Rule 23 class certification of the New York Labor Law claims. If defendants' efforts were unsuccessful, they would likely seek appeal of the Court's determination. *See Frank*, 228 F.R.D. at 187 ("If settlement were disapproved, it is likely that [defendant] would challenge the class certification. While plaintiffs might indeed prevail, the risk that the case might not be certified is not illusory and weighs in favor of the Class Settlement."); *see also Elliot* at *11 (risk of maintaining certification weighed in favor of settlement approval where plaintiff would face vigorous opposition). Settlement eliminates the risk and delay inherent in this process. As such, this factor weighs in favor of approval.

### H. Defendant's Ability to Withstand a Greater Judgment is Not Determinative (*Grinnell* Factor 7)

Plaintiff does not contest that A to Z could withstand a greater judgment. However, defendant's ability to withstand a greater judgment "standing alone, does not suggest that the

settlement is unfair." *Frank*, 228 F.R.D. at 186 (*quoting In re Holocaust Litig*, 80 F. Supp. 2d at 178 n.9). Thus, this factor is neutral and does not weigh against granting preliminary approval.

## I.      The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)

Defendants have agreed to settle this case for a maximum amount of $285,000.00. This amount represents substantial value given the attendant risks of litigation, even though recovery could potentially be greater if Plaintiff prevailed on a motion to certify a collective and a class, maintained certification, survived summary judgment, succeeded on all claims at trial, and prevailed on appeal.

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (*quoting In re Holocaust Litig.,* 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (*quoting Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982) (emphasis added).

Here, each Participating Claimant will receive a significant payment based upon his or her gross earnings during the Class Period. (Joint Stipulation of Settlement and Release § 7.2).   As explained in detail above, the amount that each Participating Claimant will receive reflects a careful balancing of the strengths of the underlying claims and the risks that those claims would not

ultimately prevail. A to Z has insisted, and will continue to insist, that they are not liable to Plaintiff on any of the claims. Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, Plaintiff respectfully submits that the settlement amount is reasonable and certainly warrants notice to the Class. *See Elliot* at \*11 (granting final approval of settlement and finding "meaningful payment to class members and is outweighed by the mere possibility of further relief.").

Thus, the *Grinnell* factors weigh heavily in favor of preliminary approval of the settlement. If a substantial number of objectors come forward with meritorious objections, the Court can reevaluate its determination. Because the settlement, on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant preliminary approval.

## VI.   THE NOTICE PLAN, DISTRIBUTION PROCESS, AND RELEASE SHOULD BE APPROVED

The proposed Class Notice, which is attached to the Francis Declaration as Exhibit C, complies with due process and Federal Rule of Civil Procedure 23.  Notice must provide:

> The best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:
>
> (i)    the nature of the action;
> (ii)   the definition of the class certified;
> (iii)  the class claims, issues, or defenses;
> (iv)   that a class member may enter an appearance through an attorney if the member so desires;
> (v)    that the court will exclude from the class any member who requests exclusion;
> (vi)   the time and manner for requesting exclusion; and
> (vii)  the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The Court is given broad power over which procedures to use for providing notice so long as

the procedures are consistent with the standards of reasonableness that the due process clauses in the U.S. Constitution impose. *Handschu v. Special Services Div.*, 787 F.2d 828, 833 (2d Cir. 1986) ("[T]he district court has virtually complete discretion as to the manner of giving notice to class members.").

"When a class settlement is proposed, the court 'must direct to class members the best notice that is practicable under the circumstances.'" *Vargas v. Capital One Fin. Advisors*, 559 Fed. Appx. 22, 2014 U.S. App. LEXIS 4689 at *26 (2d Cir. 2014). Here, notice will be sent by first class mail. ((Joint Stipulation of Settlement and Release §4.2(B)).

The contents of the proposed Notice satisfies, and exceeds, the requirements of due process and Rule 23 as well. *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally"). The Notice describes the terms of the settlement, informs Class Members about the allocation of attorneys' fees, the Service Award, and settlement administration costs, and provides specific information regarding the date, time, and place of the final approval hearing. *See Marroquin Alas at* *16-17 (approving notice to workers).

## VII. THE COURT SHOULD SET A DATE FOR A FINAL APPROVAL HEARING

The proposed Preliminary Approval Order submitted in connection with this motion sets forth a proposed sequence of deadlines associated with the settlement. The Parties respectfully request that the Court enter the proposed Preliminary Approval Order and set a date for a Fairness Hearing.

## VIII.   PLAINTIFF WILL SEEK APPROVAL OF THE FLSA SETTLEMENT

Plaintiff will seek approval of the settlement of the FLSA claims with the final approval motion.   The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement

because an FLSA settlement does not implicate the same due process concerns. *See McMahon v. Olivier Cheng Catering & Events*, No. 08-cv-8713 (PGG), 2010 U.S. Dist. LEXIS 18913, at *15 (S.D.N.Y. Mar. 3, 2010); McMahon v. Olivier Cheng Catering & Events, No. 08-cv-8713 (PGG), 2010 U.S. Dist. LEXIS 18913, at *15 (S.D.N.Y. Mar. 3, 2010) ("The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement."). When Plaintiff files the motion for final approval of the settlement, he will seek approval of the FLSA settlement.

## IX.    CONCLUSION

For the reasons set forth above, the Parties respectfully request that the Court grant preliminary approval to the proposed Settlement, conditionally certify the Settlement Class, appoint Class Counsel, authorize the mailing of Notice, and set a Fairness Hearing.

By: */s/ Jeremy Francis*
Jeremy Francis, Esq.
**THE SULTZER LAW GROUP, P.C.**
85 Civic Center Plaza, Suite 104
Poughkeepsie, NY 12601
Telephone: (845) 483-7100
Facsimile: (888) 749-7747
francisj@thesultzerlawgroup.com


By:    /s/ Brett Zinner
Brett Zinner, Esq.
**ROSENBERG FORTUNA & LAITMAN, LLP**
666 Old Country Road, Suite 810
Garden City, New York 11530
Telephone: 516-228-6666
Facsimile: 516-228-6672
brett@rosenbergfortuna.com

*Attorneys for Plaintiff and the Proposed Class*

22