UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RICHARD MARASCO, individually on behalf of
himself and all others similarly situated,

        Plaintiff,

        -against-

A TO Z LOGISTICS, INC., *et al.*

        Defendants.

Case No. 16-cv-00232 (PKC) (JO)

# MEMORANDUM OF LAW IN SUPPORT OF
# PLAINTIFF'S APPLICATION FOR ATTORNEYS' FEES, LITIGATION EXPENSES
# AND SERVICE AWARDS TO NAMED PLAINTIFFS

# TABLE OF CONTENTS

Table of Contents…………………………………………………………………………..……i

Table of Authorities…………………………………………………………………………ii-vi

  I.    Introduction…………………………………………………………………...…1

  II.   There Have Been No Objections…………………………………………………1

  III.  Argument……………………………………………………………...…..2

       A.  The Fee Request Is Reasonable and Should Be Approved………………………..2

       B.  The Court Should Use the Percentage Method To Evaluate This
           Fee Request…………………………………………………………..………3

       C.  The Requested Fee Is Reasonable Under the *Goldberger* Factors………………..6

          1.    The Time and Labor Expended by Counsel…………………….………6

          2.    The Complexities of the Litigation………………………………………7

          3.    The Risk of the Litigation…………………………………………..8

          4.    Quality of Representation…………………………………..………10

          5.    The Fee in Relation to the Settlement………………….……………11

          6.    Public Policy Considerations……………………...………………12

       D.  The Fee Is Also Reasonable Under A Lodestar Analysis…………………..13

       E.  Plaintiff's Counsel Expenses In This Case Should Be Reimbursed…………..14

       F.  The Service Award to The Plaintiff Is Appropriate In This Case……………..15

  IV.  Conclusion…………………………………………………...…………18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.H. Phillips, Inc. v. Walling,*
324 U.S. 490 (1945)...................................................................................13

*Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*
522 F.3d 182, 191 (2d Cir. 2008)...............................................................4

*In re Am. Bank Note Holographics, Inc.,*
127 F. Supp. 2d 418 (S.D.N.Y. 2001).........................................................4

*In re Arotech Corp. Sec. Litig.,*
No. 07-CV-1838, 2010 U.S. Dist. LEXIS 55570 (E.D.N.Y. June 7, 2010) .......................2, 11

*Asare v. Change Group New York, Inc.,*
No. 12 Civ. 3371 (CM), 2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013) ......................3, 12, 15

*Ballinger v. Advance Magazine Publishers, Inc.,*
No. 13 Civ. 4036 (HBP), slip op (S.D.N.Y. Aug. 11, 2015) ...................................17

*Barrentine v. Ark.-Best Freight Sys., Inc.,*
450 U.S. 728 (1981)...................................................................................7, 9

*Beckman v. KeyBank, N.A.,*
No. 12 Civ. 7836, 2013 WL 1803736 (S.D.N.Y. Apr. 29, 2013)................................3, 12, 14

*Behzadi v. Int'l Creative Mgmt. Partners, LLC,*
No. 14 Civ. 4382, 2015 WL 4210906 (S.D.N.Y. July 9, 2015) .........................................3, 17

*Bellifemine v. Sanofi-Aventis U.S. LLC,*
No. 07 Civ. 2207, 2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) ...............................................14

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini,*
258 F. Supp. 2d 254 (S.D.N.Y. 2003)........................................................4

*c.f. Torres v. Gristede's Operating Corp.,*
519 Fed. Appx. 1 (2d Cir. 2013).................................................................3

*Caballero v. Senior Health Partners, Inc.,*
No. 16 CV 00326 (CLP), 2018 U.S. Dist. LEXIS 207128 (E.D.N.Y. Dec. 7, 2018) ................................................................................................2

*Ceka v. PBM/CMSI Inc., PBM, LLC,*
No. 12 Civ. 1711(DAB), 2014 WL 6812127 (S.D.N.Y. Dec. 2, 2014) ..................17

*Clark v. Ecolab Inc.*,
  Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198 (S.D.N.Y.
  May 11, 2010) ............................................................................................12

*deMunecas v. Bold Food, LLC*,
  No. 09 Civ. 440, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) ........................................5, 13

*Deposit Guar. Nat'l Bank v. Roper*,
  445 U.S. 326 (1980) ....................................................................................12

*In re Elan Sec. Litig.*,
  385 F. Supp. 2d 363 (S.D.N.Y. 2005) ...............................................................9

*Eliastam v. NBC Universal Media, LLC*,
  No. 13 Civ. 4634 (S.D.N.Y. May 23, 2015) .......................................................17

*Febus v. Guardian First Funding Grp., LLC*,
  870 F. Supp. 2d 337 (S.D.N.Y. 2012) ...............................................................9

*Flores v. Anjost Corp.*,
  No. 11 Civ. 1531, 2014 WL 321831 (S.D.N.Y. Jan. 29, 2014) ................................2, 3, 15

*Fox v. Vice*,
  563 U.S. 826 (2011) .....................................................................................6

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005) .............................................................3, 15, 16

*In re Gilat Satellite Networks, Ltd.*,
  No. CV-02-1510 (CPS)(SMG), 2007 WL 2743675 (E.D.N.Y., Sept. 18, 2007) ..................11

*Gilliam v. Addicts Rehab. Ctr. Fund*,
  No. 05 Civ. 3452, 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ...............................11

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ...................................................................5, 9

*Goldberger v. Integrated Res.*,
  209 F.3d 43 ..............................................................................3, 5, 6, 8, 10, 13

*Guippone v. BHS & B Holdings, LLC*,
  No. 09 Civ. 01029(CM), 2011 WL 5148650 (S.D.N.Y., Oct. 28, 2011) .....................15, 16

*Hall v. Prosource Techs., LLC*,
  No. 14-CV-2502 (SIL), 2016 U.S. Dist. LEXIS 53791 (E.D.N.Y. Arp. 11,
  2016) ..............................................................................................2, 9, 11

*Henry v. Little Mint, Inc.*,
 No. 12 Civ. 3996, 2014 WL 2199427 (S.D.N.Y. May 23, 2014)..................................7, 16, 17

*Hernandez v. Merrill Lynch & Co.*,
 No. 11 Civ. 8472, 2013 WL 1209563 (S.D.N.Y. Mar. 21, 2013) ...........................................11

*Hicks v. Stanley*,
 No. 01 Civ. 10071(RJH), 2005 WL 2757792 (S.D.N.Y., Oct. 24, 2005).............................13

*In re Interpublic Sec. Litig.*,
 2004 WL 2397190 ...................................................................................................................5

*Johnson v. Brennan*,
 No. 10 Civ. 4712, 2011 U.S. Dist. LEXIS 105775 (S.D.N.Y. Sept. 16, 2011) ...............2, 7, 8

*Karpus v. Borelli*,
 827 F. Supp. 2d at 178, 1872010 WL 532960, at *1 .........................................5, 11, 1416, 17

*Khait v. Whirlpool Corp.*,
 No. 06 Civ. 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ...............................12, 13, 17

*In re Lloyd's Am. Trust Fund Litig.*,
 No. 96 Civ. 1262, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ........................................14

*Maley v. Del Global Techs. Corp.*,
 186 F. Supp. 2d 358 (S.D.N.Y., Jan. 29, 2002) .................................................................7, 14

*Massiah v. MetroPlus Health Plan, Inc.*,
 No. 11-cv-05669, 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012) ...............................3, 11, 15

*McDaniel v. County of Schenectady*,
 595 F.3d 411 (2d Cir. 2010)...............................................................................................3, 12

*McMahon v. Oliver Cheng Catering and Events, LLC*,
 No. 08 Civ. 8713(PCG), 2010 WL 2399328 (S.D.N.Y. March 3, 2010) ...........................5, 12

*Phillips Petroleum Co. v. Shutts*,
 472 U.S. 797 (1985)...........................................................................................................12, 13

*In re Polaroid ERISA Litig.*,
 No. 03 Civ. 8335, 2007 WL 2116398 (S.D.N.Y. July 19, 2007) .........................................4, 5

*Ramirez v. Lovin' Oven Catering Suffolk, Inc.*,
 No. 11 Civ. 520, 2012 WL 651640 (S.D.N.Y. Feb. 24, 2012) ..............................................14

*In re Ramp Corp. Sec. Litig.*,
 No. 05 Civ. 6521, 2008 WL 58938 (S.D.N.Y. Jan. 3, 2008)................................................4, 5

*Reyes v. Altamarea Group, LLC*,
No. 10–CV–6451 (RLE), 2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) ..............................17

*RMED Int'l, Inc. v. Sloan's Supermarkets*,
No. 94 Civ. 5587 (PKL)(RL), 2003 WL 21136726 (S.D.N.Y. May 15, 2003)......................17

*Roberts v. Texaco, Inc.*,
979 F. Supp. 185 (S.D.N.Y. 1997) ....................................................................................15

*Sand v. Greenberg*,
No. 08 Civ. 7840(PAC), 2010 WL 69359 (S.D.N.Y. Jan. 7, 2010) ....................................13

*Savoie v. Merchants Bank*,
166 F.3d 456 (2d Cir. 1999).................................................................................................5

*Seekamp v. It's Huge, Inc.*,
No. 1:09-CV-0018, 2014 WL 7272960 (N.D.N.Y. Dec. 18, 2014) ...............................3, 5, 6

*Sewell v. Bovis Lend Lease, Inc.*,
No. 09 Civ. 6548, 2012 U.S. Dist. LEXIS 53556 (S.D.N.Y. Apr. 16, 2012).2, 3, 4, 12, 14, 15, 17

*Spicer v. Pier Sixty LLC*,
No. 08 Civ.10240, 2012 WL 4364503 (S.D.N.Y. Sept. 14, 2012) .........................................11

*Sukhnandan v. Royal Health Care of Long Island, LLC*,
No. 12cv4216 (RLE), 2014 WL 3778173 (S.D.N.Y. July, 31 2014) .....................................17

*In re Sumitomo Copper Litig.*,
74 F. Supp. 2d 393 (S.D.N.Y. 1999)................................................................................4, 12

*Taft v. Ackermans*,
No. 02 Civ. 7951 (PKL), 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007)...................................10

*Velez v. Majik Cleaning Serv., Inc.*,
No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007).........................................4, 5

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005)...........................................................................3, 4, 5, 12

*Westerfield v. Washington Mut. Bank*,
No. 06 Civ. 2817, 2009 WL 5841129 (E.D.N.Y. Oct. 8, 2009) ...........................................12

*Willix v. Healthfirst Inc.*,
No. 07 Civ. 1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011)...........................................11

*Willix v. Healthfirst, Inc.*,
No. 07 Civ. 1143 (ENV)(RER), 2011 U.S. Dist. LEXIS 21102 (E.D.N.Y. Feb. 18, 2011) ..............................................................................................................14

**Statutes**

FLSA ........................................................................................3, 7, 9, 11, 12, 13, 16, 17

New York Labor Law ............................................................................................16

## I.  INTRODUCTION

Plaintiff's Counsel has achieved a settlement providing for a "Gross Settlement Amount" of $285,000 for messengers formerly employed by A to Z Logistics, Inc. (A to Z Logistics, Inc. and Defendant Victor Finnegan are referred to hereinafter as "Defendants") and now seeks an award of attorneys' fees and expenses of one-third of that amount, or $95,000.

This case was filed more than three years ago, and Plaintiff and his counsel have persevered through factually and legally complicated issues to achieve a result that provides Class Members with 28% – 42% (depending on the availability of liquidated damages) of the best possible recovery in this case.  This case has involved motion practice regarding an arbitration agreement signed by Plaintiff and regarding Plaintiff's claims against Defendant Finnegan individually. There has also been extensive discovery and complex damages and payroll analysis involving hundreds of worker weeks and the services of a Certified Public Accountant ("CPA") to run different damages analyses based on different assumptions concerning the number of hours worked.

For the reasons set forth below, Class Counsel respectfully submit that the attorneys' fees and expense reimbursement they seek is fair and reasonable under the applicable legal standards and should be awarded in light of the contingency risk undertaken and the result achieved in this case. Class Counsel also respectfully submit that the service award for Plaintiff is proper in recognition of the services he rendered on behalf of the Class Members.

## II.  THERE HAVE BEEN NO OBJECTIONS

On November 29, 2018 this Court authorized notice of the proposed settlement ("Joint Stipulation") to the Settlement Class.  The Notice informed the former messengers that:

> Class Counsel will ask the Court to approve payment of up to $95,000.00 to them from the settlement fund for attorneys' fees and expenses.  The fees would pay

Class Counsel for investigating the facts, litigating the case, and negotiating the settlement. Defendants have agreed not to oppose Class Counsel's request for these fees, but the Court may award less than this amount.

None of the former messengers objected to the proposed fee award (or any part of the Settlement). The lack of objections to Class Counsel's fee and cost reimbursement request is an indication of the reasonableness of the requested award and weighs in favor of approving it. *Caballero v. Senior Health Partners, Inc.*, No. 16 CV 00326 (CLP), 2018 U.S. Dist. LEXIS 207128, *14 (E.D.N.Y. Dec. 7, 2018); *see also Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 U.S. Dist. LEXIS 53556, at *20 (S.D.N.Y. Apr. 16, 2012); *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 U.S. Dist. LEXIS 105775, at *26 (S.D.N.Y. Sept. 16, 2011).

## III. <u>ARGUMENT</u>

### A. <u>The Fee Request Is Reasonable And Should Be Approved</u>

Class Counsel are entitled to reasonable attorneys' fees to compensate them for their work in recovering unpaid wages on behalf of the class. The Joint Stipulation, which has been preliminarily approved by the Court, provides that Class Counsel may apply for no more than $95,000 from the Qualified Settlement Fund (or one-third of the Gross Settlement Amount) for attorneys' fees, costs, and expenses. *See* Joint Stipulation ¶ 7.4. ECF No. 82-1.

The request for one-third is inclusive of all costs and expenses incurred in this litigation. That percentage has been found to be reasonable and within the typical range approved by courts in similar cases. *See Hall v. Prosource Techs., LLC*, No. 14-CV-2502 (SIL), 2016 U.S. Dist. LEXIS 53791, *35 (E.D.N.Y. Arp. 11, 2016) ("33% of the common fun is considered routine and therefore reasonable . . . .") ((quoting *In re Arotech Corp. Sec. Litig.*, No. 07-CV-1838, 2010 U.S. Dist. LEXIS 55570 at * 7 (E.D.N.Y. June 7, 2010)); *see also Flores v. Anjost Corp.*, No. 11 Civ. 1531, 2014 WL 321831, at *4 (S.D.N.Y. Jan. 29, 2014) (finding one-third award "consistent with

the norms of class litigation in this circuit" and collecting cases where one-third was awarded in FLSA cases); *Massiah v. MetroPlus Health Plan, Inc.*, No. 11-cv-05669, 2012 WL 5874655, at *7 (E.D.N.Y. Nov. 20, 2012) (to same effect and collecting cases); *Behzadi v. Int'l Creative Mgmt. Partners, LLC*, No. 14 Civ. 4382, 2015 WL 4210906 (S.D.N.Y. July 9, 2015) (class counsel awarded fees of 33% of settlement fund); *Asare v. Change Group New York, Inc.*, No. 12 Civ. 3371 (CM), 2013 WL 6144764, at *21 (S.D.N.Y. Nov. 18, 2013) (citing FLSA cases). Courts, including this one, have awarded fees greater than one-third as well. *Seekamp v. It's Huge, Inc.*, No. 1:09-CV-0018, 2014 WL 7272960 (N.D.N.Y. Dec. 18, 2014) (greater than 45%); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005) (40% of the fund); *c.f. Torres v. Gristede's Operating Corp.*, 519 Fed. Appx. 1, 5-6 (2d Cir. 2013) (implying 52% percentage award in wage and hour case would not have been abuse of discretion). Here, the requested fee, after expenses are deducted, is slightly less than one-third, and amounts to only 32.5%. *See also infra* III.C.5.

**B.** **The Court Should Use the Percentage Method To Evaluate This Fee Request**

There are two ways to determine appropriate compensation for attorneys for successful prosecution of wage and hour claims – the lodestar method and the percentage of the fund method. *Seekamp,* 2014 WL 7272960, at *3-4; *see also McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010). The Second Circuit favors the percentage of the fund method in common fund cases like this one. *Goldberger v. Integrated Res.*, 209 F.3d 43, 48 ("For much of the 20th century, the percentage approach prevailed."); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *Sewell*, 2012 WL 1320124, at *10; *Beckman v. KeyBank, N.A.*, No. 12 Civ. 7836, 2013 WL 1803736, at *8 (S.D.N.Y. Apr. 29, 2013). *Flores*, 2014 WL 321831, at *8.

There are several reasons that courts prefer the percentage method. First, the percentage method "directly aligns the interests of the class and its counsel" because it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made. *Wal-Mart Stores*, 396 F.3d at 121 (internal quotation marks omitted); *In re Ramp Corp. Sec. Litig.*, No. 05 Civ. 6521, 2008 WL 58938, at *2 n.2 (S.D.N.Y. Jan. 3, 2008); *In re Polaroid ERISA Litig.*, No. 03 Civ. 8335, 2007 WL 2116398, at *2 (S.D.N.Y. July 19, 2007); *Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007).

Second, the percentage method is also closely aligned with market practices because it "mimics the compensation system actually used by individual clients to compensate their attorneys." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999); *see also Sewell*, 2012 WL 1320124, at *10 ("[The percentage] method is similar to private practice where counsel operates on a contingency fee, negotiating a reasonable percentage of any fee ultimately awarded."); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (percentage method "is consistent with and, indeed, is intended to mirror, practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients"); *In re Am. Bank Note Holographics*, *Inc.*, 127 F. Supp. 2d 418, 432 (S.D.N.Y. 2001) (the court should "determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order"). This rationale is consistent with the Second Circuit's decision in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, where the Court held that a "presumptively reasonable fee" takes into account what a "reasonable, paying client" would pay. 522 F.3d 182, 191 (2d Cir. 2008). While *Arbor Hill* is not controlling because it does not address a common fund fee petition, it supports use of

the percentage of the fund method. *McMahon v. Oliver Cheng Catering and Events, LLC*, No. 08 Civ. 8713(PGG), 2010 WL 2399328, at *8 (S.D.N.Y. March 3, 2010); *deMunecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580, at *9 (S.D.N.Y. Aug. 23, 2010).

Third, the percentage of the fund method promotes early resolution. It "provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores*, 396 F.3d at 121 (internal quotation marks omitted); *see also In re Ramp Corp.*, 2008 WL 58938, at *2 n.2; *In re Polaroid ERISA Litig.*, 2007 WL 2116398, at *2; *Velez*, 2007 WL 7232783, at *7. The percentage method incentivizes the streamlined prosecution of litigation and avoids the inefficiency of the lodestar method. *See Seekamp*, 2014 WL 7272960, at *5. *See also Savoie v. Merchants Bank*, 166 F.3d 456, 460-61 (2d Cir. 1999) ("It has been noted that once the fee is set as a percentage of the fund, the plaintiffs' lawyers have no incentive to run up the number of billable hours for which they would be compensated under the lodestar method."); *Karpus v. Borelli* ("*In re Interpublic Sec. Litig.*"), Nos. 02 Civ. 6527, 03 Civ. 1194, 2004 WL 2397190, at *11 (S.D.N.Y. Oct. 26, 2004).

Fourth, the percentage method preserves judicial resources because it "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *In re Interpublic Sec. Litig.,* 2004 WL 2397190, at *11 (quoting *Savoie*, 166 F.3d at 461 n.4). The "primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits." *Goldberger v. Integrated Res. Inc.,* 209 F.3d 43, 48-49 (2d Cir. 2000); *see also In re Ramp Corp.*, 2008 WL 58938, at *2 n.2. While courts still use the lodestar method as a "cross check" when applying the percentage of the fund method, they are not required to scrutinize the fee records as rigorously. *Goldberger,* 209 F.3d at 50; *see In re Global Crossing Sec. & ERISA Litig.*, 225

F.R.D. 436, 468 (S.D.N.Y. 2004) (using an "implied lodestar" for the lodestar cross check); *cf.*

*Fox v. Vice*, 563 U.S. 826, 838 (2011) (in context of civil rights case, goal of fee shifting is "rough

justice," not auditing perfection and trial courts should not become "green-eyeshade accounts").

### C.  The Requested Fee Is Reasonable Under The *Goldberger* Factors

The Second Circuit has set forth six factors to apply when using the percentage method in

a common fund case:

(1)    the time and labor expended by counsel;

(2)    the magnitude and complexities of the litigation;

(3)    the risk of the litigation;

(4)    the quality of representation;

(5)    the requested fee in relation to the settlement; and

(6)    public policy considerations.

*Goldberger*, 209 F.3d at 50. *See Seekamp,* 2014 WL 7272960, at *4 (applying Goldberger factors).

The *Goldberger* factors weigh in favor of granting approval of Class Counsel's fee application.

### 1.    The Time and Labor Expended by Counsel

Even though the use of the percentage method is appropriate here, the first *Goldberger*

factor requires consideration of the lodestar. Over more than three years, Plaintiff's Counsel spent

over 315 hours on the litigation. *See* Francis Decl. ¶¶ 21-22.

This reflects the pre-suit investigation conducted by Class Counsel and their early attempts

to resolve the matter. It also reflects the significant work that went into preparing the original

Class Action Complaint. Finally, the hours expended by Class Counsel reflect the considerable

efforts they made to achieve an early resolution of this litigation and avoid the risks that are

inherent in class action and wage and hour litigation, including attending a mediation before with

Alfred Feliu, Esq, analysis work week data for hundreds of former messengers, calculation of

potential damages, motion practice regarding the retroactive applicability of an arbitration agreement signed by Plaintiff, and successfully opposing a motion to dismiss the claims against Defendant Victor Finnegan. *Id*. at ¶¶ 3-6.[1]

Plaintiff's Counsel incurred $4,824.54 in unreimbursed expenses. Francis Decl. ¶ 24. These expenses will be deducted first and are included in Plaintiff's application for an award of one-third of the Gross Settlement Amount.

Under a lodestar analysis, the requested fee award is only a multiple of .44 to the lodestar, well within, and indeed below, the norm in the Second Circuit. *See Johnson*, 2011 WL 4357376, at *20 (noting that "Courts regularly award lodestar multipliers from two to six times lodestar[]" and collecting cases); *Henry v. Little Mint, Inc.*, No. 12 Civ. 3996, 2014 WL 2199427, at *16 (S.D.N.Y. May 23, 2014) ("In fact, the [1.9] multiplier is at the lower end of the range routinely granted by courts . . ."); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y., Jan. 29, 2002) (awarding fee and noting 4.65 multiplier is "modest").

This time and expense favors awarding the Class Counsel the requested fees and expenses.

## 2. The Complexities of the Litigation

The complexity of the litigation also supports the fee request. The United States Supreme Court has stated that "FLSA claims typically involve complex mixed questions of fact and law . . . . These statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings." *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981). Of course, since *Barrentine* was decided, there has been another four decades of interpretation and regulation. In addition, among FLSA cases the most complex

---

[1] Plaintiff's counsel will also spend additional time working on the settlement administration and resolving the inevitable issues that arise in a project of this type for which they will not be compensated. Also, the time reflected above does not include time spent on preparing this application.

type is the "hybrid" action, like this one, where state law claims are brought as well. *Johnson*, 2011 WL 4357376, at *17.

Off-the-clock claims can be particularly challenging. In this case, A to Z Logistics paid messengers per delivery, rather than on an hourly basis, and did not record the hours the messengers worked. As a result, precise calculation of potential damages was difficult and time-consuming, and factual disputes arose between Plaintiff and Defendants during mediation and settlement negotiations regarding the hours worked by the former messengers. Defendants also contested whether the former messengers were actually working before and between deliveries, or whether they were free to come and go as the pleased. This additional factual dispute required further investigation by Class Counsel and added another layer of complexity to the litigation. *See Johnson*, 2011 WL 4357376, at *18 ("fact-intensive inquiry . . . contributed to the complexity of this case because Defendants' witnesses disputed the facts . . ."). Class Counsel also encountered complex legal issues during the course of the litigation, including whether an arbitration agreement signed by Plaintiff after the conduct at issue in the case was retroactively binding, and whether Defendant Victor Finnegan could be held individually liable for the alleged actions and policies of A to Z Logistics. Class Counsel thoroughly researched and opposed motions regarding each of thee issues. See ECF Nos. 24 and 59

Accordingly, the complexity of the case supports the fee request.

### 3. The Risk of the Litigation

The risk of the litigation, also addressed in detail in Plaintiff's motion for final approval of this Settlement, filed concurrently with this motion, strongly favors the award. At least one court, in evaluating the *Goldberger* factors, has called the risk of litigation "perhaps the foremost factor

to be considered in determining [the] award [of appropriate attorneys' fees]." *In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 374 (S.D.N.Y. 2005).

Class Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of significant risk. FrancisDecl. ¶ ____. *See In re Global Crossing*, 225 F.R.D. at 467 (contingent nature of litigation is key factor in determining reasonable attorneys' fees). Class and collective wage and hour cases of this type are, by their very nature, complicated and time-consuming. Any lawyer undertaking representation of large numbers of affected employees in such actions inevitably must be prepared to make a tremendous investment of time, energy, and resources. Due also to the contingent nature of the customary fee arrangement, lawyers are asked to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. *See Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743, (1981) ("FLSA claims typically involve complex mixed questions of fact and law . . . . These statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings.")*; Febus v. Guardian First Funding Grp., LLC*, 870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012) ("[C]ourts have recognized that FLSA cases are complex . . . "); *Hall,* 2016 U.S. Dist. LEXIS 53791, at *46, (holding that the complexity of an FLSA case weighed in favor of a lodestar multiplier).

With respect to the case-specific risks, Plaintiff faced significant challenges on class certification, merits, and damages. With respect to certification, Defendants would have undoubtedly have vigorously opposed Plaintiff's motions for class and/or collective certification. On the merits, the major risk was that the finder of fact might conclude, based on testimony from former messengers and officers of A to Z Logistics, that the messengers were not "on-the-clock" before and between deliveries, or did not work more than 40 hours per week. On damages, like in

all off the clock cases, there are no documents to support an accurate calculation of off-the-clock hours. Plaintiff relied on his own experiences and statements from other former messengers. It is far from certain that a finder of fact would award the former messengers a greater amount then they are recovering in this Settlement.

Accordingly, the risks Plaintiff's Counsel assumed in this litigation support the fee request.

### 4. Quality of Representation

The "quality of representation" factor under *Goldberger* conflates the recovery obtained and the backgrounds of the lawyers in the case. *Taft v. Ackermans*, No. 02 Civ. 7951 (PKL), 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007). The recovery for former messengers is excellent, especially in light of the fact that there are no hourly time records for the former messengers and factual issues concerning the number of hours they worked and whether they were "on-the-clock" before and between deliveries. The Gross Settlement Amount of $285,000 represents 42% of Plaintiff's best-case scenario assumptions or 28% of damages should Plaintiff obtain liquidated damages. *See* Plaintiff's Memorandum of Law In Support of Final Approval at pp. 8-9.

Given the risks of continued litigation, this is an outstanding result.

Moreover, Plaintiff's Counsel has extensive experience representing employees in complex class action litigation and enjoys a very good reputation in the plaintiffs and the legal community. *See* Francis Decl. ¶ 20.

The Sultzer Law Group focuses on complex civil litigation nationwide. The firm is headquartered in Poughkeepsie, New York, with additional offices in New York City and New Jersey. Since its founding in 2013, the firm has acted as lead counsel in a number of high-profile class action cases. The firm's class action practice group is included in Martindale-Hubbell's Bar Register of Preeminent Lawyers for Class Actions and has also been featured in numerous

publications, including <u>Inside Counsel Magazine</u>, <u>Risk Management Magazine</u>, and <u>CNBC News</u>. *See* The Sultzer Law Group Resume, attached as Exhibit B to the Francis Decl.

### 5.    The Fee in Relation to the Settlement

Where the size of the fund is relatively small, courts typically find that requests for a greater percentage of the fund are reasonable. *See, e.g., In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS)(SMG), 2007 WL 2743675, at *16 n.41 (E.D.N.Y., Sept. 18, 2007) ("Given the modest size of the [$20 million] settlement" a 30% fee would not be a windfall).

Class Counsel's 33% fee request is the percentage fee typically awarded in this Circuit. *See Hall v. Prosource Techs., LLC*, No. 14-CV-2502 (SIL), 2016 U.S. Dist. LEXIS 53791, *35 (E.D.N.Y. Arp. 11, 2016) ("33% of the common fun is considered routine and therefore reasonable . . . .") ((quoting *In re Arotech Corp. Sec. Litig.*, No. 07-CV-1838, 2010 U.S. Dist. LEXIS 55570 at * 7 (E.D.N.Y. June 7, 2010)); *see also Massiah v. MetroPlus Health Plan, Inc.*, No. 11-cv-05669, 2012 WL 5874655, at *7  (E.D.N.Y. Nov. 20, 2012) (finding one-third award "consistent with the norms of class litigation in this circuit" and collecting cases where one-third was awarded in FLSA cases); *See Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (a fee request of 33% is "consistent with the norms of class litigation in this circuit."); *Hernandez v. Merrill Lynch & Co.*, No. 11 Civ. 8472, 2013 WL 1209563, at *810 (S.D.N.Y. Mar. 21, 2013) (awarding 33% of a $7 million settlement in a FLSA and NYLL misclassification case); *Spicer v. Pier Sixty LLC,* No. 08 Civ.10240, 2012 WL 4364503, at *4 (S.D.N.Y. Sept. 14, 2012) (awarding 33%  fee in $8.5 million settlement; lodestar multiplier of 3.36 approved); *Davis,* 827 F. Supp. 2d at 178, 187 (awarding 33% fee in $42 million settlement; lodestar multiplier of 5.3 approved); *Willix v. Healthfirst Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *6-7 (E.D.N.Y. Feb. 18, 2011) (awarding one-third of $7.675 million settlement fund in FLSA

and NYLL wage and hour action); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *8-9 (E.D.N.Y. Jan. 20, 2010) (awarding class counsel 33% of $9.25 million settlement fund in FLSA and multi-state wage and hour case); *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *8-9 (S.D.N.Y. May 11, 2010) (awarding 33% of $6 million settlement fund in FLSA and multi-state wage and hour case); *Westerfield v. Washington Mut. Bank,* No. 06 Civ. 2817, 2009 WL 5841129 (E.D.N.Y. Oct. 8, 2009) (awarding 30% of $38 million settlement). A fee of 30% of the Fund is reasonable and "consistent with the norms of class litigation in this circuit." *McMahon*, 2010 WL 2399328, at *7.

### 6.    Public Policy Considerations

In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award. *McDaniel*, 595 F.3d at 417; *Wal-Mart Stores, Inc.*, 396 F.3d at 121; *Beckman*, 2013 WL 1803736, at *8. "The Second Circuit and courts in this district also have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation." *Asare,* 2013 WL 6144764, at *17 (citing *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999)). Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill that role must be adequately compensated for their efforts. *Id.* at *9 (citations and internal quotation marks omitted); *see also Sewell*, 2012 WL 1320124, at *13 (same). In addition, courts have recognized that fee awards in cases like this serve the dual purposes of encouraging "private attorneys general" to seek redress for violations and discouraging future misconduct of a similar nature. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980); *McMahon*, 2010 WL 2399328, at *7; *Khait*, 2010 WL 2025106, at *8. Class actions are also an invaluable safeguard of public rights. *See Phillips Petroleum Co. v. Shutts*, 472 U.S.

797, 809 (1985).  If courts denied sufficient attorneys' fees "no attorneys . . . would likely be willing to take on . . . small-scale class actions[.]" *Id.*; *deMunecas*, 2010 WL 3322580, at *8; *Sand v. Greenberg*, No. 08 Civ. 7840(PAC), 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010).

Importantly, the FLSA and the NYLL are remedial statutes designed to protect the wages of workers.  *See A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective – ensuring that every employee receives "a fair day's pay for a fair day's work") (internal quotation marks and citation omitted).  Adequate compensation for attorneys who protect those rights by taking on such litigation furthers the remedial purpose of those statutes.  *Khait*, 2010 WL 2025106, at *8 ("Attorneys who fill the private attorney general role must be adequately compensated for their efforts. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk.").

Public policy considerations therefore weigh strongly in favor of the fee request.

**D.      The Fee Is Also Reasonable Under A Lodestar Analysis**

Following *Goldberger*, the trend in the Second Circuit has been to apply the percentage method and loosely use the lodestar method as a "baseline" or as a "cross check."  *Goldberger*, 209 F.3d at 50.  As part of the cross check, the lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate.  *Hicks v. Stanley*, No. 01 Civ. 10071(RJH), 2005 WL 2757792, at *8 (S.D.N.Y., Oct. 24, 2005).  In calculating the lodestar for cross check purposes, the "hours documented by counsel need not be exhaustively scrutinized by the district court."  *Goldberger*, 209 F.3d at 50.  Rather, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case . . ."  *Id.*  Class Counsel spent over 315 hours litigating and settling this matter.  *See* Francis Decl. ¶¶ 21-22.  Here, Class Counsel's request for

$95,000 of the Fund for fees (excluding expenses of $4,824.54) is approximately .44 times "lodestar." This is well within the range awarded by courts in this Circuit.

Indeed, courts regularly award lodestar multipliers from two to six times lodestar, and sometimes even greater than six times lodestar. *See Beckman*, 2013 WL 1803736, at *13 ("courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers"); *Sewell*, 2012 WL 1320124, at *13 ("Courts commonly award lodestar multipliers between two and six."); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 520, 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012) (granting attorneys' fees equal to 6.8 times lodestar); *Davis*, 827 F. Supp. 2d at 184-86 (awarding multiplier of 5.3 in wage and hour class action); *Maley*, 186 F. Supp. 2d at 371 ("modest multiplier" of 4.65 in wage and hour class action was "fair and reasonable").

Moreover, because "'class counsel will be required to spend significant additional time on this litigation in connection with implementing and monitoring the settlement, the multiplier will actually be significantly lower' because the award includes not only time spent prior to the award, but after in enforcing the settlement." *Sewell*, 2012 WL 1320124, at *13 (quoting *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207, 2010 WL 3119374, at *6 (S.D.N.Y. Aug. 6, 2010)).

E.     **Plaintiff's Counsel's Expenses In This Case Should Be Reimbursed**

In total, Plaintiff's Counsel incurred $4,824.54 in expenses. These expenses consisted of fees for court filings and service of process ($1,084.60) as well as expenditures for mediation and investigation of Plaintiff's claims ($3,739.94). *See* Francis Decl. ¶ 24. All of these expenses are and were necessary to the litigation and should be reimbursed. *See Willix v. Healthfirst, Inc.*, No.

07 Civ. 1143 (ENV)(RER), 2011 U.S. Dist. LEXIS 21102, *19 (E.D.N.Y. Feb. 18, 2011) **("**Courts typically allow counsel to recover their reasonable out-of-pocket expenses.")**.

### F.    The Service Award to The Plaintiff Is Appropriate In This Case

Plaintiff's Counsel requests that this Court grant a service award of $5,000 to named Plaintiff Richard Marasco who took a leadership role in the litigation and contributed to the success of the case as a whole.

"Service awards fulfill the important purpose of compensating plaintiffs for the time they spend and the risks they take. *Flores*, 2014 WL 321831, at *10 (citing *Massiah*, 2012 WL 5874655, at *8). In examining the reasonableness of a requested service award, courts consider: (1) the personal risk incurred by the plaintiffs; (2) the time and effort expended by the plaintiffs in assisting the prosecution of the litigation; and (3) the ultimate recovery in vindicating statutory rights. *Frank*, 228 F.R.D. at 187; *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997).

First, Mr. Marasco undertook a significant risk to serve his fellow former messengers. Service awards are especially important in employment cases, where employees have assumed risks of future retaliation and losing future employment opportunities: "Here, Class Representatives faced the risks that new employers would learn that they were class representatives in a lawsuit against their former employer and take adverse action against them. Moreover, each time they change jobs, they will risk retaliation in the hiring process." *Asare*, 2013 WL 6144764, at *15. *See also Sewell*, 2012 WL 1320124, at *14 (recognizing that plaintiffs in wage and hour case "fac[e] potential risks of being blacklisted as 'problem' employees"). Although Plaintiff was no longer working for A to Z Logistics when he joined the lawsuit, and there has been no threat or indication of retaliation here, he risked retaliation from his current employers and put his ability to secure future employment at risk as well. *Guippone v. BHS & B Holdings, LLC*, No. 09 Civ.

01029(CM), 2011 WL 5148650, at *7 (S.D.N.Y., Oct. 28, 2011) ("Today, the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person."); *Parker*, 2010 WL 532960, at *1 ("[F]ormer employees put in jeopardy their ability to depend on the employer for references in connection with future employment."). Service awards "provide an incentive to seek enforcement of the law despite these dangers." *Id.* at *1; *Henry*, 2014 WL 2199427, at *10 ("In a wages and hours case, where a low-level employee assumes responsibility for prosecuting an action against an employer and takes considerable personal risk in so doing, [service] awards are singularly appropriate.").

Second, Plaintiff contributed a significant amount of time and effort to the case. *See* Francis Decl ¶¶ 33-34. Plaintiff provided Class Counsel with detailed factual information regarding his job duties, A to Z Logistics' policies, and other information relevant to his claims, providing information responsive to Defendants' interrogatories and document demands, and regularly making himself available to communicate with Class Counsel when necessary, including throughout the settlement process. *See Parker*, 2010 WL 532960, at *1 (recognizing efforts of plaintiffs including meeting with counsel, reviewing documents, formulating theory of case, identifying and locating other class members to expand settlement participants, and attending court proceedings); *Frank*, 228 F.R.D. at 187 (recognizing the important role that plaintiffs play as the "primary source of information concerning the claims," including by responding to counsel's questions and reviewing documents). His role was particularly important in estimating damages since, by definition, there were no time records for off-the-clock work.

Third, the Joint Stipulation has vindicated the statutory rights of the former employers under both the FLSA and the New York Labor Law, which supports the request for the Service Award.

The requested Service Award of $5,000 to named Plaintiff Marasco amounts to approximately 1.75% of the total recovery, which is far below what other courts have held to be a reasonable percentage. *See Reyes v. Altamarea Group, LLC*, No. 10–CV–6451 (RLE), 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) (approving awards representing approximately 16.6% of the settlement); *Parker*, 2010 WL 532960, at *2 (finding that service awards totaling 11% of the total recovery are reasonable).

In absolute dollar terms, courts routinely approve service awards equal to or greater than the award requested here. *See Henry*, 2014 WL 2199427, at *10 (calling $10,000 service award "modest" and collecting cases); *Ballinger v. Advance Magazine Publishers, Inc.*, No. 13 Civ. 4036 (HBP), slip op at 2-3 (S.D.N.Y. Aug. 11, 2015) (approving service awards of $10,000 to each of the named plaintiffs); *Behzadi*, 2015 WL 4210906 (approving service awards of $10,000 to each of the named plaintiffs); *Eliastam v. NBC Universal Media, LLC*, No. 13 Civ. 4634 (S.D.N.Y. May 23, 2015) (approving service awards of $10,000, $5,000 and $2,000 to plaintiffs and opt-ins); *Ceka v. PBM/CMSI Inc., PBM, LLC*, No. 12 Civ. 1711(DAB), 2014 WL 6812127, at *1 (S.D.N.Y. Dec. 2, 2014) (finding service award of $10,000 "reasonable and justified to compensate Class Representatives for the services they provided and the risks they incurred during the course of the class action litigation"); *Sukhnandan v. Royal Health Care of Long Island, LLC*, No. 12cv4216 (RLE), 2014 WL 3778173, at *16 (S.D.N.Y. July, 31 2014) (approving service awards of $10,000 to each of the named plaintiffs); *Sewell*, 2012 WL 1320124, at *15 (awarding $10,000 and $15,000 service awards in FLSA case); *Reyes*, 2011 4599822, at *9 (approving awards of $15,000 and $5,000); *Khait*, 2010 WL 2025106, at *9 (approving awards of $15,000 and $10,000); *RMED Int'l, Inc. v. Sloan's Supermarkets*, No. 94 Civ. 5587 (PKL)(RL), 2003 WL 21136726, at *2-3 (S.D.N.Y. May 15, 2003) (2.6% of $975,000).

Accordingly, the service awards are reasonable and should be approved.

## IV. <u>CONCLUSION</u>

For the reasons above, Plaintiff's motion should be granted.

Dated: March 29, 2019

By: */s/* Jeremy Francis
Jeremy Francis, Esq.
**THE SULTZER LAW GROUP, P.C.**
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Telephone: (845) 483-7100
Facsimile: (888) 749-7747
francisj@thesultzerlawgroup.com


By: /s/ Brett Zinner
Brett Zinner, Esq.
**ROSENBERG FORTUNA & LAITMAN, LLP**
666 Old Country Road, Suite 810
Garden City, New York 11530
Telephone: 516-228-6666
Facsimile: 516-228-6672
brett@rosenbergfortuna.com

*Attorneys for Plaintiff and the Proposed Class*