# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RICHARD MARASCO, individually on behalf of
himself and all others similarly situated,

                                    Plaintiff,

              -against-

A TO Z LOGISTICS, INC., VICTOR FINNEGAN,
and JOHN DOES 1-25,

                                    Defendants.

Case No.: 16-cv-00232(PKC)(JO)

**JOINT STIPULATION OF**
**SETTLEMENT AND RELEASE**

This Joint Stipulation of Settlement and Release (the "Stipulation" or "Agreement") is entered into by and between Plaintiff Richard Marasco ("Marasco") (the "Named Plaintiff"), individually and on behalf of the class of individuals that he seeks to represent, and Defendants A to Z Logistics, Inc. ("A to Z Logistics") and Victor Finnegan ("Finnegan") (collectively, the "Defendants").

## RECITALS

**WHEREAS**, on January 15, 2016, the Named Plaintiff filed a class and collective action complaint in the Eastern District of New York, captioned *Richard Marasco v. A to Z Logistics, Inc. et al.*, Case Number 16-cv-00232 (PKC) (JO), on behalf of himself and others similarly situated, in which the Named Plaintiff claimed that he, along with the putative class and collective action members, *inter alia*, were not paid the minimum wage and overtime for work in excess of 40 hours in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL");

**WHEREAS**, the Named Plaintiff, on behalf of himself and others similarly situated, filed the First Amended Complaint and Second Amended Complaint, on June 24, 2016 and October 28, 2016, respectively;

**WHEREAS**, on February 10, 2017, the Named Plaintiff, on behalf of himself and others similarly situated, filed the operative Third Amended Complaint, in which the Named Plaintiff asserted claims against Defendants, on behalf of the putative class and collective action members, for: (i) unpaid minimum wage and overtime in violation of the FLSA and NYLL; (ii) failure to reimburse for "tools of the trade" under the FLSA and NYLL; (iii) spread of hours pay violations under the NYLL; (iv) failure to furnish wage statements under the NYLL; (v) unlawful deductions under the NYLL; and (vi) conversion (the "Lawsuit");

**WHEREAS**, the purpose of this Agreement is to settle fully and finally all Released FLSA Claims and Released Rule 23 Claims (as hereinafter defined) between the Named Plaintiff and the Settlement Class (defined below) and Defendants, including all claims asserted against Defendants in the Lawsuit;

**WHEREAS**, Defendants deny all of the material allegations in the Lawsuit, and deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Lawsuit;

**WHEREAS**, without admitting or conceding any liability or damages whatsoever, Defendants agree to settle the Lawsuit on the terms and conditions set forth in this Agreement, solely to avoid the burden and expense of continuing the Lawsuit;

**WHEREAS**, the Parties commenced settlement discussions around August 2018, and jointly retained the services of private mediator Alfred Feliu, Esq. for the purposes of engaging in formal mediation;

**WHEREAS**, prior to mediation, the Parties engaged in informal discovery, which consisted of, among other things, reviewing and analyzing the putative class and collective's dispatch data and time records, and the Parties independently conducted their own damage assessments and analyses;

**WHEREAS,** the mediation was conducted on August 2, 2018 and attended by counsel for the Parties (as defined herein) and Finnegan, and following the mediation, the Parties engaged in additional telephone calls, email exchanges, and discussions, leading to an agreement to settle this matter under the terms and conditions set forth herein; and

**WHEREAS**, the Named Plaintiff's Counsel has performed a thorough study of the law and facts relating to the claims asserted in the Lawsuit and has concluded, based upon their investigation and informal discovery and damage assessments, and taking into account the contested issues, the expense and time necessary to pursue the Lawsuit through appeal and further litigation, the risks and costs of further prosecution of the Lawsuit, the uncertainties of appeal and complex litigation, and the benefits to the Class Members (as defined herein), that a settlement with Defendants on the terms set forth herein is fair, reasonable, adequate, and in the best interests of the Class Members.

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Lawsuit on the following terms and conditions:

1. **DEFINITIONS.** The defined terms set forth in this Agreement have the meanings ascribed to them below.

1.1 **Agreement.** "Agreement" means this Joint Stipulation of Settlement and Release and all exhibits, also referred to as the "Stipulation."

1.2 **Claim Form.** "Claim Form" or "Consent to Join Claim Form and Release" means the form attached hereto as Exhibit A, that shall be attached as Form 1 to the Notice of Proposed Class Action Settlement and Fairness Hearing, which a Class Member must submit, along with an IRS 2018 W-4 form, in order to be eligible to become a Participating Claimant and recover a payment pursuant to Section 5.1. The Claim Form provided to Class Members shall state that, by signing and returning the Claim Form, the

Class Member affirmatively consents to opt in to the Lawsuit, pursuant to 29 U.S.C. Section 216.

**1.3** **Claim Form Deadline.** "Claim Form Deadline" means the date sixty (60) days after the Notice is mailed to the Class Members. If the Settlement Claims Administrator re-mails the Notice to any Class Member pursuant to Sections 4.2(D) and (E) of this Agreement because the first mailing was ·returned as undeliverable, the Class Member shall be allowed to submit a Claim Form by the original deadline (based on the initial mailing), or up to forty-five (45) days from the date of the second mailing, whichever is later. A fifteen (15) day good faith window following the expiration of the Claim Form Deadline after which a late-received Claim Form will still be honored if the Participating Claimant can prove extraordinary circumstances such as s/he was hospitalized or in the military at the time the Notice was mailed or re-mailed, or in the event Defendants' or the Settlement Claims Administrator's negligence results in delayed mailing, or non-mailing, of the Notice.

**1.4** **Class Counsel.** "Class Counsel" or "Plaintiff's Counsel" means the Sultzer Law Group P.C., 14 Wall Street, 20th Floor, New York, NY 10005, and Rosenberg Fortuna & Laitman, LLP, 666 Old Country Road, Suite 810, Garden City, NY 11530.

**1.5** **Class Members or Settlement Class.** The "Class Members" or "Settlement Class" shall mean the Rule 23 Class Members as further defined herein.

**1.6** **Court.** "Court" means the United States District Court for the Eastern District of New York.

**1.7** **Days.** "Days" means calendar days.

**1.8** **Defendants.** "Defendants" means A to Z Logistics, Inc. and Victor Finnegan in connection with his alleged role at A to Z Logistics, Inc.

**1.9** **Defendants' Counsel or Defense Counsel.** "Defendants' Counsel" or "Defense Counsel" means the law firm of Littler Mendelson, P.C., 900 Third Avenue, New York, NY 10022.

**1.10** **Effective Date.** The "Effective Date" means the date on which this Agreement becomes effective, which shall be fifteen (15) days following the last date the Final Approval Order entered by the Court finally approving this Agreement is appealable (30 days after the entry of Judgment), if no appeal is filed. If an appeal is taken, then the Effective Date shall be fifteen (15) days after: (i) the expiration of the time to file a petition for a writ of certiorari to review the Circuit Court's affirmance of the Final Approval Order, if no petition is filed; or (ii) if a petition for writ of certiorari is filed with respect to the Circuit Court's affirmance, the date such petition is denied, or if granted, the date of final affirmance of the Final Approval Order following review pursuant to that grant; or (iii) the date of final dismissal of any appeal from the Final Approval Order or the final dismissal of any proceeding on certiorari to review the Final Approval Order.

**1.11** **Employer Payroll Taxes.** "Employer Payroll Taxes" means all taxes and withholdings an employer is required to make on its behalf arising out of or based upon the payment of wages in this Lawsuit, including FICA, FUTA, and SUTA obligations.

**1.12** **Fairness Hearing.** "Fairness Hearing" means, to the extent required by the Court, the hearing before the Court relating to the Motion for Judgment and Final Approval referenced in Section 6, below.

**1.13** **Final Approval Order.** "Final Approval Order" means the Order entered by the Court after the Fairness Hearing, approving the terms and conditions of this Agreement, authorizing distribution of the Settlement Checks and Service Award, dismissing the Lawsuit with prejudice, and entering Judgment pursuant to this Stipulation and in accordance with Fed. R. Civ. P. 58.

**1.14** **Gross Settlement Amount or Maximum Settlement Amount.** "Gross Settlement Amount" or "Maximum Settlement Amount" means a potential aggregate sum not to exceed Two Hundred Eighty-Five Thousand Dollars and No Cents ($285,000.00), which Defendants have agreed to pay to settle the Lawsuit as set forth in this Agreement. The Gross Settlement Amount or Maximum Settlement Amount will cover payments for the following: (1) all claims for class members who file timely and valid claims forms; (2) attorneys' fees and costs; (3) costs of the settlement administrator to implement and administer the settlement, including for the cost of notice and the claim form; (4) Service Award (as defined herein) to the Named Plaintiff, as well as his payment as a class member after submitting a claim form; and (5) Defendants' share of Employer Payroll Taxes (as defined herein).

**1.15** **Last Known Address.** "Last Known Address" means the most recently recorded physical mailing address for a Class Member as such information is contained in Defendants' files.

**1.16** **Lawsuit.** "Lawsuit," as set forth in the Introduction, means the above-captioned lawsuit initiated by the Named Plaintiff alleging violations of the FLSA and the wage and hour laws of New York, captioned *Richard Marasco v. A to Z Logistics, Inc. et al.*, Case Number 16-cv-00232 (PKC) (JO), pending in the United States District Court for the Eastern District of New York.

**1.17** **Named Plaintiff.** "Named Plaintiff" means Richard Marasco.

**1.18** **Notice.** "Notice" means the Court-approved Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing, in the form attached as Exhibit B.

**1.19** **Objector.** "Objector" means an individual who timely and correctly files an objection to this Agreement, and does not include any individual who opts out of this Agreement.

**1.20** **Opt-Out Statement.** "Opt-Out Statement" means a written statement that: (1) expressly states "I elect to exclude myself from the settlement in the RICHARD MARASCO / A TO Z LOGISTICS, INC. case, Case No. 16-cv-00232", (2) includes the Rule 23 Class

4

Member's name, address, and telephone number, and (3) bears the Rule 23 Class member's signature.

**1.21   Participating Claimant(s) and Participating Claim.**

    (A)    "Participating Claimant" or "Participating Claimants" means each Class Member who has not opted out of the Settlement in accordance with Section 5.2 and who properly and timely submits a Claim Form and Release, with an 2018 IRS W-4 Form by the Claim Form Deadline.

    (B)    "Participating Claim" is a Claim Form filed in a proper and timely manner to claim entitlement to a Settlement Check.

**1.22   Parties.** "Parties" shall mean the Named Plaintiff, individually and on behalf of the class of individuals that he seeks to represent; and Defendants A to Z Logistics, Inc. and Victor Finnegan.

**1.23   Plaintiff.** "Plaintiff" shall mean the Named Plaintiff.

**1.24   Preliminary Approval Order.** "Preliminary Approval Order" means the Order entered by the Court preliminarily approving the terms and conditions of this Agreement, and directing the manner and timing of providing Notices to the Class Members.

**1.25   Qualified Settlement Fund or QSF.** "Qualified Settlement Fund" or "QSF" means the account established by the Settlement Claims Administrator for the Gross Settlement Amount paid by Defendants. The QSF shall be controlled by the Settlement Claims Administrator, subject to the terms of this Agreement and the Court's Orders for Preliminary Approval and Final Approval. Interest, if any, earned on the QSF shall be returned to Defendants.

**1.26   Released FLSA Claims.** "Released FLSA Claims" shall collectively mean any and all claims, obligations, demands, actions, rights, causes of action, and liabilities under the Fair Labor Standards Act against Releasees (as defined herein), of whatever kind and nature, character and description, whether known or unknown, and whether anticipated or unanticipated, that accrue or accrued at any time from January 15, 2010 through the date of the Preliminary Approval Order, and were asserted in the Lawsuit or otherwise arise out of the facts, matters, transactions or occurrences referred to in the Lawsuit that could have been alleged as separate claims, causes of action, lawsuits or other theories of relief, including, without limitation, claims for failure to pay minimum wage, failure to pay overtime, failure to pay for all hours worked, failure to reimburse for business expenses (including, but not limited to, "tools of the trade" expenses and derivative minimum wage claims), penalties (including late payment penalties) and premium pay, any related or derivative claims for unpaid costs, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable, declaratory and/or injunctive relief, and any and all such claims against American Expediting Company ("AMEX") that arise from or relate in any way to the Participating Claimants' employment with Defendants.

**1.27** **Released Rule 23 Claims.** "Released Rule 23 Claims" shall collectively mean any and all claims, obligations, demands, actions, rights, causes of action and liabilities against Releasees, arising under federal, state, or local law, other than claims arising under the FLSA, of whatever kind and nature, character and description, whether known or unknown, and whether anticipated or unanticipated, that accrued or accrue on any date from January 15, 2010 through the date of the Preliminary Approval Order, and were asserted in the Lawsuit or otherwise arise out of the facts, matters, transactions or occurrences referred to in the Lawsuit that could have been alleged as separate claims, causes of action, lawsuits or other theories of relief, including, without limitation, wage and hour claims under the New York Labor Law, and its regulations and rules, or under any other legal theory, including, but not limited to, common law tort and conversion theories, for claims for failure to pay minimum wage, failure to pay overtime, failure to pay for all hours worked, failure to provide and/or pay for meal and/or rest periods, failure to timely pay final wages, failure to pay "spread of hours" wages, alleging unlawful imposition, deduction or chargeback from compensation for expenses or costs under applicable state laws, failure to reimburse for business expenses (including, but not limited to, "tools of the trade" expenses and derivative minimum wage claims), failure to furnish accurate wage statements or other notices, premium pay, and penalties (including late payment penalties), any related or derivative claims for unpaid costs, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable, declaratory or injunctive relief, and any and all such claims against AMEX that arise from or relate in any way to Class Members' employment with Defendants.

Claims under the New York Labor Law that are released include, without limitation, claims under N.Y. Lab. Law § 160 *et seq.*; N.Y. Lab. Law § 190 *et seq.* (including, but not limited to, §§ 191, 193, 195, and 198); N.Y. Lab. Law §§ 215 and 218; NY. Lab. Law § 650 *et seq.*; 12 N.Y. Comp. Codes R. & Regs. §§ 142-2.10 *et seq.* (including, but not limited to, §§ 142-2.2, 142-2.4).

**1.28** **Releasees.** "Releasees" means the Defendants, and its/their respective present and former affiliates, related entities, divisions, subsidiaries, parents, predecessors, successors, any merged entity or merged entities and/or its or their present and former officers (including, but not limited to, Finnegan), partners, directors, employees, agents, shareholders, investors, insurers or reinsurers, employee retirement or benefit plans (and the trustees, administrators, fiduciaries, agents, representatives, insurers and reinsurers of such plans), attorneys (including, without limitation, Littler Mendelson, P.C.), assigns, trustees, heirs, administrators, executors, representatives and/or principals thereof, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity that could be jointly liable or alleged to be jointly liable with any of them, including, but not limited to, AMEX and Finnegan in connection with his alleged role at AMEX.

**1.29** **Rule 23 Class Members.** "Rule 23 Class Members" are individuals who were employed by A to Z Logistics as messengers from January 15, 2010 through the date of the Preliminary Approval Order.

**1.30** **Service Award.** "Service Award" means the portion of the Gross Settlement Amount required by the Named Plaintiff and approved by the Court as an award to the Named Plaintiff for representing the interest of the Class Members.

**1.31** **Settlement Amount.** "Settlement Amount" means an amount sufficient to cover all Participating Claimants' Settlement Checks, the Employer Payroll Taxes, the Court awarded attorneys' fees and costs, the settlement administration fees and costs, and the Service Award, which in total shall not exceed the Gross Settlement Amount.

**1.32** **Settlement Checks.** "Settlement Checks" means checks issued to Participating Claimants for their share of the Gross Settlement Amount, based on the formula set forth in Section 7.2.

**1.33** **Settlement Claims Administrator.** The "Settlement Claims Administrator" shall be RG/2. The Settlement Claims Administrator shall be responsible for mailing the Notices to Class Members; responding to Class Member inquiries; assisting with the calculation of settlement allocations; reporting on the state of the Settlement to the Parties; communicating with and advising Class Members of defective or incomplete Claim Forms; establishing and administering the QSF; distributing settlement payments; calculating and paying the Employer Payroll Taxes; calculating and withholding Class Members' share of applicable payroll taxes (including, without limitation, federal, state, and local income tax withholding, FICA, Medicare and any state or local employment taxes); remitting such withheld funds to the appropriate taxing authorities and providing any related tax reporting; preparing and filing all tax returns necessary for the Settlement and the QSF; preparing a declaration regarding its due diligence in the claims administration process; and performing such other duties as the Parties may jointly direct or as are specified herein, including, without limitation, such duties as are specifically set forth in Section 3 hereof. All settlement administration amounts, including but not limited to the Settlement Claims Administrator's fees and costs, shall be paid from the Gross Settlement Amount in the QSF. If the Settlement is not given final approval by the Court and does not become effective, the Parties shall bear settlement administration fees and costs equally.

**1.34** **Updated Address.** "Updated Address" means a mailing address that was updated via a standard skip trace or an updated mailing address provided by the United States Postal Service or a Class Member.

**2.** **NON-ADMISSION OF LIABILITY.** Nothing relating to this Agreement, or any communications, papers, or orders related to the Agreement, shall be cited to as, construed to be, admissible as, or deemed an admission by Defendants or Releasees of any liability, culpability, negligence, or wrongdoing toward the Named Plaintiff, the Class Members, or any other person, and Defendants and Releasees specifically disclaim any liability, culpability, negligence, or wrongdoing toward the Named Plaintiff, the Class Members, or any other person, or that class or collective action certification is appropriate in this or any other matter. Each of the Parties has entered into this Stipulation with the intention to avoid further disputes and litigation with the attendant inconvenience, expenses, and contingencies. This Agreement, and any communications,

papers, or orders related to the Agreement, may not be cited to, used, or admitted as evidence of liability or that class or collective action certification is appropriate. There has been no determination by any court as to the merits of the claims asserted by the Named Plaintiff against Defendants as to whether a class should be certified, other than for settlement purposes only.

**3.**     **RETENTION AND RESPONSIBILITIES OF THE SETTLEMENT CLAIMS ADMINISTRATOR.** Within fifteen (15) days after the filing of a Preliminary Approval Motion, Class Counsel and Defense Counsel shall engage RG/2 a Settlement Claims Administrator. Without limiting any duties set forth elsewhere in this Agreement, RG/2's duties shall include the following:

**3.1**    The Settlement Claims Administrator shall mail the Notices to Class Members in accordance with Section 4.2.

**3.2**    The Settlement Claims Administrator shall provide reports to counsel for the Parties regarding the status of the mailing of the Notices to Class Members, a summary of the number of individuals who have filed claims forms or requested to opt out or submitted objections, a summary of Class Members who submit an incomplete or defective Claim Form with a description of steps taken to notify the claimant to cure the defect, the claims administration process, distribution of the Settlement Checks, and other matters relating to the Settlement.

**3.3**    The Settlement Claims Administrator shall take reasonable steps to obtain the Updated Address of any Class Members for whom a Notice is returned by the Post Office as undeliverable and shall attempt re-mailings as described in Sections 4.2(D) and (E) of this Agreement. The Settlement Claims Administrator shall notify Class Counsel and Defendants' Counsel of any Notice sent to a Class Member that is returned as undeliverable after the first mailing, as well as any such Notice returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement.

**3.4**    The Settlement Claims Administrator shall keep accurate records of the dates on which it sends Notices to Class Members. The Settlement Claims Administrator shall keep accurate records of all Opt-Out Statements in accordance with Section 5.2. The Settlement Claims Administrator shall keep accurate records of all Objections in accordance with Section 5.3.

**3.5**    Defendants' Counsel and Class Counsel agree to reasonably cooperate with the Settlement Claims Administrator, provide accurate information, provide reasonably available data to assist the Settlement Claims Administrator in locating Class Members, and provide other reasonably available information related to the administration of the Settlement.

**3.6**    Within thirty (30) days of the payment by Defendants of the Settlement Amount into the QSF, the Settlement Claims Administrator shall mail the Settlement Checks, and shall wire the Court-approved attorneys' fees to Class Counsel, unless a lien remains on the

such fees in which case Class Counsel and Defense Counsel shall stipulate that the fees shall be placed in an escrow account pending resolution of the lien.

**3.7** The Settlement Claims Administrator shall calculate and handle tax payment and reporting in accordance with Section 7.5.

**3.8** The Settlement Claims Administrator shall return any remaining amounts in the QSF within sixty (60) days following the Check Cashing Period, in accordance with Section 7.1(C).

**3.9** In the event that either Defendants or Class Counsel take the position that the Settlement Claims Administrator is not acting in accordance with the terms of this Agreement, such party shall meet and confer with opposing counsel prior to raising any such issue with the Claims Administrator or the Court.

**4. PRELIMINARY APPROVAL AND CLASS NOTICE.**

**4.1 Preliminary Approval Motion.**

    (A) The Named Plaintiff shall promptly file an unopposed Motion for an Order Preliminarily Approving the Agreement ("the Preliminary Approval Motion"). The Preliminary Approval Motion shall be provided to Defendants for review and approval at least seven (7) days prior to filing with the Court, and Defendants agree to provide proposed changes within four (4) days of receipt. The Named Plaintiff shall review and may accept Defendants' proposed changes. In the event Class Counsel and Defendants' Counsel are unable to agree on the terms of the Preliminary Approval Motion, the parties shall seek relief from the Court and/or notify the Court of the dispute and each party's respective position. In connection with the Preliminary Approval Motion, the Named Plaintiff shall submit to the Court this Stipulation with all exhibits.

    (B) The Preliminary Approval Motion shall move the Court to set deadlines for Class Members to submit Opt-Out Statements or objections to this Agreement, and to schedule a Fairness Hearing for Final Approval of the Settlement at the earliest practicable date.

    (C) In the Preliminary Approval Motion, Class Counsel shall advise the Court of the process proposed by counsel for the Parties to obtain from the Court a "Final Approval Order" and a "Judgment of Dismissal" that shall, among other things: (1) memorialize the Court's approval of the settlement as fair, adequate and reasonable; (2) incorporate the terms of the releases, as described herein; (3) dismiss the Lawsuit with prejudice; (4) award Class Counsel fees and costs; and (5) award the Service Award as set forth more fully in Section 7.3. Provided that the Named Plaintiff adheres to the terms of this Agreement, and that Defendants' Counsel agrees to the terms of the Preliminary Approval Motion, Defendants shall not oppose the Preliminary Approval Motion.

**4.2    Notice to Class Members.**

(A)    Within twenty (20) days of the Court's issuance of a Preliminary Approval Order, Defendants shall provide the Settlement Claims Administrator and Class Counsel, in electronic form, for all Class Members the following information: name, last known address, and gross earnings ("Class List"). The Class List and the data and information contained in the Class List shall not be disclosed to anyone external to counsel for the respective parties, and the Settlement Claims Administrator, without the written consent of Defendants. Class Counsel warrants that they will not use this information to solicit Class Members to participate in this settlement, case or for any other purpose.

(B)    Within fourteen (14) days of receipt of the Class List from Defendants, the Settlement Claims Administrator shall mail the Notices to Class Members via United States first Class Mail, postage prepaid.

(C)    If Class Members raise questions with Class Counsel or the Settlement Claims Administrator relating to their employment with Defendants, Defendants shall provide Class Counsel or the Settlement Claims Administrator with all information in their possession necessary to address their questions in such detail and as quickly as reasonably possible.

(D)    In the event that, subsequent to the first mailing of the Notice and prior to the Claim Form Deadline, a Notice is returned to the Settlement Claims Administrator by the United States Postal Service with an Updated Address, the Settlement Claims Administrator shall re-mail the Notice to that address within seven (7) days.

(E)    In the event that, subsequent to the first mailing of the Notice, a Notice is returned to the Settlement Claims Administrator by the United States Postal Service with no forwarding address, the Settlement Claims Administrator shall perform a standard skip trace in an effort to ascertain the Updated Address for the Class Member in question. If such address is ascertained, the Settlement Claims Administrator shall re-send the Notice promptly upon receiving such information, and in no event later than seven (7) days after receiving the information. If no Updated Address is obtained for that Class member, the Class Notice shall be sent again to the Last Known Address.

**5.    CLASS MEMBER RESPONSES TO NOTICE.**

**5.1    Participating Claimants.**

(A)    Class Members who wish to become Participating Claimants must fully and timely complete, execute, and mail, per the instructions therein, the Claim Form, and IRS 2018 W-4 Form enclosed with the Notice. By executing and mailing the Claim Form, the Participating Claimant shall be "opting in" to the FLSA action pursuant to Section 216(b) of the FLSA. If the Claim Form is not postmarked on

or before the Claim Form Deadline, then that Class Member will be deemed to have forever waived his or her right to be a Participating Claimant and receive payment under this Agreement. However, unless they properly submit an Opt-Out Statement, Rule 23 Class Members shall be subject to the Judgment even if they do not submit the Claim Form in a timely and proper fashion (and thus shall have waived and released all Released Rule 23 Claims which they may have had standing to assert). <u>Only Participating Claimants shall be entitled to payment pursuant to the settlement and this Agreement.</u>

(B)     A Class Member who files a timely, but incomplete, Claim Form and/or W-4 Form shall be notified by the Settlement Claims Administrator of the nature of the defect and shall be instructed by the Settlement Claims Administrator to cure the defect no later than five (5) days before the deadline for the Motion for Judgment and Final Approval. Any Class Member who fails to cure the defect on or before five (5) days before the deadline for the Motion for Judgment and Final Approval shall not be deemed a Participating Claimant (and shall not receive his or her Settlement Check). Class Members who fail to timely cure the defect shall be subject to the Judgment.

(C)     A Rule 23 Class Member who submits an Opt-Out Statement and also submits a Claim Form and/or IRS 2018 W-4 Form shall be sent a cure letter by the Settlement Claims Administrator seeking clarification of whether they intend to opt out of the settlement or become a Participating Claimant. Absent a response to the contrary, such Rule 23 Class Member shall be deemed to have opted-out of the settlement pursuant to Section 4.2.

**5.2     Rule 23 Class Member Opt Outs.**

(A)     Rule 23 Class Members who choose to opt out of the settlement as set forth in this Agreement must mail via First Class United States Mail, postage prepaid, a signed Opt-Out Statement (as defined in Section 1.20) to the Settlement Claims Administrator. To be effective, an Opt-Out Statement must be postmarked within sixty (60) days from the mailing of the Notice to Class Members (the "Opt-Out Period"). For any deadline under this Agreement that is based on a postmark, in the event that there is no postmark date of the document being mailed by the Class Member, it shall be presumed the document was mailed three (3) days prior to the date received by the Settlement Claims Administrator's receipt of the document, excluding any Sunday or other day for which no postal service was provided. It is the responsibility of the individual seeking to opt out to retain a copy of the Opt-Out Statement and proof of timely mailing.

(B)     Rule 23 Class Members whose first mailing was returned to the Settlement Claims Administrator as undeliverable shall be allowed to opt out or object by the original deadline (based on the initial mailing), or up to forty-five (45) days from the date of the second mailing, whichever is later. The Settlement Claims Administrator shall not attempt more than two (2) mailings of the Notice to any

Class Member, and no mailing shall occur more than thirty (30) days after the first mailing to Class Members.

(C)     The Settlement Claims Administrator shall stamp the postmark date on the original of each Opt-Out Statement that it receives and shall serve copies of each Opt-Out Statement on Class Counsel and Defendants' Counsel no later than three (3) business days after receipt thereof. Class Counsel shall promptly file with the Clerk of Court stamped copies of any Opt-Out Statements. The Settlement Claims Administrator will, within three (3) business days of the end of the Opt-Out Period, send a final list of all Opt-Out Statements to Class Counsel and Defendants' Counsel by both email and overnight delivery. The Settlement Claims Administrator shall retain the stamped originals of all Opt-Out Statements and originals of all envelopes accompanying Opt-Out Statements in its files until such time as the Settlement Claims Administrator is relieved of its duties and responsibilities under this Agreement.

(D)     Any Rule 23 Class Member who does not properly submit an Opt-Out Statement pursuant to this Agreement shall be bound by the Settlement and the terms of this Agreement and shall have released the Released Rule 23 Claims, as set forth in this Agreement. All Participating Claimants shall be bound by the Settlement and, by submission of the Claim Form (attached as Exhibit A), shall release both the Released Rule 23 Claims and the Released FLSA Claims, except where a Class Member submits both an Opt-Out Statement and a Claim Form, in which case the conflict will be resolved as provided in Section 5.1(C).

(E)     The Named Plaintiff shall not opt out of the Settlement, and his execution of this Agreement shall signify his agreement to all of the terms of the Settlement.

## 5.3     Rule 23 Class Member Objections to Settlement.

(A)     Any Rule 23 Class Member who does not submit an Opt-Out Statement and who wishes to object to the proposed settlement (an "Objector") must do so in writing. To be considered, a written objection must be mailed to the Settlement Claims Administrator via United States First Class Mail, postage prepaid, and be postmarked by a date certain within sixty (60) days from the mailing of the Notice to the Objector. The written objection must include words to the effect of, "I object to the settlement in the RICHARD MARASCO / A TO Z LOGISTICS, INC. case, Case No. 16-cv-00232", as well as all reasons for the objection. Any reasons not included in the written objection shall not be considered. The written objection must also include the name, address, signature, and telephone numbers for the Objector. The Settlement Claims Administrator shall stamp the date received on the original and send copies of each objection to Class Counsel and Defendants' Counsel by email and overnight delivery no later than three (3) days after receipt thereof. Class Counsel shall promptly file the date-stamped originals of any and all objections with the Court. It is the responsibility of any Objector to retain a copy of the objection and proof of timely mailing hereunder.

(B)     A valid Objector also has the right to appear at the Fairness Hearing either in person or through counsel retained by the Objector. An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections at the time he or she submits his or her written objections including words to the effect of, "I intend to appear at the Fairness Hearing" in his or her written objection. An Objector may withdraw his or her objections at any time. A Rule 23 Class Member who has submitted an Opt-Out Statement may not submit objections to the Settlement.

(C)     The Parties may file with the Court written responses to any filed objections no later than three (3) days before the Fairness Hearing.

## 6.     FAIRNESS HEARING AND FINAL JUDGMENT.

**6.1    Motion for Judgment and Final Approval.** Not later than fifteen (15) days before the Fairness Hearing, the Named Plaintiff shall submit a Motion for Judgment and Final Approval. The Motion for Judgment and Final Approval shall be provided to Defendants for review and comment at least seven (7) days prior to filing with the Court, and the Named Plaintiff shall accept Defendants' reasonable comments.

**6.2    Entry of Judgment.** At the Fairness Hearing, the Parties shall request that the Court, among other things, (a) certify the Rule 23 Class for purposes of settlement only, (b) enter Judgment in accordance with this Agreement, (c) approve the settlement and Agreement as final, fair, reasonable, adequate, and binding on all Rule 23 Class Members who have not timely opted out pursuant to Section 5.2, (d) approve the release of claims under the FLSA for all Participating Claimants, and (e) dismiss the Lawsuit with prejudice.

## 7.     SETTLEMENT TERMS.

**7.1    Settlement Amount.**

(A)     Defendants agree to pay up to the Gross Settlement Amount, including all payments to Participating Claimants; Class Counsel's approved attorneys' fees, costs, and expenses related to the Lawsuit, including all attorneys' fees, costs, and expenses related to the effort to secure Final Judgment (including litigation of any potential objections to the terms of the Stipulation); administrative costs; and any approved Service Award to the Named Plaintiff. Under no circumstances shall Defendants be required to pay or contribute any monies in excess of the Gross Settlement Amount. No payments shall be made to Opt Outs or to those Class Members who fail to become Participating Claimants, and amounts allocated for these individuals from the Gross Settlement Amount shall not be paid into the QSF and shall be retained by Defendants.

(B)     Twenty (20) days after the Effective Date, Defendants shall deposit the Settlement Amount into the QSF. The portion of the maximum Gross Settlement Amount attributable to Class Members who do not become Participating Claimants, and

any portion of the maximum Gross Settlement Amount attributable to attorneys' fees and costs, settlement administration fees and costs and/or Service Award not awarded by the Court shall be retained by Defendants and shall not be deposited into the QSF.

(C)    Within thirty (30) days of the payment by Defendants of the Settlement Amount into the QSF, the Settlement Claims Administrator shall mail the Settlement Checks. Participating Claimants shall have ninety (90) days from the date of mailing to cash their Settlement Checks ("Check Cashing Period"). The Settlement Claims Administrator shall notify the Parties in writing of the date the Settlement Checks shall be sent at least two (2) business days before transmission. Settlement Checks not cashed within ninety (90) days will be void. The amounts in the QSF attributable to the void and uncashed Settlement Checks shall revert to Defendants, and shall be returned to Defendants within sixty (60) days following the end of the Check Cashing Period. Participating Claimants who do not redeem their settlement checks shall remain bound by this Settlement and the Releases in Section 8. This Stipulation and the associated Judgment do not and shall not create any unpaid residue or unpaid residual with respect to the amounts of uncashed checks, and no distribution of such shall be required. The provisions of any unclaimed property statute or law do not apply to this action or this Stipulation.

(D)    All payments to Participating Claimants made pursuant to this Agreement shall be deemed to be paid to such Participating Claimants solely in the year in which such payments actually are received by the Participating Claimant. It is expressly understood and agreed that any amount paid to any Participating Claimant shall not create any credit or otherwise affect the calculation of benefits provided under any pension, retirement, retirement savings, excess or supplemental retirement or retirement savings, any deferred compensation, bonus, equity, incentive, severance, displacement, supplemental unemployment, health, life, or disability plan, or any benefit, pension, or other compensation or benefit plan, policy, program, or arrangement (collectively, the "Benefit Plans") provided by Defendants or any Releasee, and no payment made pursuant to this Settlement shall be considered as "Compensation," "Earnings," "Salary," or any similar definition under any Benefit Plans, and are not considered eligible compensation for Benefit Plans, or for Defendants' 401(k) Savings and Retirement Plans, or for any other benefit purposes, or otherwise require any contribution or award under any benefit plan, or otherwise modify benefits, contributions or coverage under any benefit plan.

## 7.2   Settlement Checks to Participating Claimants.

(A)    Each Participating Claimant who timely files a Claim Form and W-4 Form, and whose Claim Form and W-4 Form are properly completed and submitted in accordance with Sections 5.1(A) and (B), shall be issued a Settlement Check by the Settlement Claims Administrator from the Settlement Amount in accordance with the Final Approval Order. The Settlement Amount for Each Participating

Claimant shall be determined by (1) taking the individual Class Members' gross earnings as the numerator, and (2) dividing it by the sum of gross earnings for all Class Members for work performed as the denominator. The denominator shall be the same for all Class Members. Thus, the Class Member's individual earnings divided by the sum of all earnings for all Class Members equal his/her Individual Percentage Allocation. The Individual Percentage Allocation shall be multiplied by the Gross Settlement Amount ($285,000.00), minus (1) attorneys' fees and costs; (2) costs of the settlement administrator to implement and administer the settlement, including for the cost of notice and the claim form; (3) Service Award to the Named Plaintiff, as well as his payment as a class member after submitting a claim form; and (4) Defendants' share of Employer Payroll Taxes.

(B)     The Settlement Checks shall be mailed to Participating Claimants (and attorneys' fees and costs checks wired to Class Counsel) by the Settlement Claims Administrator within thirty (30) days of the payment by Defendants of the Settlement Amount into the QSF. The Settlement Check mailing shall include a Notice to Participating Claimants that their checks shall be void if not cashed within ninety (90) days of this mailing.

(C)     Defendants and the Settlement Claims Administrator shall exchange such information as is necessary and reasonably available for the Settlement Claims Administrator to make proper tax withholdings and comply with tax reporting obligations as described in Section 7.5.

## 7.3     Service Award.

(A)     In return for services rendered to the Class Members, at the Fairness Hearing, the Named Plaintiff shall apply to the Court for Service Award in the amount of $5,000.00, coming from the QSF. Defendants shall not oppose this application.

(B)     The application for the Service Award is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Lawsuit. The outcome of the Court's ruling on the application for the Service Award shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval or for Final Judgment and Dismissal.

(C)     Within thirty (30) days after the payment by Defendants of the Settlement Amount into the QSF, the Settlement Claims Administrator shall mail the Court-approved Service Award to the Named Plaintiff if applicable.

## 7.4     Settlement Amounts Payable as Attorneys' Fees and Costs.

(A)     At the Fairness Hearing and Motion for Final Approval, Class Counsel shall petition the Court for an award of attorneys' fees and costs of no more than $95,000.00 to be paid from the QSF. Defendants shall not oppose such

application. After depositing the Settlement Amount with the Settlement Claims Administrator for the QSF, Defendants shall have no additional liability for Class Counsel's attorneys' fees and costs.

(B)     The substance of Class Counsel's application for attorneys' fees and costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Lawsuit. The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval. Class Counsel shall have the right to appeal the Court's determination with respect to their application for attorneys' fees and costs, which shall not be opposed by Defendant.

(C)     Within thirty (30) days of the payment by Defendants of the Settlement Amount into the QSF, the Settlement Claims Administrator shall wire the Court-approved attorneys' fees to Class Counsel.

**7.5    Tax Characterization.**

(A)     For tax purposes, the payments to Plaintiff and Participating Claimants pursuant to Section 7.2(A) shall be allocated as follows: wages (50% of each settlement payment), penalties (25% of each settlement payment) and interest (25% of each settlement payment). The Named Plaintiff and Participating Claimants shall be exclusively responsible for their own portion of payroll and income taxes on the 50% of each settlement payment that is wages, and such amounts shall be withheld from settlement payments.

(B)     That portion of the payments treated as wages pursuant to Section 7.5(A) shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number on an IRS Form W-2. The remaining portion of the payments treated as interest and/or penalties pursuant to Section 7.5(A) shall be made without withholding and shall be reported to the IRS and the payee under the payee's name and social security number on an IRS Form 1099. Payments of the Service Award pursuant to Section 7.3 shall be made without withholding and shall be reported to the IRS and the payee under the payee's name and social security number on an IRS Form 1099. Payments of attorneys' fees and costs pursuant to Section 7.4 shall be made without withholding and reported to the IRS and the payee under the payee's name and taxpayer identification number, which each such payee shall provide for this purpose, on an IRS Form 1099. Class Counsel agrees to provide the Settlement Claims Administrator with an IRS Form W-9 to provide to Defendants.

(C)     The Settlement Claims Administrator shall calculate the employer's share of the FICA tax and any federal and state unemployment tax due that are traditionally

borne by employers, with respect to the amounts treated as wages pursuant to Section 7.5(A), and this amount shall be paid out of the QSF. The Settlement Claims Administrator shall be responsible for making all reporting, deposits, and withholdings with respect to all amounts payable to Named Plaintiff and Participating Claimants required pursuant to any federal, state, or local tax law or regulation hereunder under the EIN of the QSF or the Defendants as required by applicable law.

(D)    With respect to the portions of the payments reported as non-wage income, the Named Plaintiff and Participating Claimants each shall indemnify and hold harmless Defendants for any taxes, penalties, interest or other amounts due or owing by that individual Named Plaintiff or Participating Claimants on such payments. Other than as set forth above, Defendants shall not make from the payment to the Named Plaintiff and Participating Claimants any deductions, withholdings, or additional payments, including without limitation, medical or other insurance payments or premiums, employee 401(k) contributions or matching employer contributions, wage garnishments, or charity withholdings, and entry of the Final Approval Order and Judgment by the Court shall be deemed authority not to make such deductions, withholdings, or additional payments. Any amount paid to the Named Plaintiff and Participating Claimants shall not create any credit or otherwise affect the calculation of any deferred compensation, benefit, pension, or other compensation or benefit plan provided by Defendants. The Named Plaintiff, on behalf of the Class Members and the Participating Claimants, acknowledge and agrees that he has not relied upon any advice from Defendants as to the taxability of the payments received pursuant to this Agreement.

(E)    The Settlement Claims Administrator shall handle all tax reporting with respect to the payments made pursuant to this Agreement, and, regardless of any provision in this Agreement, shall report the payments in accordance with applicable law.

**7.6**    **CAFA**. Defendants shall timely provide notice as required by the Class Action Fairness Act ("CAFA").

**8.**    **RELEASE OF CLAIMS.**

By operation of the entry of the Final Approval Order and Judgment, and except as to such rights or claims as may be created by this Agreement:

**8.1**    **Rule 23 Class Members.** Each Rule 23 Class Member who does not timely and validly opt out pursuant to this Agreement, on behalf of himself/herself, his/her heirs, representatives, successors, assigns and attorneys fully, finally and forever releases, and dismisses with prejudice, relinquishes and discharges the Released Rule 23 Claims, regardless of whether such individual files a Claim Form.

**8.2** **Participating Claimants.** Each Participating Claimant, on behalf of himself/herself, his/her heirs, representatives, successors, assigns and attorneys fully, finally and forever releases both the Released Rule 23 Claims and the Released FLSA Claims.

**8.3** **Named Plaintiff.** The Named Plaintiff forever and fully releases Defendants, the Releasees, including AMEX, from the following:

(A)     The Released FLSA Claims;

(B)     The Released Rule 23 Claims; and

(C)     Any and all past, present, and future claims, actions, demands, causes of action, suits, debts, obligations, damages, rights or liabilities, of any nature and description whatsoever, known or unknown, existing or potential, recognized now or hereafter, expected or unexpected, pursuant to any theory of recovery (including but not limited to those based in contract or tort, common law or equity, federal, state, or local law, statute, ordinance, or regulation), and for claims for injunctive relief, declaratory relief, compensatory, consequential, punitive or exemplary damages, statutory damages, restitution, penalties, interest, attorneys' fees, costs or disbursements, or any other form of monetary or non-monetary relief, that the Named Plaintiff now has or claims to have, or which the Named Plaintiff at any time heretofore had or claimed to have, or which the Named Plaintiff at any time hereafter may have or claim to have, arising out of or related to any act, omission, event, fact or other thing that existed or occurred from the beginning of time up through and including the date of this Agreement. Without limiting the generality of the foregoing, and in addition to the foregoing, the Named Plaintiff specifically and expressly releases to the maximum extent permitted by law any claims against Defendants, the Releasees, AMEX, and Finnegan in connection with his alleged role at AMEX, that existed or occurred on or before the date of this Agreement arising out of or related to: violations of any federal, state, or city wage and hour law, including the New York Labor Law and the federal Fair Labor Standards Act; claims based on alleged independent contractor misclassification; violations of any federal, state, or city human rights, civil rights, or employment discrimination laws, including Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Civil Rights Act of 1991, the federal Family and Medical Leave Act, the Age Discrimination in Employment Act, the Americans With Disabilities Act, the National Labor Relations Act, the Equal Pay Act, the Employee Retirement Income Security Act of 1974, Sections 1981 through 1988 of Title 42 of the United States Code, the Older Workers Benefit Protection Act, the Genetic Information Non-Discrimination Act, the Immigration Reform and Control Act, Sections 503 and 504 of the Rehabilitation Act of 1973, the Fair Credit Reporting Act, the New York State Human Rights Law, and the New York City Human Rights Law; breach of contract; breach of the implied covenant of good faith and fair dealing; unjust enrichment; promissory estoppel; tortious interference; conversion; fraud; misrepresentation; common law claims; unfair competition; unfair business practices; negligence; defamation; infliction of emotional distress; invasion of

privacy; assault; battery; false imprisonment; wrongful termination; and any other local, state, or federal law, ordinance, rule, or regulation, whether statutory or pursuant to common law. However, the Named Plaintiff does not waive any right to file an administrative charge with the Equal Employment Opportunity Commission ("EEOC") or other governmental agency, subject to the condition that he agrees not to seek, or in any way obtain or accept, any monetary award, recovery or settlement therefrom; and further provided, however, that the Named Plaintiff does not release any claim for breach of the terms of the Agreement. Nor shall anything in this Release prohibit or restrict the Named Plaintiff from: (i) providing information to, or otherwise assisting in, an investigation by Congress, the Equal Employment Opportunity Commission, the Securities and Exchange Commission ("SEC") or any other federal regulatory or law enforcement agency in response to any request for information by such agency; or (ii) complying with a lawful subpoena or other legal process, subject to the terms of this Agreement.

(D) The Named Plaintiff specifically understands and hereby acknowledges that he is releasing and waiving any and all claims he may have under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §621, *et seq.*, as amended ("ADEA"), and by executing this Agreement represents that: he was afforded a full twenty-one (21) days within which to consider this Agreement before executing it, and if executed in less than twenty-one (21) days, the decision to do so was entirely voluntary on his part and not the result of duress or coercion; he has carefully read and fully understands all of the provisions of this Agreement; he is, through this Agreement, releasing Defendants and the Releasees from any and all claims he may have against Defendants and the Releasees; he is knowingly and voluntarily agreeing to all of the terms set forth in this Agreement and to be bound by the same; he was advised and hereby is advised in writing to carefully consider the terms of this Agreement and consult with an attorney of his choice prior to executing this Agreement; he has a full seven (7) days following the execution of this Agreement to revoke the Agreement and has been and hereby is advised in writing that this Agreement shall not become effective or enforceable until the seven (7) day revocation period has expired; For revocation to be effective, notice of revocation must be submitted in writing, signed by the Named Plaintiff, and timely delivered by first class mail to Defendants' Counsel, attention: Andrew M. Spurchise, Littler Mendelson PC, 900 3rd Avenue, 8th Floor, New York, NY 10022; and the Named Plaintiff understands that rights or claims under the ADEA that may arise after the date this Agreement is executed are not waived.

## 9. INTERPRETATION AND ENFORCEMENT.

**9.1 Cooperation Between the Parties; Further Acts.** The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. The Parties shall work together, diligently and in good faith, to obtain expeditiously a Preliminary Approval Order, Final Approval Order, and final Judgment and dismissal. Each party, upon the request of any

other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**9.2**    **Non-Interference With Settlement.** Pending the Court's decision on final approval of the Settlement and entry of the Court's Final Approval Order and Judgment, the Named Plaintiff and anyone acting on his behalf shall be barred and enjoined from: (a) further litigation in this Lawsuit; (b) filing, or taking any action, directly or indirectly, to commence, prosecute, pursue or participate, individually or on a class or collective action basis, any action, claim or proceeding against Defendants in any forum in which any of the claims released by this Agreement are asserted, or which in any way would prevent any such claims from being extinguished; or (c) seeking, whether on a conditional basis or not, certification of a class or collective action that involves any such claims.

**9.3**    **No Assignment.** Class Counsel and the Named Plaintiff represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Lawsuit, or any related action.

**9.4**    **Entire Agreement.** This Agreement and its exhibits constitute the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties (including the Parties' settlement term sheet) shall be deemed merged into this Agreement.

**9.5**    **Binding Effect.** This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Lawsuit. This Agreement shall be binding upon the Parties and, with respect to the Named Plaintiff, his spouse, parents, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys, and assigns.

**9.6**    **Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

**9.7**    **Captions.** The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**9.8**    **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**9.9**    **Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of

law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**9.10**   **Continuing Jurisdiction.** The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the Settlement contemplated thereby.

**9.11**   **Waivers, etc. to be in Writing.** No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**9.12**   **Non-Disclosure/Non-Disparagement.** The Named Plaintiff agrees prior to filing of the Motion for Preliminary Approval not to disclose to individuals other than immediate family, tax preparers, and attorneys the terms of this Settlement or the negotiations leading thereto except in court papers or if required by legal process or protected by law. After the filing of the Motion for Preliminary Approval, aside from the disclosures in the Notice attached hereto as Exhibit B and in court papers, the maximum confidentiality allowed by law applies to the terms of the settlement described in this Agreement and the negotiations leading thereto. After the filing of the Motion for Preliminary Approval, the Named Plaintiff and Class Counsel shall not, directly or indirectly, issue or cause to be issued any statements to the media or engage in any other publicity regarding the Stipulation or the Settlement. The Named Plaintiff and Class Counsel further agree not to make disparaging comments relating to Defendants.

**9.13**   **Counterparts.** The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

**9.14**   **Facsimile and Scanned Signatures.** Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

**9.15**   **Disputes Regarding Gross Earnings.** In the event of a dispute regarding Participating Claimants' gross earnings, Defendants' records will be presumed determinative, but the Parties will evaluate any information and evidence Participating Claimants timely submit to the Settlement Claims Administrator, and then reach a final determination.

**WE AGREE TO THESE TERMS,**

PLAINTIFF
DATED: October 26, 2018

RICHARD MARASCO

_Richard Marasco_

DEFENDANT
DATED: October 26, 2018

VICTOR FINNEGAN

DEFENDANT
DATED: October 26, 2018

A TO Z LOGISTICS, INC.

By: _[signature]_

Name: _VICTOR FINNEGAN_

Title: _PRESIDENT_

22

DEFENDANTS' COUNSEL

DATED: October 26, 2018

LITTLER MENDELSON P.C.

By: _____
　　Andrew M. Spurchise
　　Kevin R. Vozzo
　　900 Third Avenue
　　New York, NY 10022
　　(212) 583-9600
　　**(Approved As To Form Only)**

CLASS COUNSEL:

DATED: October 26, 2018

THE SULTZER LAW GROUP, P.C.

By: _____
　　Adam Gonnelli
　　Jeremy Francis
　　85 Civic Center Plaza, #104
　　Poughkeepsie, New York 12601
　　(845) 483-7100

DATED: October 26, 2018

ROSENBERG FORTUNA & LAITMAN, LLP

By: _____
　　Brett D. Zinner
　　666 Old Country Road, Suite 810
　　Garden City, NY 11530
　　(516) 228-6666

23

# EXHIBIT A

# CONSENT TO JOIN CLAIM FORM AND RELEASE

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

RICHARD MARASCO, individually on behalf of
himself and all others similarly situated,

Plaintiff,

-against-

A TO Z LOGISTICS, INC., VICTOR
FINNEGAN, and JOHN DOES 1-25,

Defendants.

Case No. 16-cv-00232(PKC)(JO)

**IF YOU WISH TO PARTICIPATE IN THE SETTLEMENT, YOU MUST COMPLETE, SIGN, POSTMARK, AND SEND THIS CLAIM FORM TO THE SETTLEMENT CLAIMS ADMINISTRATOR, AT THE ADDRESS SET FORTH BELOW, NO LATER THAN [CLAIM DEADLINE].**

A TO Z LOGISTICS Settlement
c/o _____
[INSERT ADDRESS]
[INSERT ADDRESS]
[INSERT PHONE NUMBER]

## ESTIMATED PAYMENT

Based A to Z Logistics, Inc.'s records, and the settlement formula preliminarily approved by the Court, which is described in the Notice you received with this Claim Form, your estimated settlement payment at this time is **$[ESTIMATED PAYMENT]**. Please note that this is only an estimate. Your actual settlement payment may vary, up or down, depending on several factors. The Settlement Claims Administrator will withhold any applicable withholding and deductions (such as taxes) from the portion of your payment attributable to wages.

## INSTRUCTIONS

1. You must read, complete, sign, postmark and mail this Consent to Join Claim Form and Release, along with an IRS 2018 W-4 form, by [DATE] to the Settlement Claims Administrator to be eligible for payment.

2. If you move, you must send the Settlement Claims Administrator your new address. It is your responsibility to keep a current address on file with the Settlement Claims Administrator.

**LAST KNOWN CONTACT INFORMATION**

<<CLAIM NO./ID>>

<<EMPLOYEE NAME>>

<<ADDRESS LINE 1>>

<<ADDRESS LINE 2>>

<<CITY>>, <<STATE>> <<ZIP>>

Please make any necessary corrections below:

_____

_____

_____

_____

**EMPLOYMENT INFORMATION**

According to A to Z Logistics, Inc.'s records, you were employed by A to Z Logistics, Inc. as a messenger at some time between January 15, 2010, and **[PRELIM. APPROVAL DATE]**.  Your gross earnings from A to Z Logistics, Inc. during this time period were [INSERT].

If you believe the above information is incorrect, please notify the Settlement Claims Administrator and submit documentation (such as pay stubs) to support your position by the deadline listed above.  In the event of a dispute, Defendants' records will be presumed determinative, but the Parties will evaluate any information and evidence you timely submit to the Settlement Claims Administrator, and then reach a final determination.

**TAX TREATMENT**

Half of the payment you will receive will be treated as wages subject to deductions for applicable federal and state taxes and withholdings, and for which you will receive a W-2 from A to Z Logistics, Inc.; the other half will be treated as non-wage income and reported on a Form 1099.

**RELEASE**

If you submit this Consent to Join Claim Form and Release you will release Defendants A to Z Logistics, Inc. and Victor Finnegan in connected with his alleged role at A to Z Logistics, Inc. (collectively, the "Defendants"), and the other Releasees (as defined herein) from:

- Released FLSA Claims: means any and all claims, obligations, demands, actions, rights, causes of action, and liabilities under the Fair Labor Standards Act against Releasees (as defined herein), of whatever kind and nature, character and description, whether known or unknown, and whether anticipated or unanticipated, that accrue or accrued at any time from January 15, 2010 through the date of the Preliminary Approval Order, and were asserted in this lawsuit or otherwise arise out of the facts, matters, transactions or occurrences referred to in this lawsuit that could have been alleged as separate claims, causes of action, lawsuits or other theories of relief, including, without limitation, claims for failure to pay minimum wage, failure to pay overtime, failure to pay for all hours worked, failure to reimburse for business expenses (including, but not limited to, "tools of the trade" expenses and derivative minimum wage claims), penalties (including late payment penalties) and premium pay, any related or derivative claims for unpaid costs, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable, declaratory and/or injunctive relief, and any and all such claims against American Expediting Company ("AMEX") that arise from or relate in any way to your employment with Defendants.

2

- Released Rule 23 Claims: mean any and all claims, obligations, demands, actions, rights, causes of action and liabilities against Releasees (as defined herein), arising under federal, state, or local law, other than claims arising under the FLSA, of whatever kind and nature, character and description, whether known or unknown, and whether anticipated or unanticipated, that accrued or accrue on any date from January 15, 2010 through the date of the Preliminary Approval Order, and were asserted in this lawsuit or otherwise arise out of the facts, matters, transactions or occurrences referred to in this lawsuit that could have been alleged as separate claims, causes of action, lawsuits or other theories of relief, including, without limitation, wage and hour claims under the New York Labor Law, and its regulations and rules, or under any other legal theory, including, but not limited to, common law tort and conversion theories, for claims for failure to pay minimum wage, failure to pay overtime, failure to pay for all hours worked, failure to provide and/or pay for meal and/or rest periods, failure to timely pay final wages, failure to pay "spread of hours" wages, alleging unlawful imposition, deduction or chargeback from compensation for expenses or costs under applicable state laws, failure to reimburse for business expenses (including, but not limited to, "tools of the trade" expenses and derivative minimum wage claims), failure to furnish accurate wage statements or other notices, premium pay, and penalties (including late payment penalties), any related or derivative claims for unpaid costs, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable, declaratory or injunctive relief, and any and all such claims against AMEX that arise from or relate in any way to your employment with Defendants.

Releasees means the Defendants, and its/their respective present and former affiliates, related entities, divisions, subsidiaries, parents, predecessors, successors, any merged entity or merged entities and/or its or their present and former officers (including, but not limited to, Finnegan), partners, directors, employees, agents, shareholders, investors, insurers or reinsurers, employee retirement or benefit plans (and the trustees, administrators, fiduciaries, agents, representatives, insurers and reinsurers of such plans), attorneys (including, without limitation, Littler Mendelson, P.C.), assigns, trustees, heirs, administrators, executors, representatives and/or principals thereof, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity that could be jointly liable or alleged to be jointly liable with any of them, including, but not limited to, AMEX and Finnegan in connection with his alleged role at AMEX.

## SIGNATURE REQUIRED

If you wish to receive a settlement payment, you must fully complete, sign and submit this Claim Form under penalty of perjury or your claim will be denied. By doing so, you are opting-into this case under the Fair Labor Standards Act, you are acknowledging that your gross earnings as set forth above are true and correct to the best of your knowledge and belief, you are executing a release of the claims discussed above, and you are agreeing to indemnify and hold harmless Defendants for any taxes, penalties, interest or other amounts due or owing on the portion of your settlement payment reported as non-wage income.

**I CERTIFY UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA AND THE STATE OF NEW YORK THAT THE FOREGOING IS TRUE AND CORRECT.**

Dated: _____, 2018

_____
Signature

xxx-xx-_____

_____
Last Four digits of Social Security Number     Print Full Name

_____
Telephone Number

3

**IMPORTANT CLAIM FORM DELIVERY INFORMATION**

Your Consent to Join Claim Form and Release must be sent to the Settlement Claims Administrator via first class United States mail, certified or registered mail, or via a third-party commercial carrier (such as Federal Express). However, if the Settlement Claims Administrator determines that your Claim Form was not received, or was postmarked after **[CLAIM DEADLINE]**, the sole acceptable proof that you submitted the Claim Form to the Settlement Claims Administrator within the time period allowed shall be the original postmark, an original receipt from the United States Postal Service evidencing the mailing of such by certified or registered mail, or an original receipt from the third-party commercial carrier showing shipment by that carrier. **Accordingly, you should consider sending this Claim Form to the Settlement Claims Administrator by certified or registered mail, or by third-party commercial carrier.**

**REMEMBER, THE COMPLETED CLAIM FORM MUST BE POSTMARKED AND SENT NO LATER THAN [CLAIM DEADLINE].**

**EXHIBIT B**

# If you worked as a messenger employed by A to Z Logistics, Inc. between January 15, 2010 and [DATE OF PRELIMINARY APPROVAL], you could get a payment from a class action settlement.

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

- A settlement will provide a fund of up to $285,000.00 to pay current and former messengers who worked at A to Z Logistics, Inc. ("A to Z Logistics") between January 15, 2010 and [**DATE OF PRELIMINARY APPROVAL**] for, among other things, allegedly unpaid overtime and minimum wage compensation. The fees for court-appointed lawyers will come out of this fund, as will payments to the individual who brought and participated in this lawsuit, before any payments are made to the individuals who decide to participate in this proposed class action settlement.

- This settlement resolves a lawsuit in the Eastern District of New York over whether A to Z Logistics, among other things, failed to pay overtime and minimum wage compensation to certain of its employees; it avoids costs and risks to you from continuing the lawsuit; pays money to messengers like you; and releases A to Z Logistics and related entities and individuals from liability.

- The two sides disagree about whether the employees would have won if the case proceeded to trial, and if so, how much money they could have won.

- Your legal rights are affected whether you act, or don't act. Please read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM FORM** | The only way to get a payment. |
| **EXCLUDE YOURSELF** | Get no payment. Keep your right to bring or join any other lawsuit against A to Z Logistics and related entities and individuals about wage and hour issues for the period January 15, 2010 through [DATE OF PRELIMINARY APPROVAL]. |
| **OBJECT** | Write to the Court about why you don't like the settlement. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the settlement. |
| **DO NOTHING** | Get no payment. Give up certain rights regarding legal claims against A to Z Logistics and related entities and individuals related to wage and hour issues for the period January 15, 2010 through [DATE OF PRELIMINARY APPROVAL]. |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the settlement. Payments will be made if the Court approves the settlement and after any appeals are resolved. Please be patient.

| | |
|---|---|
| **BASIC INFORMATION**...................................................... | **PAGE 4** |
| 1. Why did I get this notice? | |
| 2. What is this case about? | |
| 3. Why is this a class action? | |
| 4. Why is there a settlement? | |
| 5. How do I know if I am part of the settlement? | |
| **THE SETTLEMENT BENEFITS—WHAT YOU GET**............... | **PAGE 6** |
| 6. What does the settlement provide? | |
| 7. How much will my payment be? | |
| 8. Tax treatment of settlement | |
| **HOW TO GET A PAYMENT—SUBMITTING A CLAIM FORM**............................................................................ | **PAGE 8** |
| 9.  How can I get a payment? | |
| 10. When would I get my payment? | |
| 11. What am I giving up to get payment or stay in the class? | |
| **THE LAWYERS REPRESENTING YOU**.................................. | **PAGE 11** |
| 12. Do I have a lawyer in this case? | |
| 13. How will the lawyers be paid? | |
| **EXCLUDING YOURSELF FROM THE SETTLEMENT**............ | **PAGE 12** |
| 14. How do I get out of the settlement? | |
| 15. If I don't exclude myself, can I sue A to Z Logistics later? | |
| 16. If I exclude myself, can I get money from this settlement? | |
| **OBJECTING TO THE SETTLEMENT**..................................... | **PAGE 13** |
| 17. How do I tell the Court that I don't like the settlement? | |
| 18. What's the difference between objecting and excluding? | |
| **THE COURT'S FAIRNESS HEARING**................................... | **PAGE 15** |
| 19. When and where will the Court decide whether to approve the settlement? | |
| 20. Do I have to come to the hearing? | |
| 21. May I speak at the hearing? | |
| **IF YOU DO NOTHING**...................................................... | **PAGE 16** |
| 22. What happens if I do nothing at all? | |

## BASIC INFORMATION

### 1. Why did I get this notice?

A to Z Logistics' records show that you worked for A to Z Logistics as a messenger at some time between January 15, 2010 and **[DATE OF PRELIMINARY APPROVAL]**.

You are receiving this notice because you have a right to know about a proposed settlement of a class action lawsuit, and about all of your options, before the Court decides whether to approve the settlement. You have the ability to participate in the settlement, or you may decline to do so.

This notice explains the process required for informing the attorneys and the Court of your decision. The notice also explains the process the Court has put in place for deciding whether to approve the settlement, and for administering the settlement if it is approved.

The Court in charge of this case is the United States District Court for the Eastern District of New York, and the case is known as *Richard Marasco, individually and on behalf of all others similarly situated v. A to Z Logistics, Inc. et al.*, Case No. 16-cv-00232 (PKC)(JO). The person who sued, Richard Marasco, is called the Plaintiff, and the company and individual he sued, A to Z Logistics and Victor Finnegan ("Finnegan"), in connection with his alleged role at A to Z Logistics, are called the Defendants.

### 2. What is this case about?

As discussed above, a former A to Z Logistics employee filed a lawsuit claiming, among other things, that A to Z Logistics failed to pay him and other messengers overtime and minimum wage compensation

4

owed under the federal Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). A to Z Logistics and Finnegan deny that they did anything wrong. A to Z Logistics and Finnegan do not discourage your participation in the settlement, and the law strictly prohibits them from retaliating against you for participating in the settlement.

## 3. Why is this a class action?

In a class action, one or more people called Class Representatives (in this case, Richard Marasco), sue on behalf of people who have similar claims. All these people are a Class or Class Members. One court resolves the issues for all Class Members, except for those who exclude themselves from the Class. U.S. Magistrate Judge James Orenstein is in charge of settlement proceedings for this class action.

## 4. Why is there a settlement?

The Court did not decide in favor of the Plaintiff or the Defendants. Instead, both sides agreed to a settlement. That way, they avoid the cost of a trial, and the people affected will get compensation. The Class Representative and the attorneys think the settlement is the best outcome for all Class Members.

The Court did not decide which side was right. Both sides agreed to the settlement to resolve the case, and avoid further disputes, inconvenience, and expense. By agreeing to settle the case, A to Z Logistics and Finnegan do not admit any liability, culpability, negligence, or wrongdoing.

The Court decided that everyone who fits this description is a Class Member: All messengers employed by A to Z Logistics between January 15, 2010 and [**DATE OF PRELIMINARY APPROVAL**].

## THE SETTLEMENT BENEFITS—WHAT YOU GET

A to Z Logistics has agreed to create a $285,000 fund (the "settlement fund") to pay Class Members who send in a valid claim form. Before the Class Members are paid, however, the following amounts may be removed from the settlement fund:

- Attorneys' Fees: The attorneys for the Class Members will ask the Court to grant them $95,000.00 from the settlement fund to pay for their fees and costs in this action.

- Service Payment: The Class Representative will seek a special payment for his service in bringing this lawsuit on behalf of the Class Members. The total service payment he seeks is $5,000.00.

- Settlement Claims Administrator Fees: A Settlement Claims Administrator was appointed to send out this notice, collect responses from the Class Members, and send Class Members who choose to participate their share of the settlement, if the Court approves it. The Parties have asked that the fees for this work, which they estimate to be around $8,000.00, be paid from the settlement fund.

If the Court approves all of these fees, approximately $177,000.00 would remain in the settlement fund to pay Class Members. Any

settlement funds that Class Members do not claim will be returned to A to Z Logistics.

## 7. How much will my payment be?

This package includes a form called "Consent to Join Claim Form and Release" ("claim form"). This form gives you an estimate of what your share of the settlement fund would be, if you decide to participate. Your share of the settlement fund was calculated based on your gross earnings during the time period you worked for A to Z Logistics as a messenger between January 15, 2010 and **[DATE OF PRELIMINARY APPROVAL]**.

If you believe the gross earnings figure in your claim form is inaccurate, the claim form explains how you may dispute the figure. If there is a dispute as to your gross earnings, A to Z Logistics' records will be presumed to be correct, but the Parties will evaluate any information and evidence you submit to the Settlement Claims Administrator by the deadline, and then reach a final decision.

## 8. Tax treatment of settlement

If you choose to participate in the settlement, then (1) 50% of the payment made to you will be (a) deemed taxable, wage income paid under an IRS Form W-2, and (b) subject to ordinary payroll withholdings; (2) 25% of the payments made to you from the Settlement Fund shall be treated as non-wage income, representing penalties, and reported on an IRS Form 1099; and (3) 25% of the payments made to you from the Settlement Fund shall be treated as non-wage income, representing interest, and reported on an IRS Form 1099.

# HOW TO GET A PAYMENT—SUBMITTING A CLAIM FORM

## 9. How can I get a payment?

To qualify for payment, you must send in a claim form and IRS Form W-4. The claim form and IRS Form W-4 are both included with this notice. Read the instructions carefully, fill out the forms, sign them, and mail them postmarked no later than **[DATE]** to:

A TO Z LOGISTICS SETTLEMENT
[fill in information]

By filling out and returning the claim form, you will also be joining this case under the FLSA (this is sometimes referred to as "opting-in"). If you lose, misplace, or need another form, you should contact the Settlement Claims Administrator, at:

A TO Z LOGISTICS SETTLEMENT
[fill in information]

## 10. When would I get my payment?

The Court will hold a hearing on **[DATE]** to decide whether to approve the settlement. If the Court approves the settlement after that hearing, there may still be appeals. It's always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year. Please be patient.

## 11. What am I giving up to get payment or stay in the Class?

Unless you exclude yourself, you are staying in the class, and that means that you can't sue, continue with a pending lawsuit you already initiated, or be part of any other lawsuit against A to Z Logistics or Finnegan (and related entities and individuals) about the legal issues in this case, or other related wage and hour issues, for acts occurring

between January 15, 2010 and **[DATE OF PRELIMINARY APPROVAL]** that you could have asserted, except with respect to claims under the FLSA (discussed further below).

Specifically, if you do not exclude yourself, you will release any and all claims, obligations, demands, actions, rights, causes of action and liabilities against Releasees (as defined herein) arising under federal, state, or local law, other than claims arising under the FLSA, of whatever kind and nature, character and description, whether known or unknown, and whether anticipated or unanticipated, that accrued or accrue on any date from January 15, 2010 through the date of the Preliminary Approval Order, and were asserted in the lawsuit or otherwise arise out of the facts, matters, transactions or occurrences referred to in the lawsuit that could have been alleged as separate claims, causes of action, lawsuits or other theories of relief, including, without limitation, wage and hour claims under the NYLL, and its regulations and rules, or under any other legal theory, including, but not limited to, common law tort and conversion theories, for claims for failure to pay minimum wage, failure to pay overtime, failure to pay for all hours worked, failure to provide and/or pay for meal and/or rest periods, failure to timely pay final wages, failure to pay "spread of hours" wages, alleging unlawful imposition, deduction or chargeback from compensation for expenses or costs under applicable state laws, failure to reimburse for business expenses (including, but not limited to, "tools of the trade" expenses and derivative minimum wage claims), failure to furnish accurate wage statements or other notices, premium pay, and penalties (including late payment penalties), any related or derivative claims for unpaid costs, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable, declaratory or injunctive relief, and any and all such claims against American Expediting Company ("AMEX") that arise from or relate in any way to your employment with Defendants. Claims under the NYLL that are released include, without limitation, claims under N.Y. Lab. Law § 160 *et seq.*; N.Y. Lab. Law § 190 *et seq.* (including, but not limited to, §§ 191, 193, 195, and 198); N.Y. Lab. Law §§ 215 and 218; NY. Lab. Law

§ 650 *et seq.*; 12 N.Y. Comp. Codes R. & Regs. §§ 142-2.10 *et seq.* (including, but not limited to, §§ 142-2.2, 142-2.4).

In addition, if you do not exclude yourself, it also means that all of the Court's orders will apply to you and legally bind you.

If you sign and return the claim form, you will also agree to a release of claims under the FLSA. Specifically, this includes any and all claims, obligations, demands, actions, rights, causes of action, and liabilities under the FLSA against Releasees (as defined herein), of whatever kind and nature, character and description, whether known or unknown, and whether anticipated or unanticipated, that accrue or accrued at any time from January 15, 2010 through the date of the Preliminary Approval Order, and were asserted in the lawsuit or otherwise arise out of the facts, matters, transactions or occurrences referred to in the lawsuit that could have been alleged as separate claims, causes of action, lawsuits or other theories of relief, including, without limitation, claims for failure to pay minimum wage, failure to pay overtime, failure to pay for all hours worked, failure to reimburse for business expenses (including, but not limited to, "tools of the trade" expenses and derivative minimum wage claims), penalties (including late payment penalties) and premium pay, any related or derivative claims for unpaid costs, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable, declaratory and/or injunctive relief, and any and all such claims against AMEX that arise from or relate in any way to your employment with Defendants.

"Releasees" means the Defendants, and its/their respective present and former affiliates, related entities, divisions, subsidiaries, parents, predecessors, successors, any merged entity or merged entities and/or its or their present and former officers (including, but not limited to, Finnegan), partners, directors, employees, agents, shareholders, investors, insurers or reinsurers, employee retirement or benefit plans (and the trustees, administrators, fiduciaries, agents, representatives, insurers and reinsurers of such plans), attorneys (including, without

limitation, Littler Mendelson, P.C.), assigns, trustees, heirs, administrators, executors, representatives and/or principals thereof, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity that could be jointly liable or alleged to be jointly liable with any of them, including, but not limited to, AMEX, and Finnegan in connection with his alleged role at AMEX.

Please review this notice, and the claim form and release, carefully and make sure that you understand what rights you will give up if you stay in the class, and if you submit a claim form. If you have any questions, you may call, email, or correspond with Class Counsel, whose information is provided in section 12, below.

## THE LAWYERS REPRESENTING YOU

### 12. Do I have a lawyer in this case?

If you choose to stay in the class, the Court has decided that the Sultzer Law Group, P.C. and Rosenberg Fortuna & Laitman, LLP are qualified to represent you and all other Class Members. These attorneys are called "Class Counsel." You do not need to hire your own attorney because Class Counsel is working on your behalf.

You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

If you have questions or desire additional details, you may call, email or correspond with Class Counsel. Here is the contact information for Class Counsel:

Jeremy Francis
Adam Gonnelli
The Sultzer Law Group, P.C.
85 Civic Center Plaza, #104
Poughkeepsie, New York 12601

(845) 483-7100
francisj@thesultzerlawgroup.com
Gonnellia@thesultzerlawgroup.com

Brett D. Zinner
Rosenberg Fortuna & Laitman, LLP
666 Old Country Road, Suite 810
Garden City, NY 11530
(516) 228-6666
brett@rosenbergfortuna.com

## 13. How will the lawyers be paid?

Class Counsel will ask the Court to approve payment of up to $95,000.00 to them from the settlement fund for attorneys' fees and expenses. The fees would pay Class Counsel for investigating the facts, litigating the case, and negotiating the settlement. Defendants have agreed not to oppose Class Counsel's request for these fees, but the Court may award less than this amount.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from this settlement, and you want to keep the right to sue A to Z Logistics and/or Finnegan or continue with a pending lawsuit you already initiated against them about wage and hour issues and/or the legal issues in this case, then you must take steps to get out. This is called excluding yourself – or is sometimes referred to as opting out of the settlement class.

## 14. How do I get out of the settlement?

To exclude yourself from the settlement, you must mail a letter postmarked by [**DATE**] that states: "I elect to exclude myself from the settlement in the RICHARD MARASCO / A TO Z LOGISTICS, INC. case, Case No. 16-cv-00232". You must include your name, address,

and telephone number in the letter, and sign it. You should send the letter to:

A TO Z LOGISTICS SETTLEMENT
[fill in information]

If you ask to be excluded, you will not get any settlement payment, and you cannot object to the settlement. You will not be legally bound by anything that happens in this lawsuit. You may be able to sue A to Z Logistics or Finnegan in the future.

## 15. If I don't exclude myself, can I sue A to Z Logistics later?

Unless you exclude yourself, you give up any right to sue A to Z Logistics and Finnegan (and related entities and individuals) for the claims that this settlement resolves, including wage and hour claims under the NYLL. If you have a pending lawsuit against A to Z Logistics or Finnegan, speak to your lawyer in that case immediately. You must exclude yourself from this settlement to continue your own lawsuit. Remember, the exclusion deadline is [**DATE**].

## 16. If I exclude myself, can I get money from this settlement?

No. If you exclude yourself, do not send in a claim form to ask for any money. But, you may sue, continue with a pending lawsuit you have already initiated, or be part of a different lawsuit against A to Z Logistics or Finnegan.

## OBJECTING TO THE SETTLEMENT

If you choose to stay in the class, you can tell the Court that you don't agree with the settlement or some part of it. This is called objecting to the settlement. The Court will consider your views.

## 17. How do I tell the Court that I don't like the settlement?

To object, you must submit a letter that states "I object to the settlement in the RICHARD MARASCO / A TO Z LOGISTICS, INC. case, Case No. 16-cv-00232", and explains the reasons that you object to the settlement. The letter must include your name, address, telephone number, and signature.

The Court will hold a hearing to decide whether to approve the settlement, called a fairness hearing. More information about this hearing is below, in sections 19-21 of this notice. If you wish to appear at the fairness hearing, you should also state in your letter objecting to the settlement: "I intend to appear at the Fairness Hearing."

Your letter must be postmarked by [**DATE**]. You should send the letter to:

A TO Z LOGISTICS SETTLEMENT
[fill in information]

You may withdraw your objection at any time.

Please note that if you submit a claim form and the Court rejects your objection, you will still be bound by the terms of the settlement.

If you do not comply with the procedures and deadlines described in this notice for submitting written comments objecting to the settlement or appearing at the fairness hearing, you will <u>not</u> be entitled to be heard at the hearing, or to contest or appeal any approval of the settlement or any award of attorneys' fees or expenses, or to contest or appeal from any other orders or judgments of the Court entered in connection with the settlement. The Parties may file with the Court written responses to any filed objections.

## 18. What's the difference between objecting and excluding?

Objecting is simply telling the Court that you don't like something about the settlement. You can only object if you stay in the settlement class. You cannot object to the settlement and exclude yourself from the settlement class.

Excluding yourself is telling the Court that you don't want to be part of the class. If you exclude yourself, you have no basis to object because the case no longer affects you.

## THE COURT'S FAIRNESS HEARING

The Court will hold a fairness hearing on **[DATE]** to decide whether to approve the settlement. You may attend and you may ask to speak, but you don't have to. You may not speak at the hearing if you excluded yourself from the class.

## 19. When and where will the Court decide whether to approve the settlement?

The Court will hold a fairness hearing before Magistrate Judge James Orenstein on **[DATE]** in Courtroom 11D South at the United States District Court for the Eastern District of New York, 225 Cadman Plaza East, Brooklyn, NY 11201. The purpose of this hearing will be for the Court to determine whether the settlement is fair, adequate, reasonable and should be approved by the Court. The Court will take into account any comments or objections that you have filed in accordance with the procedures described above.

## 20. Do I have to come to the hearing?

No. Class Counsel will answer questions that the Court may have. But, you are welcome to come at your own expense. If you sent an objection to the settlement, you don't have to come to Court to talk

about it.  As long as you mailed your written objection in time, the Court will consider it.  You may also pay your own lawyer to attend, but that's not necessary.

## 21. May I speak at the hearing?

If you would like to speak at the hearing, you should follow the process described at section 17.  You cannot speak at the hearing if you excluded yourself from the class.

### IF YOU DO NOTHING

## 22. What happens if I do nothing at all?

If you do nothing, you will not get any money from this settlement.  But, unless you exclude yourself, you will not be able to start a lawsuit, continue with a pending lawsuit you already initiated, or be part of any other lawsuit against A to Z Logistics or Finnegan relating to the legal issues in this case, and other wage and hour claims, for acts that occurred between January 15, 2010 and **[DATE OF PRELIMINARY APPROVAL]**, except with respect to claims under the FLSA.

### HOW CAN I GET MORE INFORMATION?

This notice does not contain all of the terms of the proposed settlement.  More details are in a Settlement Agreement.  You can get a copy of the Settlement Agreement by writing to Class Counsel at:

> Jeremy Francis
> Adam Gonnelli
> The Sultzer Law Group, P.C.
> 85 Civic Center Plaza, #104
> Poughkeepsie, New York 12601
> (845) 483-7100
> francisj@thesultzerlawgroup.com

Gonnellia@thesultzerlawgroup.com

Brett D. Zinner
Rosenberg Fortuna & Laitman, LLP
666 Old Country Road, Suite 810
Garden City, NY 11530
(516) 228-6666
brett@rosenbergfortuna.com

*Attorneys for Plaintiff and the Class*

If you have questions or desire additional details, you may also call, email or correspond with Class Counsel.